# EXHIBIT B

ID# 2019-0032915-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
Ann B. Harris - 56
MAR 09, 2019 02:17 AM
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **RANDSTAD GENERAL PARTNER (US), LLC,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| **v.** | ) | **FILE NO. ______________** |
| **BEACON HILL STAFFING GROUP, LLC, SHAWNA BESTREICH, and ERIK ADAMS,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

GEORGIA, COBB COUNTY
I HEREBY CERTIFY THE WITHIN AND FOREGOING TO BE A TRUE, CORRECT AND COMPLETE COPY OF THE ORIGINAL THAT APPEARS ON RECORD.
CASE No. 19-1-1808 IN THIS OFFICE
THIS 10 DAY OF April 20 19
DEPUTY CLERK, COBB COUNTY COURT
COBB COUNTY, GEORGIA

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Randstad General Partner (US), LLC ("Randstad") files this Complaint for Injunctive Relief and Damages ("Complaint") against Defendants Beacon Hill Staffing Group, LLC ("BHSG"), Shawna Bestreich ("Bestreich), and Erik Adams ("Adams") (with Bestreich, the "Individual Defendants" and, with BHSG, "Defendants").

## INTRODUCTION

1. Apparently unable to grow its business organically, develop talent from within, or compete fairly with Randstad based upon the quality of its services, BHSG has instead engaged in a targeted scheme to raid Randstad of its employees, knowing full well that these employees are subject to post-employment restrictive covenants and non-disclosure obligations that multiple Georgia courts have found to be enforceable. Since 2016 alone, BHSG has hired dozens of Randstad employees and has targeted many more. Upon information and belief, the purpose of this scheme is to compete unfairly by gaining access to and exploiting Randstad's confidential information, trade secrets, and customer and Talent goodwill.

2. BHSG is a serial tortfeasor in this respect that has been sued no fewer than 20 times for tortious interference with contractual obligations since 2010 alone. BHSG's repeated

insistence on violating its competitors' agreements to poach employees is, on information and belief, driven by a strategy conceived of and implemented by its leadership team, including its Chief Executive Officer, Andrew Wang. According to Wang's professional biography on BHSG's website, he has spearheaded BHSG's transformation from a small, 10-person company to a company employing more than 600 employees. BHSG describes Wang as "responsible for Beacon Hill Staffing Group's vision, strategic direction, and overall performance." It is impossible that a company of BHSG's size would be involved in so much restrictive covenant litigation absent a strategy to ignore restrictive covenant agreements when hiring new personnel.

3. Ignoring restrictive covenant agreements is a key part of how BHSG grows its business. Many of the employees BHSG has targeted and raided now fill leadership positions at BHSG. For example, six out of eight members of the self-described "leadership" team for BH Solutions, BHSG's managed services business, are recent former Randstad employees. Indeed, BH Solutions did not even exist until BHSG raided the leadership and copied Randstad's business model for its managed services business, Randstad Corporate Services ("RCS"), in 2017. This flagrant breach of Randstad's restrictive covenant agreements resulting in Randstad's filing two lawsuits against BHSG, in Massachusetts and in Maryland.

4. More recently, BHSG hired Bestreich, a former Vice President at Randstad and now part of BHSG's leadership team in Dallas, Texas. Upon information and belief, Bestreich subsequently recruited Adams, a former Randstad staffing manager and indirect report, to join her at BHSG. As Defendants are well-aware, both Bestreich and Adams are contractually prohibited from working for a competitor such as BHSG within the Restricted Territory, as that term is defined in their agreements, for 12 months after leaving Randstad, and from doing

business with Randstad's customers and hiring its employees for 18 months.[1] Yet they continue to flout their contractual and legal obligations with the aid of BHSG, as do other former Randstad employees now working for BHSG.

5. In an attempt to quell BHSG's assault and limit the harm to its business, Randstad has sent letters to the employees and to BHSG reminding them of the employees' contractual and legal obligations and demanding compliance therewith, and even filed two lawsuits based on BHSG's attempt to pilfer RCS's leadership team. But nothing has worked and, indeed, BHSG has become even more brash, ignoring Randstad's warnings (including, most recently, a letter to Bestreich and BHSG regarding her contractual and legal obligations).

6. BHSG's conduct is improper, unfair, and illegal. It must stop. Bestreich and Adams are both currently in breach of their restrictive covenant agreements with Randstad, and BHSG is complicit with those breaches, among many others. Unfortunately, because litigation of this sort is seen as just another cost of doing business, or an investment by BHSG—worth it if the cost of such is less than the benefit of the misappropriated information and customer goodwill—the only way to ensure that BHSG ceases its illegal conduct is for the Court to enter broad injunctive relief and to award Randstad substantial damages. A message must be sent to BHSG that its conduct is unfair and inappropriate. Fair competition, even when it is rough and tumble, is permissible; unfair competition is not.

---

[1] Bestreich's Employee Non-Competition and Confidentiality Agreement is referred to as the "Bestreich Agreement." Adams's Employee Non-Competition and Confidentiality Agreement is referred to as the "Adams Agreement." The Bestreich Agreement and the Adams Agreement are collectively referred to as the "Agreements."

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Randstad is a Delaware limited liability company with a corporate office and principal place of business located at One Overton Park, 3625 Cumberland Blvd SE, Atlanta (Cobb County), GA 30339. Randstad is registered to conduct business in Georgia.

8. Defendant BHSG is a Massachusetts limited liability company with a principal place of business located at 152 Bowdoin Street, Boston, Massachusetts 02108. Upon information and belief, BHSG maintains two offices and regularly transacts business in the State of Georgia and is subject to the jurisdiction of this Court under the authority of O.C.G.A.§ 9-10-91. Moreover, upon information and belief, BHSG is subject to the jurisdiction of this Court because it knew, at all relevant times, that Bestreich and Adams were bound by the Agreements, in which Bestreich and Adams agreed to the jurisdiction of this Court, but tortiously interfered with Bestreich's and Adams's contractual obligations to Randstad under the Agreements despite its knowledge of the forum selection clause in the Agreement; it is "closely related" to Bestreich and Adams, and is, therefore, bound by the same mandatory forum selection clause; its actions were so inextricably intertwined with Bestreich's and Adams's breaches of their Agreements that it foresaw or reasonably should have foreseen being bound by the forum selection clause in the Agreements; and the effect and harm of the tortious activity undertaken by BHSG as alleged herein is felt in Cobb County, Georgia and has harmed Randstad in Cobb County, Georgia.

9. Defendant Bestreich is an individual who, upon information and belief, resides at 7137 Royal Lane, Dallas, Texas 75230. Until her resignation on June 14, 2018, Bestreich served as Vice President, Market Sales, for Randstad. Bestreich is subject to the jurisdiction of this Court under the authority of O.C.G.A.§§ 9-10-91 and pursuant to the exclusive jurisdiction and

venue provision in the Bestreich Agreement that she executed on January 19, 2016. A true and accurate copy of the Bestreich Agreement is attached hereto as **Exhibit A**.

10. Defendant Adams is an individual who, upon information and belief, resides at 1837 Valencia Drive, Allen, Texas 75013. Until his resignation on September 21, 2018, Adams served as a Staffing Manager for Randstad. Adams is subject to the jurisdiction of this Court under the authority of O.C.G.A.§§ 9-10-91 and pursuant to the exclusive jurisdiction and venue provision in the Adams Agreement that he executed on July 17, 2017. A true and accurate copy of the Adams Agreement is attached hereto as **Exhibit B**.

11. This Court has jurisdiction over the subject matter of this Complaint, which consists of claims that occurred and are occurring in Cobb County, Georgia, where Randstad is headquartered.

12. Venue is proper in this Court under the authority of Ga. Const. 1983, Art. VI, § II and O.C.G.A.§§ 9-10-93 and pursuant to the exclusive venue provision in the Agreement because Bestreich and Adams are parties to agreements that include a mandatory forum selection provision, because Randstad is headquartered in Cobb County, Georgia, and because Randstad has felt the effect and harm of the torts and breaches of contract alleged in this Complaint.

## FACTS

13. Randstad is a leader in the staffing solutions industry. Randstad and its affiliates and subsidiaries provide individual employees ("Talent") to a diverse portfolio of businesses and organizations ("Customers") nationwide on a temporary or permanent basis to meet the Customers' needs. Randstad's General Staffing ("RGS") Division, which Bestreich and Adams worked for, specializes in placing temporary employees in office, clerical, and light industrial positions in a variety of industries.

14. The staffing industry is a highly competitive, specialized business that is relationship-driven between customers, Talent, and the sales force. Through decades of hard work, dedication, innovation and investment, Randstad has become a leader in the staffing industry.

15. Randstad invests heavily in developing and maintaining Customer relationships and in attracting and retaining top employees and Talent for both its internal operations and for assignments with its Customers.

16. Randstad's success in the highly competitive staffing industry is directly dependent on its staffing teams' Customer and institutional knowledge and Randstad's ability to provide top quality Talent to its Customers, and top quality job placements to its Talent.

17. To meet its Customers' expectations and needs, Randstad has developed and maintained, at great expense, valuable and long-standing working relationships and substantial goodwill with its Customers.

18. Randstad has reasonably come to expect that its long-standing Customer relationships will continue into the future.

19. Randstad's employees, including the Individual Defendants, receive substantial training, information, business contacts, and other advantages that provide Randstad with a competitive advantage in the marketplace.

20. The Individual Defendants, and other former Randstad employees now working for BHSG, through their employment with Randstad, gained unique knowledge of and had access to Randstad's trade secrets and other confidential and proprietary information, including, without limitation, information relating to Randstad's business strategies, finances,

methodologies, processes, operations, pricing, Customers, Talent and employees ("Confidential Information").

21. The Confidential Information to which the Individual Defendants and other former Randstad employees now working for BHSG had access during their employment with Randstad is critical to Randstad's competitive position in the staffing industry.

22. Randstad developed such Confidential Information at significant expense and effort over a number of years, such information is not generally available to the public or Randstad's competitors, and Randstad derives economic value from this information.

23. Randstad also takes reasonable efforts to maintain the confidentiality of such information, including having its employees with access to such information sign confidentiality agreements and using password protected computers and password protected log-ins to Randstad's databases.

24. Randstad also requires many of its employees to execute employment agreements containing restrictive covenants to protect its confidential information.

25. Additionally, Randstad employees, including the Individual Defendants and other former Randstad employees now working for BHSG, are bound by the Randstad Internal Employee Handbook (the "Employee Handbook"), which provides in part at Section 13:

> All property, equipment, and materials supplied to you by Randstad or its client ("Property") are deemed to be the Property of Randstad or its client and not your personal property. This Property includes, but is not limited to, Resources (defined Subsection 14.1), badges, corporate credit cards, access cards, keys, office supplies, office equipment, and office furniture. Property also includes documents, data, certain inventions, certain copyrightable works of authorship, confidential information, and trade secrets.

* * *

> Associates may not misuse or make unauthorized disclosures of non-public, confidential information (including trade secrets) that is acquired during the course of employment with Randstad. The confidential information of Randstad and its clients should be held in trust and confidence, not disclosed to any third party, and only used for the advancement of Randstad and/or client's interests, either during employment or following termination of employment for any reason. Examples of confidential information include, but are not limited to, non-public, proprietary details about Randstad and/or its client's strategies, operational plans, pricing, financial information and forecasts, personnel information, payroll information, personally identifiable information, protected health information and trade secrets. No copies, abstracts or summaries of such materials may be made except for use in performing duties for Randstad or its client. Any such materials must be returned to Randstad prior to leaving Randstad. If any non-public information is requested by anyone outside of Randstad, the appropriate managing director and/or Legal should be notified. Until an Associate obtains proper guidance, the requested information should not be disclosed.

26. Section 13.5 of the Employee Handbook provides in part:

> Upon request by Randstad or its client, at any time, and in any event upon termination of the Associate's employment with Randstad for any reason, Associates shall promptly deliver to Randstad all Property, defined above, within their possession or control. If any Property belonging to the Customer or Randstad is not returned, you will be subject to any and all remedies available under applicable law for the recovery of such Property. At a minimum, you will be responsible for the replacement value of such Property.

27. Additionally, Randstad informs employees that Randstad's computer networks and resources are "critical business assets and are the Property of Randstad and/or its customer." The Handbook further provides that that:

> Users are responsible for taking appropriate security measures when transmitting or storing sensitive or confidential information. Because electronic transmissions, including Internet transmissions, e-mail and instant messages, may be accessible by outside individuals, sensitive or confidential information should never be transmitted electronically unless it is encrypted or otherwise protected in accordance with Randstad's U.S. Data Protection Policy, available on the Legal pages of Randstad Connect and Workplace. Sensitive and/or confidential business information and documents should not be displayed on terminals when anyone other than an authorized User is present. Confidential and/or sensitive documents should not be stored in a database or on a system where unauthorized persons can access them.

28. With respect to protection of passwords, the Handbook instructs employees to be responsible for securing passwords and identification codes, as well as periodically change them to prevent unauthorized access to Randstad systems.

29. Randstad undertakes these extensive measures to protect its Confidential Information because, if Randstad's Confidential Information were to fall into the hands of a competitor, such as BHSG, Randstad's competitive position would be severely harmed, and the competitor would be able to trade on many years' worth of valuable accumulated knowledge. Likewise, if a former employee, such as the Individual Defendants, retained Randstad's Confidential Information after their employment ended and/or used the Confidential Information while working for a competitor, Randstad's competitive position would be seriously harmed and both the Individual Defendants and BHSG would have an unfair competitive advantage.

30. BHSG considers similar information, including its business strategies, customer lists, and customer information, to be confidential and proprietary and employs measures, such as the use of restrictive covenant agreements, to protect its information.

**A. Bestreich's Employment With Randstad and Employment Agreement**

31. Bestreich joined Randstad as the Vice President, Market Sales, on January 19, 2016. While employed by Randstad, Bestreich worked for Randstad in Dallas, Texas and, according to her own biography on BHSG's website, "oversaw multiple divisions and office locations across Texas."

32. As a condition of her employment, on January 16, 2016, Bestreich received and signed the Bestreich Agreement.

33. In Section 3(a) of the Bestreich Agreement, Bestreich agreed to the following:

The Employee acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of Employee's employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to the Employee certain of its Confidential Information and Trade Secrets, the Employee shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of Employee or any person or entity other than the Company for any purpose whatsoever (i) at any time during Employee's employment with the Company, and (ii) after Employee's separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. The Employee acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

34. In Section 4(d) of the Bestreich Agreement, Bestreich agreed to the following:

During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

35. The Bestreich Agreement defines "Restricted Territory" as follows:

"Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

(iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

36. In Section 6 of the Bestreich Agreement, Bestreich agreed to the following:

The Employee acknowledges that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of the Company, whether or not they contain Confidential Information or Trade Secrets, and all Company-owned equipment which may be provided for Employee's use while employed by the Company, are and shall continue to be the property of the Company. The Employee shall return to the Company all such documents and equipment in the possession or under the control of the Employee immediately upon the date of Employee's separation of employment with the Company or sooner if requested by the Company.

37. In Section 8 of the Bestreich Agreement, Bestreich agreed to the following:

The Employee acknowledges that the Company will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by the Company of its benefits or rights under this Agreement as the result of a breach, default or violation by the Employee of any of her obligations under this Agreement. Accordingly, the Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to

> injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision. The Company will not be required to post any bond as a condition of the Company receiving such injunctive relief, and the Employee hereby specifically waives the right to request or require the posting of a bond as a condition of the Company receiving injunctive relief. The Employee shall reimburse the Company for all reasonable legal fees and costs incurred by the Company in connection with bringing a successful action to enforce this Agreement.

38. The Bestreich Agreement is governed by the laws of the State of Georgia, and Bestreich agreed that any claim arising out of or related to the restrictive covenants in the agreement must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action.

39. On June 14, 2018, Bestreich resigned from Randstad. She claimed that she was dissatisfied with her role, but she did not inform Randstad that she was leaving to join a competitor.

40. On or about June 2018, Bestreich began working as a Division Director for BHSG in Dallas, Texas. BHSG is a direct competitor to Randstad and specializes in officer, clerical, and light industrial staffing services.

41. On information and belief, BHSG solicited and hired Bestreich with knowledge of Bestreich's continuing obligations to Randstad.

42. BHSG had actual or constructive knowledge that Bestreich was subject to the Bestreich Agreement because BHSG is aware Randstad requires employees to sign restrictive covenant agreements due to its repeated infringement of those agreements with other former employees.

43. As discussed in more detail below, BHSG's status as a serial violator of restrictive covenant agreements, including Randstad's, indicate that BHSG, notwithstanding these continuing obligations, hired Bestreich in a role that necessarily will cause Bestreich to violate her obligations to Randstad.

44. Indeed, Bestreich's employment with Randstad is a blatant violation of the non-compete covenant in Section 4(d) of the Agreement, which expressly prohibits Bestreich from, among other activities, (i) "providing products or services competitive with the Business of the Company," (ii) "supervising employees or other personnel who provide products or services competitive with the Business of the Company," (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company," and; or (iv) "engaging in responsibilities in which Employee would utilize or disclose Confidential Information."

45. Because of Bestreich's departure, her knowledge of and access to Randstad's confidential, proprietary and/or trade secret information to compete with Randstad on behalf of BHSG, Randstad is threatened with losing substantial business and the loss of value of its goodwill, customer relationships, and Confidential Information, which cannot be adequately addressed at law. Money alone cannot make Randstad whole and Randstad continues to be irreparably harmed.

46. Moreover, Bestreich is aware of her obligations to Randstad under the Bestreich Agreement. On or about April 2018, in violation of the Bestreich Agreement, Bestreich referred a Randstad employee subject to a restrictive covenant to a competitor. Bestreich received a written warning for her conduct on April 2, 2018.

## B. Adams's Employment With Randstad and Employment Agreement

47. Adams joined Randstad as a Staffing Manager - NCHC, on July 17, 2017. While employed by Randstad, Adams worked for Randstad in Dallas, Texas.

48. As a condition of his employment, on July 17, 2017, Adams received and signed the Adams Agreement.

49. In Section 3(a) of the Adams Agreement, Adams agreed to the following:

> The Employee acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of Employee's employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to the Employee certain of its Confidential Information and Trade Secrets, the Employee shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of Employee or any person or entity other than the Company for any purpose whatsoever (i) at any time during Employee's employment with the Company, and (ii) after Employee's separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. The Employee acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

50. In Section 4(d) of the Adams Agreement, Adams agreed to the following:

> During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:
>
> (i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

51. The Adams Agreement defines "Restricted Territory" as follows:

> "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:
>
> (i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and
>
> (iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

52. In Section 6 of the Adams Agreement, Adams agreed to the following:

The Employee acknowledges that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of the Company, whether or not they contain Confidential Information or Trade Secrets, and all Company-owned equipment which may be provided for Employee's use while employed by the Company, are and shall continue to be the property of the Company. The Employee shall return to the Company all such documents and equipment in the possession or under the control of the Employee immediately upon the date of Employee's separation of employment with the Company or sooner if requested by the Company.

53. In Section 8 of the Adams Agreement, Adams agreed to the following:

> The Employee acknowledges that the Company will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by the Company of its benefits or rights under this Agreement as the result of a breach, default or violation by the Employee of any of her obligations under this Agreement. Accordingly, the Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision. The Company will not be required to post any bond as a condition of the Company receiving such injunctive relief, and the Employee hereby specifically waives the right to request or require the posting of a bond as a condition of the Company receiving injunctive relief. The Employee shall reimburse the Company for all reasonable legal fees and costs incurred by the Company in connection with bringing a successful action to enforce this Agreement.

54. The Adams Agreement is governed by the laws of the State of Georgia, and Adams agreed that any claim arising out of or related to the restrictive covenants in the Adams Agreement must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action.

55. On or about September 21, 2018, Adams informed Randstad that he was resigning to join a competitor.

56. On or about October 2018, Adams began working as a Senior Account Executive for BHSG in Dallas, Texas. BHSG is a direct competitor to Randstad and specializes in officer, clerical, and light industrial staffing services.

57. On information and belief, BHSG solicited and hired Adams with knowledge of Adams's continuing obligations to Randstad.

58. BHSG had actual or constructive knowledge that Adams was subject to the Adams Agreement because BHSG is aware Randstad requires employees to sign restrictive covenant agreements due to its repeated infringement of those agreements with other former employees.

59. As discussed in more detail below, BHSG's status as a serial violator of restrictive covenant agreements, including Randstad's, indicate that BHSG, notwithstanding these continuing obligations, hired Adams in a role that necessarily will cause Adams to violate his obligations to Randstad.

60. Indeed, Adams's employment with Randstad is a blatant violation of the non-compete covenant in Section 4(d) of the Agreement, which expressly prohibits Adams from, among other activities, (i) "providing products or services competitive with the Business of the Company," (ii) "supervising employees or other personnel who provide products or services competitive with the Business of the Company," (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company," and; or (iv) "engaging in responsibilities in which Employee would utilize or disclose Confidential Information."

61. Because of Adams's departure, his knowledge of and access to Randstad's confidential, proprietary and/or trade secret information to compete with Randstad on behalf of BHSG, Randstad is threatened with losing substantial business and the loss of value of its goodwill, customer relationships, and Confidential Information, which cannot be adequately addressed at law. Money alone cannot make Randstad whole and Randstad continues to be irreparably harmed.

## C. BHSG's Pattern of Raiding Competitors and Flagrantly Violating Restrictive Covenant Agreements

62. Since its inception, BHSG has pursued a strategy of growing by poaching employees from competitors, without regard to whether the employee is subject to any restrictive covenant agreements. Indeed, BHSG's website boasts that, under Wang's leadership, BHSG has grown from fewer than 10 to more than 600 employees. It omits, however, that a large portion of that growth has occurred because of BHSG's illegal poaching of its competitors' employees to "acqui-hire" customer relationships, in violation of restrictive covenant agreements.

63. As a result, BHSG is consistently defending itself against tortious interference claims based on alleged violations of restrictive covenant agreements. BHSG has been a defendant in more than 20 trade secret or restrictive covenants lawsuits since 2011.

64. On November 14, 2011, TEKsystems, Inc. filed a lawsuit against BHSG in a case styled *TEKsystems, Inc. v. Sutton,* et al., No. 3:11-cv-00767-bbc (W.D. Wis.). TEKsystems asserted claims against BHSG for misappropriation of trade secrets and tortious interference with a restrictive covenant agreement.

65. On July 9, 2012, Update, Inc. filed a lawsuit against BHSG in a case styled *Update, Inc. v. Mercado,* et al., No. 1:12-cv-05295-PAC (S.D.N.Y.). Update asserted claims against BHSG for misappropriation of trade secrets and tortious interference with restrictive covenant agreements.

66. In May 2014, Internal Data Resources, Inc. filed a lawsuit against BHSG in a case styled *Internal Data Resources, Inc. v. Beacon Hill Staffing Group, LLC* et al., No. 1:14-cv-01860-RWS (N.D. Ga.). Internal Data Resources asserted a claim against BHSG for tortious interference with a restrictive covenant agreement.

67. On January 21, 2014, TEKsystems, Inc. filed a lawsuit against BHSG in a case styled *TEKsystems, Inc. v. Deal,* et al., No. 0:14-cv-00196-JRT-JJK (D. Minn.). TEKsystems asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

68. On September 15, 2014, Randstad filed a lawsuit against BHSG in a case styled *Randstad General Partner (US) LLC v. Smith*, No. 1:14-cv-07167 (N.D. Ill.) Randstad asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets. Randstad sought and obtained a TRO against BHSG.

69. In October 2014, Convergenz LLC filed a lawsuit against BHSG styled *Convergenz LLC v. Beacon Hill Staffing Group LLC*, No. 1:14-cv-01864-ABJ (D.D.C.). Convergenz asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets. BHSG filed a motion to dismiss, which was denied as moot after Convergenz filed an amended complaint.

70. On November 6, 2014, Kforce Inc. filed a lawsuit against BHSG styled *Kforce Inc. v. Beacon Hill Staffing Group LLC,* et al., No. 4:14-cv-01880-CDP (E.D. Mo.). Kforce asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

71. On April 17, 2015, Diversant, LLC filed a lawsuit against BHSG styled *Diversant, LLC v. Beacon Hill Staffing Group LLC*, No. 3:15-cv-00172-RJC-DSC (W.D.N.C.). Diversant asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

72. On April 13, 2015, Modis, Inc. filed a lawsuit against a former employee styled *Modis, Inc. v. Diet*, No. 4:15-cv-00110-SMR-RAW (S.D. Iowa). Modis later amended its

complaint to add BHSG as a defendant and asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

73. On January 20, 2017, Insight Global, LLC filed a lawsuit against BHSG in a case styled *Insight Global, LLC v. Beacon Hill Staffing Group, LLC,* et al., No. 5:17-cv-00309-BLF (N.D. Cal.). Insight Global asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

74. On March 10, 2017, Randstad filed a lawsuit against BHSG in a case styled *Randstad General Partner (US) LLC v. Beacon Hill Staffing Group, LLC,* et al., No. 1:17-cv-00680-ELH (D. Md.). Randstad asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

75. On March 10, 2017, Randstad filed a lawsuit against BHSG in a case styled *Randstad General Partner (US) LLC v. Keliher,* et al., No. 1:17-cv-10404-ADB (D. Mass.). Randstad asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

76. On August 8, 2017, Insight Global, LLC filed a lawsuit against BHSG in a case styled *Insight Global, LLC v. McDonald,* et al., No. 1:17-cv-01915-MSK-MJW (D. Colo.). Insight Global asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets. Insight Global also alleged that BHSG "has conducted and continues to conduct an unlawful employee-raiding campaign of Insight Global's then-current and former employees." Insight Global also alleged that, in the month preceding the complaint, BHSG had hired no fewer than five Insight Global employees and accused BSHG as concealing its hires from Insight Global.

77. On August 8, 2017, Insight Global, LLC filed a lawsuit against BHSG in a case styled *Insight Global, LLC v. Lilley,* et al., No. 4:17-cv-02440 (S.D. Tex.). Insight Global asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

78. On September 25, 2017, Aerotek, Inc. filed a lawsuit against BHSG in a case styled *Aerotek, Inc. v. Murphy,* et al., No. 4:17-cv-02469-HEA (E.D. Mo.) Aerotek asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

79. On April 27, 2018, Robert Half International, Inc. filed a lawsuit against BHSG in a case styled *Robert Half International, Inc.,* et al., No. 1:18-cv-01001-APM (D.D.C.) Robert Half asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets.

80. On October 27, 2017, Insight Global, LLC filed a lawsuit against BHSG in a case styled *Insight Global, LLC v. Wenzel,* et al., No. 1:17-cv-08323-PGG (S.D.N.Y.) Insight Global asserted a claim against BHSG for tortious interference with a restrictive covenant agreement and for misappropriation of trade secrets. Insight Global reiterated its claim in previous litigation that "[c]ompeting unfairly for employees — including by inducing employees to breach their contracts with competitors — is Beacon Hill's business model." Insight Global noted that "Beacon Hill has been sued almost thirty times over the last eleven years in similar cases by many competitors in the staffing industry." Insight Global also claimed that "it is Beacon Hill's *modus operandi* to conceal its hires of former Insight Global employees from Insight Global (by, for example, instructing the employees to not update their LinkedIn profiles to disclose their employment with Beacon Hill)."

81. BHSG's practice, implemented by its leadership team, in this litigation is quite uniform. The company will ignore a competitor's restrictive covenant agreement, solicit the employee, and promise to defend the employee against any legal action brought by the former employer, which BHSG views as a cost of doing business. After the suit is filed, BHSG will then almost always file a motion to dismiss in an attempt to avoid discovery, then resolve the litigation.

82. Randstad is a frequent target for BHSG. BHSG has hired over 40 Randstad employees since 2005.

83. Since 2016 alone, BHSG has hired dozens of Randstad employees, including at least 10 who BHSG hired for leadership positions. Its significant hires include the following.

(1) On or about April 2016, BHSG hired Lindsey Paskvan, the Sales Director, National Strategic Organization for Randstad Technologies.

(2) On or about August 2016, BHSG hired Ashlie Moseley, an Account Executive for Randstad North America.

(3) On or about December 2016, BHSG hired John Williams, a Senior Regional Vice President for Randstad Corporate Services.

(4) On or about December 2016, BHSG hired Kathleen Keliher, a Senior Vice President for Randstad Corporate Services.

(5) On or about March 2017, BHSG hired Mark Todd, the Director of Business Development - Integrated Talent Solutions for Randstad Sourceright.

(6) On or about March 2017, BHSG hired Christina Ethridge, the Team Lead for Randstad Corporate Services.

(7) On or about May 2017, BHSG hired Karen Rigano, a Senior Account Executive for Randstad Technologies.

(8) On or about July 2017, BHSG hired Shakira Irizarry, the Managing Director - Preferred Clients for Randstad Life Sciences.

(9) On or about October 2017, BHSG hired John D'Agostino, a Strategic Account Director for Randstad Technologies.

(10) On or about November 2017, BHSG hired Reed Goodman, the Director of Business Development for Randstad Sourceright.

(11) On or about January 2018, BHSG hired Bailey Ulrich, an Account Manager for Randstad Technologies.

(12) On or about June 2018, BHSG hired Shawna Bestreich, the Vice President, Market Sales for Randstad General Staffing.

(13) On or about July 2018, BHSG hired Theo Carmone, a Technical Recruiter for Randstad Technologies.

(14) On or about August 2018, BHSG hired Matthew O'Neil, a Technical Recruiter for Randstad Technologies.

(15) On or about September 2018, BHSG hired Erik Adams, a Staffing Manager for Randstad General Staffing.

(16) On or about October 2018, BHSG hired Todal Patel, a Practice Director for Randstad North America.

(17) On or about January 2019, BHSG hired Joseph Lucchese, a Technical Recruiter at Randstad Technologies.

(18) On or about February 8, 2019, BHSG hired Edward Darisse, a former Program Manager for RCS.

84. Upon information and belief, BHSG had knowledge of Randstad's Agreements with these individuals, yet it hired them in knowing violation thereof in an effort to interfere therewith and to compete unfairly by gaining access to and exploiting Randstad's confidential information, trade secrets, and customer goodwill.

85. BHSG's improper solicitations of Randstad employees are not limited to discrete hires. As noted above, in October 2017, Randstad filed two separate lawsuits against BHSG, in Massachusetts and Maryland, arising out of BHSG's raiding of the senior leadership of its RCS division. Prior to hiring Randstad's RCS leadership team, BHSG did not have a Managed Services Program ("MSP"), which is a comprehensive program designed to support large companies with substantial staffing needs that extends well beyond traditional contingent workforce supplier management to cover full spectrum talent needs, including employee

recruiting support, contractor retention programs, supplier engagement strategies and payrolling services. An MSP in the staffing industry refers to an outsourced agency that manages the contingent worker (temporary staffing) program of a client company. They ensure the smooth day-to-day operations of pulling requirements from clients, the preferred vendors submitting candidates, onboarding of selected candidates and the ongoing management of temporary workers at the client company for the duration of the contract.

86. Rather than creating a managed services division organically, like Randstad had done, BHSG stole RCS's top leadership and, indeed, its business model. Following an informal mediation, Randstad believed the parties had reached an agreement, only to have BHSG renege on its agreements the following day and to spend the next several months attempting to get concession after concession from Randstad.[2]

87. Despite Randstad's efforts to enforce its agreements, BHSG, continues to interfere with Randstad's restrictive covenant agreements and similar agreements executed by other companies. BHSG has clearly made a decision to view restrictive covenant litigation as nothing more than a cost of doing business and the price to obtain customers and business strategies without the expense of developing those relationships or strategies. As a result, Randstad has been forced to bring this lawsuit to seek the Court's assistance in securing BHSG's recognition of Randstad's agreements.

**COUNT I**
**Intentional Interference With Contractual Relations**
**(Against BHSG and Bestreich)**

88. Randstad repeats and re-alleges Paragraphs 1–86 above, and incorporates them as if fully set forth herein.

[2] The parties were able to eventually reach an agreement.

89. Randstad has valid and enforceable contractual relationships with the employees identified herein, including, without limitation, Bestreich and Adams, by virtue of the Agreement.

90. Randstad had a reasonable expectation that these contractual relationships would continue and the employees identified herein, including, without limitation, Bestreich and Adams, would comply with the provisions of the Agreements.

91. Upon information and belief, BHSG and Bestreich had knowledge of Randstad's Agreements with Bestreich and Adams.

92. Upon information and belief, BHSG, by its involvement in litigation with Randstad and other companies in the staffing industry, knew or should have known that Randstad had valid and enforceable restrictive covenant agreements, and, despite its active or constructive knowledge, chose to interfere with Randstad's agreements.

93. Bestreich knew or should have known that Randstad had valid and enforceable restrictive covenant agreements. Upon information and belief, despite her active or constructive knowledge, Bestreich chose to interfere with the Adams Agreement.

94. By the acts described above, BHSG has intentionally interfered with Randstad's contractual relationships with Bestreich and Adams, and Bestreich has intentionally interfered with Randstad's contractual relationship with Adams.

95. BHSG knew or should have known that offering employment to Bestreich and Adams would constitute violations of their agreements, but upon information and belief, BHSG nevertheless induced Bestreich and Adams to engage in such violations of the Agreements. Upon information and belief, Bestreich knew or should have known that soliciting Adams would

constitute a violation of the Adams Agreement, but upon information and belief, Bestreich nevertheless induced Adams to engage in such violations of the Adams Agreement.

96. By the acts described above, BHSG and Bestreich had an improper motive and used improper means in interfering with Randstad's contractual relations without lawful justification or legitimate reason for this interference with those business relationships.

97. As a direct and proximate result of BHSG's and Bestreich's actions described above, Randstad has suffered and continues to suffer irreparable harm and monetary damages.

98. By reason of the foregoing, Randstad requires injunctive relief. Unless injunctive relief is granted, Randstad will be irreparably harmed in a manner not fully compensable by money damages. In addition, Randstad has been damaged in an amount to be determined at trial.

**COUNT II**
**Breach of Contract**
**(Against Bestreich)**

99. Randstad repeats and re-alleges Paragraphs 1-86 above, and incorporates them as if fully set forth herein.

100. Bestreich entered into a valid and enforceable agreement with Randstad.

101. The covenants contained in the Bestreich Agreement remain in full force after Bestreich's departure from Randstad, and Bestreich remains bound by those covenants.

102. Plaintiff satisfied all of its obligations under the terms and conditions of the Bestreich Agreement.

103. By the acts described above, Bestreich has breached the Agreement by, among other things, competing against Randstad and on behalf of BHSG within the Restricted Territory and through her employment with BHSG.

104. As a result of Bestreich's breaches of the Bestreich Agreement, Randstad has suffered or will suffer monetary damages and substantial irreparable harm, and is threatened with further irreparable harm for which there is no adequate remedy at law to compensate.

105. By reason of the foregoing, Randstad requires injunctive relief. Unless injunctive relief is granted, Randstad will be irreparably harmed in a manner not fully compensable by money damages. In addition, Randstad has been damaged in an amount to be determined at trial.

## COUNT III
## Breach of Contract
## (Against Adams)

106. Randstad repeats and re-alleges Paragraphs 1-86 above, and incorporates them as if fully set forth herein.

107. Adams entered into a valid and enforceable agreement with Randstad.

108. The covenants contained in the Adams Agreement remain in full force after Adams's departure from Randstad, and Adams remains bound by those covenants.

109. Randstad satisfied all of its obligations under the terms and conditions of the Non-Compete.

110. By the acts described above, Adams has breached the Adams Agreement by, among other things, competing against Randstad and on behalf of BHSG within the Restricted Territory and through his employment with BHSG.

111. As a result of Adams's breaches of the Adams Agreement, Randstad has suffered or will suffer monetary damages and substantial irreparable harm, and is threatened with further irreparable harm for which there is no adequate remedy at law to compensate.

112. By reason of the foregoing, Randstad requires injunctive relief. Unless injunctive relief is granted, Randstad will be irreparably harmed in a manner not fully compensable by money damages. In addition, Randstad has been damaged in an amount to be determined at trial.

**COUNT IV**
**Civil Conspiracy**
**(Against all Defendants)**

113. Randstad repeats and re-alleges Paragraphs 1-86 above, and incorporates them as if fully set forth herein.

114. Defendants have acted in concert to undertake the tortious conduct and other wrongs alleged above, specifically, by tortiously interfering with Randstad's contracts and business expectancies.

115. On information and belief, BHSG and agents of BHSG authorized and encouraged Bestreich and Adams to violate their restrictive covenants by accepting and performing services for BHSG. The conspiracy is inferable from BHSG's extensive involvement in restrictive covenant litigation and the concerted nature of their activities.

116. Defendants' conspiracy is ongoing and continues to harm Randstad.

117. Under the conspiracy, all tortious acts in furtherance of the conspiracy are imputable to all Defendants, and Defendants must be held liable for all tortious acts taken in furtherance of the conspiracy.

**PRAYER FOR RECOVERY OF EXPENSES**
**(O.C.G.A. § 13-6-11)**

118. Randstad repeats and re-alleges Paragraphs 1–116 above, and incorporates them as if fully set forth herein.

119. Defendants have acted in bad faith, have been stubbornly litigious, or have caused Randstad unnecessary trouble and expenses.

120. As a result, Randstad is entitled to recover its expenses of litigation from Defendants.

**PRAYER FOR RECOVERY OF EXPENSES**
**(O.C.G.A. § 51-12-5.1)**

121. Randstad repeats and re-alleges Paragraphs 1-116 above, and incorporates them as if fully set forth herein.

122. Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or such entire want of care that their conduct raises the presumption of conscious indifference to consequences. .

123. As a result, Randstad is entitled to recover punitive damages from Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Randstad prays that this Court:

1. Enter judgment in Randstad favor and against Defendants, jointly and severally, where applicable, for all damages that may be calculated that Randstad may recover as a result of Defendants' misconduct, including, without limitation, compensatory and exemplary or punitive damages in an amount to proven at trial;

2. Award attorneys' fees, costs and expenses as allowed by law and pursuant to the Agreement which requires Bestreich and Adams to indemnify Randstad for such fees, costs and expenses resulting from Randstad's enforcement of the Agreements;

3. Enter preliminary and permanent equitable relief recognizing and enforcing the restrictive covenants in the Bestreich Agreement and Adams Agreement; and

4. Grant such other and further relief as may be just and proper.

**JURY TRIAL DEMAND**

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES AND COUNTS SO TRIABLE.**

*//Robert C. Stevens*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Erik W. Weibust (*pro hac vice* motion to be filed)
eweibust@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

*Counsel for Plaintiff Randstad General Partner (US), LLC*

Dated: March 9, 2019

# Exhibit A

**Employee Non-Competition and Confidentiality Agreement**
*(Not for use in California)*

This Employee Non-Competition and Confidentiality Agreement (this "Agreement") is made and entered into by and between **Shawna Bestreich** ("Employee") and Randstad General Partner (US), LLC, its parent company, divisions, subsidiaries and affiliates thereof, a Delaware limited liability company, with its principal place of business in Atlanta, Georgia (hereinafter the "Company").

WHEREAS, the Company desires to employ or continue employing Employee and to provide Employee with valuable training and access to the Company's Confidential Information and Trade Secrets; and the Employee desires such employment, training and access.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, Employee and the Company agree as follows:

1. **At-Will Employment**. The Employee acknowledges that the Employee's employment with the Company is at-will and not for any prescribed term, meaning either party may terminate Employee's employment at any time, for any reason (except those reasons prohibited by law), with or without notice and with or without cause. The Employee's entitlement to compensation ends when the Employee's employment terminates for any reason. The parties acknowledge that Employee's duties, compensation, title and responsibilities may change over time; notwithstanding any such changes, the Employee will continue to have access to the Company's Confidential Information and Trade Secrets and this Agreement, unless modified in writing, shall continue to apply and be valid.

2. **Definitions**. For the purposes of this Agreement, the following definitions shall apply:

(a) "Business of the Company" means the services provided by the Company, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, or other services that are the same as or substantially similar to the services Employee provided on behalf of the Company within two (2) years prior to the date of Employee's separation from the Company.

(b) "Confidential Information" means data and information belonging to the Company (i) relating to the business of the Company, (ii) which has been disclosed to the Employee or of which the Employee became aware as a consequence of or through Employee's relationship with the Company, (iii) which has value to the Company, and (iv) which is not generally known to the public or the Company's competitors. Without limiting the generality of the foregoing, "Confidential Information" includes the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders). Notwithstanding anything herein to the contrary, the term "Confidential Information" shall not be interpreted to include or mean any data or information that has been voluntarily disclosed to the public by the Company (except where such public disclosure has been made by the Employee without authorization from the Company), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

(c) "Material Contact" means any contact between Employee and a customer, Placement Candidate or Talent (i) with whom or which Employee dealt on behalf of the Company; (ii) whose dealings with the Company were coordinated or supervised by the Employee; (iii) about whom Employee obtained Confidential Information in the ordinary course of business as a result of Employee's association with the Company; or (iv) who receives products or services authorized by the Company, the sale or provision of which results or resulted in compensation, commissions, or earnings for the Company within two (2) years prior to the Employee's separation from employment with the Company.

(d) "Personal Information" consists of a person's first and last name (or first initial and last name), plus one or more of the following: (i) Social Security number; (ii) driver's license number or state-issued identification card number; (iii) bank account or other financial account number; (iv) credit or debit card number; or (v) (where provided by law) the person's e-mail address.

(e) "Placement Candidate" means (i) any person who was identified by the Company for placement on an assignment with a customer as of the date of Employee's separation of employment with the Company or (ii) any person who completed an assignment with the Company within the twenty-four (24) months prior to the date of Employee's separation of employment with the Company and is eligible to be placed on assignment with a customer again.

(f) "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

(iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

(g) "Talent" means any employee who is placed by the Company on an assignment with a customer as of the date of Employee's separation of employment with the Company.

(h) "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar applicable law.

3. **Entrustment and Preservation of Confidential Information and Trade Secrets**.

(a) The Employee acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of Employee's employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to the Employee certain of its Confidential Information and Trade Secrets, the Employee shall

not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of Employee or any person or entity other than the Company for any purpose whatsoever (i) at any time during Employee's employment with the Company, and (ii) after Employee's separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. The Employee acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

(b) Unless done for and on behalf of the Company during Employee's employment by the Company, Employee will never use or disclose any person's Personal Information which Employee may learn or acquire at any time during employment with the Company. Furthermore, Employee shall at all times take appropriate measures to protect against the loss of, or damage to, Personal Information in the Employee's possession or control.

4. **Restrictive Covenants**. The Employee acknowledges that the Company has expended substantial amounts of money, time and effort in developing and maintaining its extensive personnel resources, Confidential Information, Trade Secrets, goodwill and relationships with customers, Placement Candidates, Talent and associate (internal) employees. Consequently, the Employee shall devote his or her best efforts, attention and energies to the Company's business at all times during his or her employment. Furthermore, in consideration of the Company's initial and continuing employment of the Employee, the Company's provision to the Employee of initial and ongoing training regarding the Company's business, and the Company's entrustment to the Employee of the Company's Confidential Information and Trade Secrets (without such training and entrustment of Confidential Information and Trade Secrets Employee acknowledges that he or she could not perform his or her job duties and responsibilities), the Employee agrees as follows:

(a) During Employee's employment with the Company and the eighteen (18) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation. Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company:

(i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom the Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company; or

(iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for any person or entity that competes with the Business of the Company.

(b) During his or her period of employment with the Company, Employee shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

(e) Within seven (7) days of the separation (for any reason) of Employee's employment with the Company, Employee shall delete social media connections, including LinkedIn connections, with any (i) customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and (ii) Placement Candidates or Talent with whom the Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

5. **Disclosure and Assignment of Inventions**. All discoveries, inventions, processes, designs, plans, writings, creations, programs, product improvements, materials, Confidential Information, and Trade Secrets ("Work Made for Hire") whether of a technical nature or not, made or developed by Employee alone or in conjunction with any other person or entity during the course of Employee's employment with the Company, which relate to or affect the business of the Company, shall be the sole and exclusive property of the Company. Employee shall disclose and release all such Work Made for Hire and all information regarding the same to the Company concurrent with the discovery or development of the same. Employee shall and hereby does assign all rights, title, and interest in any such Work Made for Hire to the Company. Employee shall not use or disclose the Company's Work Made for Hire to benefit a person or business that competes with the Company, a customer of the Company, an individual or other

entity (except in performing his or her obligations to the Company during his or her employment with the Company), without the express, written permission of the Company. Employee hereby irrevocably assigns any such Work Made for Hire to the Company and shall execute and deliver promptly to the Company such assignments and other written instruments, and to do such other acts as may be required to patent, copyright or otherwise protect such Work Made for Hire and to invest the entire right, title and interest in such Work Made for Hire in the Company.

6. **Return of Company Documents and Equipment**. The Employee acknowledges that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of the Company, whether or not they contain Confidential Information or Trade Secrets, and all Company-owned equipment which may be provided for Employee's use while employed by the Company, are and shall continue to be the property of the Company. The Employee shall return to the Company all such documents and equipment in the possession or under the control of the Employee immediately upon the date of Employee's separation of employment with the Company or sooner if requested by the Company.

7. **Freedom to Contract**. The Employee represents to the Company that he or she has the legal right to enter into this Agreement without violating any other employment agreement or consulting arrangement, including any non-competition, non-solicitation or confidentiality agreements (collectively, "Other Contracts"), and that he or she will not become subject to any Other Contracts in conflict with this Agreement during the Employee's employment with the Company. Employee further represents that he or she will not upload to the Company's systems, disclose to the Company, or use for the Company's benefit any trade secrets or confidential information which is the property of any prior employer or other third party. If Employee fails to disclose or breaches any Other Contracts, the Company may incur significant legal exposure and expenses. Accordingly, in the event of any such failure to disclose or breach of Other Contracts, the Company reserves the right to terminate Employee's employment and to seek all available legal remedies in connection with the breach of the representations set forth in this Section.

8. **Enforcement and Damages**. The Employee acknowledges that the Company will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by the Company of its benefits or rights under this Agreement as the result of a breach, default or violation by the Employee of any of his or her obligations under this Agreement. Accordingly, the Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision. The Company will not be required to post any bond as a condition of the Company receiving such injunctive relief, and the Employee hereby specifically waives the right to request or require the posting of a bond as a condition of the Company receiving injunctive relief. The Employee shall reimburse the Company for all reasonable legal fees and costs incurred by the Company in connection with bringing a successful action to enforce this Agreement.

9. **Compliance with Policies/Procedure for Complaints**. The Employee shall comply with all applicable Company policies of which he or she has been made aware, including but not limited to those policies found in the Employee Handbook. In addition, the Employee shall at all times act in conformity with the Company's Business Principles and the Employee acknowledges that he or she has been apprised of the Company's Misconduct Reporting Procedure.

10. **Miscellaneous.**

(a) The Employee acknowledges that his or her obligations under this Agreement are personal and that he or she may not assign any of his or her rights or delegate any of his or her duties or obligations under this Agreement. The Company may assign, without notice to the Employee, its rights and obligations under this Agreement, which shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Company.

(b) If, after executing this Agreement, Employee: (i) is promoted to, assigned to or otherwise assumes one or more positions or functions other than or in addition to Employee's position or functions at the time Employee signed this Agreement, regardless of title, or (ii) is transferred or assigned to or otherwise works for any affiliate, subsidiary or other division or business unit of the Company, the terms of this Agreement shall continue to apply with full force and effect.

(c) The Employee acknowledges that the covenants contained in Sections 3 and 4 are reasonable and essential to protect the Company's Confidential Information, Trade Secrets, goodwill and its relationships with customers, Placement Candidates, Talent and associate (internal) employees, and that such covenants will not impair the Employee's ability to procure subsequent comparable employment.

(d) This Agreement may be executed in two or more counterparts, all of which together shall constitute a single agreement. A copy, .pdf/.jpg or facsimile shall be treated as an original Agreement for all purposes.

(e) Each of the covenants and provisions contained in this Agreement is severable and shall be enforceable independently of every other provision. In the event that any provision of this Agreement shall be held to be overly broad in any respect (including, without limitation as to scope, geographic applicability, time period, activity or subject) so as to be unenforceable as written and agreed to by the parties, it is the parties' intention that such provision shall be construed by the appropriate court or arbitrator by limiting or reducing it so as to be enforceable to the fullest extent compatible with the then applicable law, and the parties hereby specifically request that any such court or arbitrator exercise its discretion consistent with this intention.

(f) If Employee previously executed other written agreements with the Company relating to the subject matter of this Agreement, and/or if Employee later enters into other written agreements that contain provisions similar to the provisions contained in this Agreement, all such provisions shall be interpreted to provide the Company with cumulative rights and remedies, and the benefits and protections provided to the Company under each such agreement shall be given full force and effect. No prior or contemporaneous agreement, whether written or oral, shall be construed to change, amend, alter, repeal or invalidate this Agreement.

(g) A waiver by one party of a breach of this Agreement by the other party shall not be construed as a waiver of any subsequent or similar breach.

(h) This Agreement may be amended or terminated only by written agreement of both parties.

(i) Nothing in this Agreement shall relieve Employee of any duties or obligations Employee has to the Company under statutory or common law, which include but are not limited to: fiduciary duties, the duty of loyalty, the duty not to tortiously interfere with business relationships, the duty not to engage in unfair competition, and the duty not to misappropriate any Trade Secrets.

(j) Employee acknowledges that the Company provided Employee with a copy of this Agreement prior to or concurrent with making an offer of employment, or an offer of change in Employee's job classification, or implementation of a merit increase or other change in the Employee's compensation and benefits, and informed Employee, prior to Employee's execution of this Agreement, that this Agreement is required as a condition of employment with the Company.

11. **Agreement Comprehension and Legal Advice**. The Employee represents that he or she has read this Agreement completely and carefully and that he or she understands the contents and effect of this Agreement. Employee further represents that he or she has had the opportunity to consult with an attorney before voluntarily signing below and has either consulted with an attorney or waived the opportunity to do so.

12. **Governing Law and Selection of Forum**. This Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws. Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. The Employee and the Company waive any objection based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

**IN WITNESS WHEREOF,** the parties have signed this agreement as of this 19 day of January, 2016.

**Employee**:

[signature]
(Signature)

Shawna Bestreich
(Print Name)

**Randstad General Partner (US), LLC**:

By: [signature]

Kiara Anthony HR coord.
(Print Name and Title)

# Exhibit B

randstad

**Employee Non-Competition and Confidentiality Agreement**
*(Not for use in California)*

This Employee Non-Competition and Confidentiality Agreement (this "Agreement") is made and entered into by and between the individual signing this Agreement below ("you") and Randstad, a Delaware limited liability company, with its principal place of business in Atlanta, Georgia.

WHEREAS, Randstad desires to employ or continue employing you and to provide you with valuable training and access to Randstad's Confidential Information and Trade Secrets; and you desire such employment, training and access.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, you and Randstad agree as follows:

1. **At-Will Employment**. You acknowledge that your employment with Randstad is at-will and not for any prescribed term, meaning either party may terminate your employment at any time, for any reason (except those reasons prohibited by law), with or without notice and with or without cause. Your entitlement to compensation ends when your employment terminates for any reason. The parties acknowledge that your duties, compensation, title and responsibilities may change over time; notwithstanding any such changes, you will continue to have access to Randstad's Confidential Information and Trade Secrets and this Agreement, unless modified in writing, shall continue to apply and be valid.

2. **Definitions**. For the purposes of this Agreement, the following definitions shall apply:

(a) "Business of the Company" means the services provided by Randstad, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, solutions services, or other services that are the same as or substantially similar to the services you provided on behalf of Randstad within two (2) years prior to the date of your separation from Randstad.

(b) "Confidential Information" means data and information belonging to Randstad (i) relating to the Business of the Company, (ii) which has been disclosed to you or of which you became aware as a consequence of or through your relationship with Randstad, (iii) which has value to Randstad, and (iv) which is not generally known to the public or Randstad's competitors. Without limiting the generality of the foregoing, "Confidential Information" includes Randstad's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders). Notwithstanding anything herein to the contrary, the term "Confidential Information" shall not be interpreted to include or mean any data or information that has been voluntarily disclosed to the public by Randstad (except where such public disclosure has been made by you without authorization from Randstad), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

(c) "Invention" means any discovery (whether patentable or not), development (of a technical nature or not), invention, process, design, method, formula, technique, machine, manufacture, composition of matter, algorithm or computer program, plan, writing, program, and improvement relating to Randstad's business or originating from use of Randstad's resources, which you conceive, devise, develop, reduce to practice, perfect or create, alone or jointly with any other person or entity, during the course of employment with Randstad.

(d) "Material Contact" means any contact between you and a customer, Placement Candidate or Talent (i) with whom or which you dealt on behalf of Randstad; (ii) whose dealings with Randstad were coordinated or supervised by you; (iii) about whom you obtained Confidential Information in the ordinary course of business as a result of your association with Randstad; or (iv) who receives products or services authorized by Randstad, the sale or provision of which results or resulted in compensation, commissions, or earnings for Randstad within two (2) years prior to your separation from employment with Randstad.

(e) "Personal Information" consists of a person's first and last name (or first initial and last name), plus one or more of the following: (i) Social Security number; (ii) driver's license number or state-issued identification card number; (iii) bank account or other financial account number; (iv) credit or debit card number; or (v) (where provided by law) the person's e-mail address.

(f) "Placement Candidate" means (i) any person who was identified by Randstad for placement on an assignment with a customer as of the date of your separation of employment with Randstad or (ii) any person who completed an assignment with Randstad within the twenty-four (24) months prior to the date of your separation of employment with Randstad and is eligible to be placed on assignment with a customer again.

(g) "Prior Invention" means any discovery, invention, process, design, plan, writing, program, or improvement that you (i) have, alone or jointly with others, conceived, developed or reduced to practice prior to the commencement of employment with Randstad and (ii) consider to be your property or a third party's property.

(h) "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which you were assigned or which you managed, during the twelve (12) months prior to the date of your separation of employment with Randstad;

(ii) a radius of twenty-five (25) miles of any office(s) in which you performed services on behalf of Randstad at any time during the twelve (12) months prior to the date of your separation of employment with Randstad;

(iii) a radius of twenty-five (25) miles of any office(s) in which Randstad employed personnel whom you directly or indirectly supervised or managed during the twelve (12) months prior to the date of your separation of employment with Randstad; and

(iv) any region or territory to which you were actually assigned or which you managed during the twelve (12) months prior to the date of your separation of employment with Randstad.

(i) "Talent" means any employee who is placed by Randstad on an assignment with a customer as of the date of your separation of employment with Randstad.

(j) "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar applicable law.

3. **Entrustment and Preservation of Confidential Information and Trade Secrets.**

(a) You acknowledge that Confidential Information and Trade Secrets are valuable, special and unique assets of Randstad's business. In the course of your employment with Randstad, Randstad will disclose to you and grant you access to Confidential Information and Trade Secrets, and you desire to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by Randstad. In consideration of Randstad's entrusting to you certain of its Confidential Information and Trade Secrets, you shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of you or any person or entity other than Randstad for any purpose whatsoever (i) at any time

during your employment with Randstad, and (ii) after your separation from employment with Randstad (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. You acknowledge that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to Randstad.

(b) Unless done for and on behalf of Randstad during your employment by Randstad, you will never use or disclose any person's Personal Information which you may learn or acquire at any time during employment with Randstad. Furthermore, you shall at all times take appropriate measures to protect against the loss of, or damage to, Personal Information in your possession or control.

(c) **Notice of Immunity under the Defend Trade Secrets Act**. The Defend Trade Secrets Act, 18 U.S.C. § 1833(b), provides an immunity for the disclosure of a trade secret to report suspected violations of law and/or in an anti-retaliation lawsuit.

(i) IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (1) is made (A) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(ii) USE OF TRADE SECRET INFORMATION IN ANTI-RETALIATION LAWSUIT. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (1) files any document containing the trade secret under seal; and (2) does not disclose the trade secret except pursuant to court order.

4. **Restrictive Covenants**. You acknowledge that Randstad has expended substantial amounts of money, time and effort in developing and maintaining its extensive personnel resources, Confidential Information, Trade Secrets, goodwill and relationships with customers, Placement Candidates, Talent and associate (internal) employees. Consequently, you shall devote your best efforts, attention and energies to Randstad's business at all times during your employment. Furthermore, in consideration of Randstad's initial and continuing employment of you, Randstad's provision to you of initial and ongoing training regarding Randstad's business, and Randstad's entrustment to you of Randstad's Confidential Information and Trade Secrets (without such training and entrustment of Confidential Information and Trade Secrets you acknowledge that you could not perform your job duties and responsibilities), you agree as follows:

(a) During your employment with Randstad and the eighteen (18) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad:

(i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of Randstad with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to

the date of your separation of employment with Randstad for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with Randstad, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for any person or entity that competes with the Business of the Company.

(b) During your period of employment with Randstad, you shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which you would utilize or disclose Confidential Information.

5. **Disclosure and Assignment of Inventions**.

(a) To the fullest extent permitted by applicable law, any Invention, and all intellectual property rights to such Invention, shall be the exclusive property of Randstad. You hereby irrevocably assign to Randstad all rights, title, and interest (including, without limitation, patent rights, trademarks and copyrights) in any Invention. You hereby waive and agree never to assert any rights in any Invention. You agree to promptly and fully disclose to Randstad any Invention, execute any assignment and other written instrument as necessary to grant Randstad complete legal ownership to every Invention, and to do any other acts as may be required for Randstad to patent, copyright, trademark or otherwise protect such Invention and to invest in Randstad the entire right, title and interest in Invention. Except as required by your duties on behalf of Randstad, you shall not use or disclose any Invention to benefit a person or entity other than Randstad, including without limitation a person or entity that competes against Randstad.

(b) Notwithstanding subsection (a), you shall retain all ownership rights in any invention excluded from assignment pursuant to applicable law (as described more fully in Exhibit A) and in any Prior Invention you list on Exhibit A. You represent and warrant that Exhibit A includes a complete and accurate list of every Prior Invention claimed by you individually or jointly with others.

6. **Return of Company Documents and Equipment**. You acknowledge that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of Randstad, whether or not they contain Confidential Information or Trade Secrets, and all Randstad-owned equipment which may be provided for your use while employed by Randstad, are and shall continue to be the property of Randstad. You shall return to Randstad all such documents and equipment in your possession or control immediately upon the date of your separation of employment with Randstad or sooner if requested by Randstad.

7. **Freedom to Contract**. You represent to Randstad that you have the legal right to enter into this Agreement without violating any other employment agreement or consulting arrangement, including any non-competition, non-solicitation or confidentiality agreements (collectively, "Other Contracts"), and that you will not become subject to any Other Contracts in conflict with this Agreement during your employment with Randstad. You further represent that you will not upload to Randstad's systems, disclose to Randstad, or use for Randstad's benefit any trade secrets or confidential information which is the property of any prior employer or other third party. If you fail to disclose or breach any Other Contracts, Randstad may incur significant legal exposure and expenses. Accordingly, in the event of any such failure to disclose or breach of Other Contracts, Randstad reserves the right to terminate your employment and to seek all available legal remedies in connection with the breach of the representations set forth in this Section.

8. **Enforcement and Damages**. You acknowledge that Randstad will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by Randstad of its benefits or rights under this Agreement as the result of a breach, default or violation by you of any of your obligations under this Agreement. Accordingly, Randstad shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by you of any provision of this Agreement or to enforce any such provision. Randstad will not be required to post any bond as a condition of receiving such injunctive relief, and you hereby specifically waive the right to request or require the posting of a bond as a condition of Randstad receiving injunctive relief. You shall reimburse Randstad for all reasonable legal fees and costs it incurs in connection with bringing a successful action to enforce this Agreement.

9. **Compliance with Policies/Procedure for Complaints**. You shall comply with all applicable Randstad policies of which you have been made aware, including but not limited to those policies found in the handbook published on the Human Resources Department's page of Randstad Connect or Workplace. In addition, you shall at all times act in conformity with Randstad's Business Principles (http://www.randstad.com/corporate-governance/our-principles/business-principles), and you acknowledge that you have been apprised of Randstad's Misconduct Reporting Procedure (see link within Business Principles). In the event that a complaint is warranted under the Misconduct Reporting Procedure, you may visit www.speakupfeedback.eu/web/integrityatrandstad/us or call 1-866-250-6706. In connection with either reporting mechanism, the access code is 42115. You acknowledge that by this Agreement, you have been notified that if you have any questions or concerns about your employment, Randstad's policies or principles, or if you have a complaint of any kind concerning your employment, that you have the right and are encouraged to notify Human Resources at hrsupport@randstadusa.com or 1-877-601-7453.

10. **Miscellaneous**.

(a) You acknowledge that your obligations under this Agreement are personal and that you may not assign any of your rights or delegate any of your duties or obligations under this Agreement. Randstad may assign, without notice to you, its rights and obligations under this Agreement, which shall inure to the benefit of, and shall be binding upon, the successors and assigns of Randstad.

(b) If, after executing this Agreement, you: (i) are promoted to, assigned to or otherwise assume one or more positions or functions other than or in addition to the position or functions at the time you signed this Agreement, regardless of title, or (ii) are transferred or assigned to or otherwise work for any affiliate,

subsidiary or other division or business unit of Randstad, the terms of this Agreement shall continue to apply with full force and effect.

(c) You acknowledge that the covenants contained in Sections 3 and 4 are reasonable and essential to protect Randstad's Confidential Information, Trade Secrets, goodwill and its relationships with customers, Placement Candidates, Talent and associate (internal) employees, and that such covenants will not impair your ability to procure subsequent comparable employment.

(d) This Agreement may be executed in two or more counterparts, all of which together shall constitute a single agreement. A copy, .pdf/.jpg or facsimile shall be treated as an original Agreement for all purposes.

(e) Each of the covenants and provisions contained in this Agreement is severable and shall be enforceable independently of every other provision. In the event that any provision of this Agreement shall be held to be overly broad in any respect (including, without limitation as to scope, geographic applicability, time period, activity or subject) so as to be unenforceable as written and agreed to by the parties, it is the parties' intention that such provision shall be construed by the appropriate court or arbitrator by limiting or reducing it so as to be enforceable to the fullest extent compatible with the then applicable law, and the parties hereby specifically request that any such court or arbitrator exercise its discretion consistent with this intention.

(f) If you previously executed other written agreements with Randstad relating to the subject matter of this Agreement, and/or if you later enter into other written agreements that contain provisions similar to the provisions contained in this Agreement, all such provisions shall be interpreted to provide Randstad with cumulative rights and remedies, and the benefits and protections provided to Randstad under each such agreement shall be given full force and effect. No prior or contemporaneous agreement, whether written or oral, shall be construed to change, amend, alter, repeal or invalidate this Agreement.

(g) A waiver by one party of a breach of this Agreement by the other party shall not be construed as a waiver of any subsequent or similar breach.

(h) This Agreement may be amended or terminated only by written agreement of both parties.

(i) Nothing in this Agreement shall relieve you of any duties or obligations you have to Randstad under statutory or common law, which include but are not limited to: fiduciary duties, the duty of loyalty, the duty not to tortiously interfere with business relationships, the duty not to engage in unfair competition, and the duty not to misappropriate any Trade Secrets.

(j) You acknowledge that Randstad provided you with a copy of this Agreement prior to or concurrent with making an offer of employment, or an offer of change in your job classification, or implementation of a merit increase or other change in your compensation and benefits, and informed you, prior to your execution of this Agreement, that this Agreement is required as a condition of employment with Randstad.

11. **Agreement Comprehension and Legal Advice**. You represent that you have read this Agreement completely and carefully and that you understand the contents and effect of this Agreement. You further represent that you have had the opportunity to consult with an attorney before voluntarily signing below and have either consulted with an attorney or waived the opportunity to do so.

12. **Governing Law and Selection of Forum**. This Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws. Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be

brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. You and Randstad waive any objection based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

**IN WITNESS WHEREOF**, the parties have signed this agreement as of this 17th day of July, 2017.

**Employee (you):**

(Signature)

Erik Adams Erik Adams

(Print Name)

**Randstad:**

By: Angela Raughley

Angela Raughley
HR Operations Manager

(Print Name and Title)

## EXHIBIT A

**List below any Prior Invention, as that term is defined in Section 2 of the Agreement.**

________________________________________

________________________________________

________________________________________

________________________________________

By signing the Agreement, you hereby agree not to incorporate or permit to be incorporated any Prior Invention in any Invention or other work produced for Randstad without Randstad's prior written consent. If, in the course of employment with Randstad and without Randstad's prior written consent, you incorporate a Prior Invention into work produced for Randstad, you hereby grant to Randstad a nonexclusive, royalty-free, paid-up, irrevocable, worldwide license (with the full right to sublicense) to make, have made, modify, use, sell, offer for sale and import such Prior Invention, to the extent permitted by applicable law. .

**Exclusions from the Assignment Provision of Section 5 of the Agreement**:

**For employees in Delaware, Illinois, Kansas, Minnesota, North Carolina and Washington:** Section 5 of the Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of Randstad was used and which was developed entirely on your own time, unless: (1) the invention relates directly to the business of Randstad, or to Randstad's actual or demonstrably anticipated research or development; or (2) the invention results from any work performed by you for Randstad.

**For employees in Utah:** Section 5 of the Agreement does not apply to an invention that is created by you entirely on your own time and is not an "employment invention." An "employment invention" is an invention which is conceived, developed, reduced to practice or created by you (i) within the scope of employment for Randstad; (ii) on Randstad's time; or (iii) with the aid, assistance, or use of any of Randstad's property, equipment, facilities, supplies, resources or intellectual property.

# Electronic Signature

Name Erik Adams

Date 07/17/2017

BC14A65AD7101C94E1BF57F66A48E0DE

## General Civil and Domestic Relations Case Filing Instructions

1. Provide the class of court and county in which the case is being filed.
2. Provide the plaintiff's and defendant's names.
3. Provide the plaintiff's attorney's name and Bar number. If you are representing yourself, provide your own name and check the self-represented box.
4. Provide the type of case by checking only *one* appropriate box. Cases can be either general civil or domestic relations and only *one* type of case within those categories. Check the case type that most accurately describes the primary case. If you are making more than one type of claim, check the case type that involves the largest amount of damages or the one you consider most important. See below for definitions of each case type.
5. Provide the type of post-judgment action, if applicable, by checking the appropriate box. Post-judgment cases are those that seek to enforce or modify an existing judgment. If the case is a post-judgment matter, an initial case type in the general civil and domestic relations boxes must be checked.
6. Provide an answer to the four questions by checking the appropriate boxes and/or filling in the appropriate lines.

### Case Type Definitions

#### General Civil Cases

**Automobile Tort**: Any tort case involving personal injury, property damage, or wrongful death resulting from alleged negligent operation of a motor vehicle.

**Civil Appeal**: Any case disputing the finding of a limited jurisdiction trial court, department, or administrative agency.

**Contract**: Any case involving a dispute over an agreement between two or more parties.

**Garnishment**: Any case where, after a monetary judgment, a third party who has money or other property belonging to the defendant is required to turn over such money or property to the court.

**General Tort**: Any tort case that is not defined or is not attributable to one of the other torts.

**Habeas Corpus**: Any case designed to test the legality of the detention or imprisonment of an individual, not the question of guilt or innocence.

**Injunction/Mandamus/Other Writ**: Cases involving a written court order directed to a specific person, requiring that person to perform or refrain from performing a specific act.

**Landlord/Tenant**: Any case involving landlord/tenant disputes wherein the landlord removes a tenant and his/her property from the premises or places a lien on tenant property to repay debt.

**Medical Malpractice Tort**: Any tort case that alleges misconduct or negligence by a person in the medical profession acting in a professional capacity, such as doctors, nurses, physician's assistants, dentists, etc.

**Product Liability Tort**: Any tort case that alleges injury is caused to a person by the manufacturer or seller of an article due to a defect in, or the condition of, the article sold or an alleged breach of duty to provide suitable instructions to prevent injury.

**Real Property**: Any case involving disputes over the ownership, use, boundaries, or value of fixed land.

**Restraining Petition**: Any petition for a restraining order that does not result from a domestic altercation or is not between parties considered to be in a domestic relationship.

**Other General Civil**: Any case in which a plaintiff requests the enforcement or protection of a right or the redress or prevention of a wrong, but does not fit into one of the other defined case categories.

#### Domestic Relations Cases

**Adoption**: Cases involving a request for the establishment of a new, permanent relationship of parent and child between persons not so biologically related.

**Dissolution/Divorce/Separate Maintenance**: Any case involving the dissolution of a marriage or the establishment of alimony or separate maintenance.

**Family Violence Petition**: Any case in which a protective order from a family member or domestic partner is requested.

**Paternity/Legitimation**: Cases involving the establishment of the identity and/or responsibilities of the father of a minor child or the determination of biological offspring.

**Support – IV-D**: Cases filed by the Georgia Department of Human Services to request maintenance of a minor child by a person who is required, under Title IV-D of the Social Security Act of 1973, to provide such maintenance.

**Support – Private (non-IV-D)**: Cases filed to request maintenance of a parent/guardian or a minor child by a person who is required by law, but who is not under the auspices of Title IV-D of the Social Security Act of 1973, to provide such maintenance.

**Other Domestic Relations**: Domestic relations cases, including name changes, that do not adequately fit into any of the other case types.

#### Post-Judgment

**Contempt**: Any case alleging failure to comply with a previously existing court order.

**Modification**: Any case seeking to change the terms of a previously existing court order.

**Other/Administrative**: Any case with post-judgment activity that does not fit into contempt or modification categories.

**Please note:** This form is for statistical purposes only. It shall have no legal effect in the case. The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or court rules. Information on this form cannot be entered into evidence.

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of Cobb County

**For Clerk Use Only**

Date Filed ____________ Case Number ____________
MM-DD-YYYY

| Plaintiff(s) | | | | | Defendant(s) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Randstad General Partner (US), LLC | | | | | Beacon Hill Staffing Group, LLC | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | Shawna Bestreich | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | Erik Adams | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney Robert C. Stevens Bar Number 680142 Self-Represented ☐

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☒ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

____________ Case Number ____________ Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. ____________
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

19-A-0032916-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
Ann B. Harris - 56
MAR 09, 2019 02:17 AM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER 19101808

$232.00 COST PAID

Randstad General Partner (US), LLC

**PLAINTIFF**

**VS.**

Beacon Hill Staffing Group, LLC
Bestreich, Shawna
Adams, Erik

**DEFENDANTS**

**SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Alex Meier**
**SEYFARTH SHAW LLP**
**1075 Peachtree Street, NE**
**Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 11th day of March, 2019.**

Clerk of Superior Court

COBB COUNTY Georgia SUPERIOR COURT CLERK 1833

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

ID# 2019-0032917-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
Ann B. Harris - 56
MAR 09, 2019 02:17 AM
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER 19101808

$232.00 COST PAID

Randstad General Partner (US), LLC

**PLAINTIFF**

**VS.**

Beacon Hill Staffing Group, LLC
Bestreich, Shawna
Adams, Erik

**DEFENDANTS**

**SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Alex Meier**
**SEYFARTH SHAW LLP**
**1075 Peachtree Street, NE**
**Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 11th day of March, 2019.**

Clerk of Superior Court

COBB COUNTY Georgia 1833 SUPERIOR COURT CLERK

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

ID# 2019-0032918-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
Ann B. Harris - 56
MAR 09, 2019 02:17 AM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER 19101808

$232.00 COST PAID

Randstad General Partner (US), LLC

**PLAINTIFF**

**VS.**

Beacon Hill Staffing Group, LLC
Bestreich, Shawna
Adams, Erik

**DEFENDANTS**

## SUMMONS

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Alex Meier**
**SEYFARTH SHAW LLP**
**1075 Peachtree Street, NE**
**Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 11th day of March, 2019.**

Clerk of Superior Court

COBB COUNTY Georgia 1833 SUPERIOR COURT CLERK

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

ID# 2019-0032919-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
Ann B. Harris - 56
MAR 09, 2019 02:17 AM
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## General Civil and Domestic Relations Case Filing Information Form

☑ **Superior or** ☐ **State Court of** Cobb **County**

**For Clerk Use Only**

**Date Filed** 03-09-2019 **Case Number** 19101808
**MM-DD-YYYY**

| **Plaintiff(s)** | **Defendant(s)** |
|---|---|
| Randstad General Partner (US), LLC | Beacon Hill Staffing Group, LLC |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| | Bestreich, Shawna |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| | Adams, Erik |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| | |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |

**Plaintiff's Attorney** Meier, Alex **Bar Number** 282350 **Self-Represented** ☐

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Automobile Tort
- ☐ General Tort
- ☑ Contract
- ☐ Real Property
- ☐ Civil Appeal
- ☐ Habeas Corpus
- ☐ Restraining Petition
- ☐ Injunction/Mandamus/Other Writ
- ☐ Garnishment
- ☐ Landlord/Tenant
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Adoption
- ☐ Family Violence Petition
- ☐ Other Domestic Relations

**Post-Judgement – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony.
- ☐ Modification
- ☐ Administrative/Other

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all the same parties, subject matter, or factual issues. If so, provide a case number for each.

_______________ **Case Number** _______________ **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. §9-11-7.1.

☐ Is interpreter needed in this case? If so, provide the language(s) required. _______________
**Language(s) Needed**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

19-A-0032920-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
Ann B. Harris - 56
MAR 09, 2019 02:17 AM
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

DISCLOSURE STATEMENT
CLERK OF SUPERIOR COURT

CASE NUMBER **19101808**

**Randstad General Partner (US), LLC**
Plaintiff

Vs.

**Beacon Hill Staffing Group, LLC; Bestreich, Shawna; Adams, Erik**
Defendant

TYPE OF ACTION

- o Divorce without Agreement Attached
- o Divorce with Agreement Attached
- o Domestic Relations
- o Damages Arising out of Contract
- ✓ Damages Arising out of Tort
- o Condemnation
- o Equity
- o Zoning – County Ordinance Violations (i.e., Injunctive Relief-Zoning)
- o Zoning Appeals (denovo)
- o Appeal, Including denovo appeal – excluding Zoning
- o URESA
- o Name Change
- o Other
- o Recusal
- o Adoption

PREVIOUS RELATED CASES

Does this case involve substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, as any other case filed in this court (Whether pending simultaneously or not)?

✓ NO
o YES – If yes, please fill out the following:

1. Case # ____________________
2. Parties ____________________
3. Assigned Judge ____________
4. Is this case still pending? o Yes o No
5. Brief description of similarities:

/S/ **Meier, Alex**
Attorney or Party Filing Suit

ID# 2019-0041186-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
MAR 26, 2019 10:07 AM
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

**IN THE SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

**RANDSTAD GENERAL PARTNER (US), LLC,**

**Plaintiff,**

v.

**BEACON HILL STAFFING GROUP, LLC, et al.,**

**Defendants.**

**CIVIL ACTION**
**FILE NO. 19101808**

## AFFIDAVIT OF SERVICE

COMES NOW AMY FERRERO, before the undersigned officer duly authorized to administer oaths and, after being duly sworn on oath deposes and states that she has been permanently appointed by this Court for service of process per Order attached, she is a citizen of the United States, over the age of eighteen (18), and is a party having no interest in the above styled case, states that on March 12, 2019 at 11:34 AM, she served BEACON HILL STAFFING GROUP, LLC, by personally serving BARRY SMITH, Corporation Service Company, Registered Agent, at his business located at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092, with SUMMONS, COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, DISCLOSURE STATEMENT and GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 13 day of MARCH, 2019

Legal Ease Attorney Services, Inc.
645 Waldo Street
Atlanta, GA 30312
404-849-1240

Sworn to and subscribed before me
this 13th day of March, 2019

Notary Public

My commission expires:

KATHERINE BOLLING
NOTARY PUBLIC
COMMISSION EXPIRES JANUARY 28, 2022
FULTON COUNTY, GEORGIA

Filed In Office Jan-02-2019 08:22:55
19-1-0011
Page 1

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

Rebecca Keaton
Clerk of Superior Court Cobb County

IN RE: Permanent Process Servers
Case Number: 19-1-0011

## ORDER

The Cobb Superior Court Council of Judges having established a roster of permanent process servers pursuant to O.C.G.A. § 9-11-4(c) and the applicant below having submitted an application to be included on said rosr.ter, it hereby found as follows;

1.

The applicant has submitted an application through the Cobb Superior Court Administrator, whose responsibility it is to investigate and administer this order and to maintain the list of permanent process servers.

2.

Said application contains an endorsement of applicant by a member of good standing of the State Bar of Georgia.

3.

The Cobb Superior Court Administrator has conducted a Georgia Criminal Information Center (GCIC) criminal background check to insure applicant has not been convicted of any felony charge not discharged by the Georgia First Offender Act.

THEREFORE the application to be a permanent process server has been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this until January 4, 2020.

SO ORDERED this 6 day of Dec 2018.

GEORGIA, COBB COUNTY
I HEREBY CERTIFY THE WITHIN AND FOREGOING TO BE A TRUE, CORRECT AND COMPLETE COPY OF THE ORIGINAL THAT APPEARS ON RECORD
CASE No. 19-1-0011 IN THIS OFFICE
THIS 2 DAY OF Jan 20 19
DEPUTY CLERK, COBB COUNTY COURT
COBB COUNTY, GEORGIA

Presiding Judge
Cobb County Superior Court
Cobb Judicial Circuit

GEORGE H. KREEGER
SENIOR JUDGE, STATE OF GEORGIA
PRESIDING IN COBB JUDICIAL CIRCUIT

Applicant:
Amy Lynn Ferrero
645 Waldo Street
Atlanta, GA 30312

Approved By: Court Administrator

Judicial Administrative Manager

ID# 2019-0041197-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
MAR 26, 2019 10:11 AM
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

**CAUSE NO. 19101808**

| | | |
|---|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC<br>**PLAINTIFF** | § | |
| VS. | § | IN THE SUPERIOR COURT OF COBB COUNTY STATE OF GEORGIA |
| BEACON HILL STAFFING GROUP, LLC, ET AL<br>**DEFENDANT** | § | COUNTY, GA |

**RETURN OF SERVICE**

**ON Tuesday, March 12, 2019 AT 2:12 PM**
SUMMONS, COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT A, EXHIBIT B, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM for service on Shawna Bestreich came to hand.

**ON Wednesday, March 13, 2019 AT 2:30 PM, I, Guy Connelly, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** Shawna Bestreich, 7137 ROYAL LANE, DALLAS, DALLAS COUNTY, TX 75230 .

My name is Guy Connelly. My address is 1201 Louisiana, Suite 370, Houston, Texas 77002, USA. I am a private process server certified by the Texas Judicial Branch Certification Commission (PSC 2201, expires 9/30/2020 12:00:00 AM). My date of birth is 11/4/1951. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case, and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in DALLAS COUNTY, TX on Wednesday, March 13, 2019 AT 2:30 PM.

/S/ Guy Connelly

55533871v1

Doc ID: 260789_1

ID# 2019-0041203-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
19101808
MAR 26, 2019 10:09 AM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

**CAUSE NO. 19101808**

| | | |
|---|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC<br>**PLAINTIFF** | § | |
| VS. | § | IN THE SUPERIOR COURT OF COBB COUNTY STATE OF GEORGIA |
| BEACON HILL STAFFING GROUP, LLC, ET AL<br>**DEFENDANT** | § | COUNTY, GA |

**RETURN OF SERVICE**

**ON Tuesday, March 12, 2019 AT 2:13 PM**
SUMMONS, COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT A, EXHIBIT B, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM for service on Erik Adams came to hand.

**ON Saturday, March 16, 2019 AT 7:15 PM, I, Doug Hubbs, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** Erik Adams, 1837 VALENCIA DRIVE, ALLEN, COLLIN COUNTY, TX 75013 .

My name is Doug Hubbs. My address is 1201 Louisiana, Suite 370, Houston, Texas 77002, USA. I am a private process server certified by the Texas Judicial Branch Certification Commission (SCH 07364, expires 8/31/2019 12:00:00 AM). My date of birth is 10/12/1970. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case, and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in COLLIN COUNTY, TX on Saturday, March 16, 2019 AT 7:15 PM.

/S/ Doug Hubbs