FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 19 2020

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDSTAD GENERAL PARTNER (US), LLC,

Plaintiff,

v.

BEACON HILL STAFFING GROUP LLC, SHAWNA BESTREICH, and ERIK ADAMS,

Defendants.

CIVIL ACTION NO.
1:19-CV-1655-ODE

ORDER

This intentional interference with contractual relations action is before the Court on Plaintiff's Motion for Leave to Amend Scheduling Order and for Leave to File Amended Complaint/Supplemental Pleading (hereinafter "Motion to Amend") [Doc. 86], Defendant Beacon Hill's Motion for Protective Order Concerning the Deposition of Beacon Hill's Chief Executive Officer [Doc. 90], Plaintiff's Motion to Compel and Motion for Sanctions [Doc. 111], Defendant Beacon Hill's Renewed Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 112]; and Plaintiff's Motion to Clarify Order on Discovery Disputes [Doc. 113].

For the reasons provided below, the Court GRANTS Beacon Hill's Renewed Motion to Dismiss for Lack of Personal Jurisdiction and Plaintiff's Motion to Clarify Order on Discovery Disputes. The action against Beacon Hill is hereby DISMISSED without prejudice to Randstad's right to refile its claims against Beacon Hill in an appropriate forum. The Court

therefore DENIES Beacon Hill's Motion for Protective Order Concerning the Deposition of Beacon Hill's Chief Executive Officer as MOOT. Randstad is DIRECTED to make any needed amendments to its Motion to Amend and Motion to Compel and Motion for Sanctions within fourteen (14) days of entry of this Order in light of the Court's dismissal of Beacon Hill as a party to this lawsuit.

## I. INTRODUCTION

The factual allegations from Plaintiff's complaint [Doc. 1-2] are as follows. Plaintiff Randstad General Partner (US), LLC ("Randstad") is a staffing company that specializes in placing temporary employees in office, clerical, and light industrial positions in a variety of industries [Doc. 1-2 at 6 ¶ 13]. Randstad is a Delaware limited liability company whose sole member is a Delaware corporation and whose principal place of business is located in Georgia [Doc. 1 at 5 ¶ 14]. Defendant Beacon Hill Staffing Group, LLC ("Beacon Hill") is likewise a staffing company [Doc. 1-2 at 10 ¶ 29]. Beacon Hill is a Massachusetts limited liability company whose members are allegedly domiciled in Massachusetts and Florida [Doc. 1 at 5 ¶ 13].

Defendant Shawna Bestreich ("Bestreich") joined Randstad as the Vice President of Market Sales on January 19, 2016 [Doc. 1-2 at 10 ¶ 31]. Defendant Erik Adams ("Adams") joined Randstad as a Staffing Manager on July 17, 2017 [Doc. 1-2 at 15 ¶ 47]. As a condition of employment, both parties signed an employment agreement (collectively the "Agreements") which contained a covenant not to compete [Doc. 1-2 at 10-12 ¶¶ 32, 34, 35; Doc.

1-2 at 15-16 ¶¶ 48, 50, 51]. The Agreements also contained a Georgia forum-selection clause, dictating that any disputes arising under the Agreements must be litigated exclusively in Georgia [Doc. 1-2 at 12-13 ¶¶ 37, 38; Doc. 1-2 at 17 ¶¶ 53, 54]. Specifically, the forum-selection clause in each agreement states:

> [T]he Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision.

[Doc. 1-2 at 12-13 ¶ 37; Doc. 1-2 at 17 ¶ 53].

Bestreich resigned from Randstad on June 14, 2018 [Doc. 1-2 at 13 ¶ 39] and began working as a Division Director for Beacon Hill in June of 2018 [Doc. 1-2 at 13 ¶ 40]. Adams resigned from Randstad on September 21, 2018 [Doc. 1-2 at 17 ¶ 55] and began working as a Senior Account Executive for Beacon Hill in October of 2018 [Doc. 1-2 at 17 ¶ 56].

On March 9, 2019, Randstad filed suit against Beacon Hill, Bestreich, and Adams (collectively, "Defendants") in the Superior Court of Cobb County [Doc. 1-2 at 2]. Randstad brought four claims against Defendants: (1) an intentional interference with contractual relations claim against all three defendants; (2) a breach-of-contract claim against Bestreich; (3) a breach-of-contract claim against Adams; and (4) a civil conspiracy claim against all three defendants [Doc. 1-2 at 25-29]. For relief, Randstad sought recovery of litigation expenses pursuant to O.C.G.A. § 13-6-11, punitive damages pursuant to O.C.G.A.

§ 51-12-5.1, money damages, and equitable relief recognizing and enforcing the restrictive covenants in the Agreements [Doc. 1-2 at 29-30].

## II. RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

On April 29, 2019, Defendant Beacon Hill filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 10]. On June 4, 2019, Randstad responded to Beacon Hill's Motion to Dismiss [Doc. 26], to which Beacon Hill replied on June 18, 2019 [Doc. 29].

On November 18, 2019, the Court denied Beacon Hill's Motion to Dismiss without prejudice, but ordered the parties to conduct limited jurisdictional discovery as to Beacon Hill's knowledge of the forum-selection clause contained in the individual defendants' non-compete agreements [Doc. 58]. The Court determined it would not have personal jurisdiction over Defendant Beacon Hill if Randstad is unable to produce evidence that Defendant Beacon Hill had knowledge of the forum-selection clause prior to allegedly interfering with Bestreich and Adams' employment contracts. The Court's personal jurisdiction analysis from its November 18, 2019 order [Doc. 58] was as follows:

> Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Beacon Hill moves the Court to dismiss this action against it for lack of personal jurisdiction [Doc. 10].[1] Under Rule 12(b)(2), the burden of establishing

---

[1] Defendants Bestreich and Adams have not asserted any defenses based on personal jurisdiction [Doc. 8; Doc. 9].

personal jurisdiction rests with the plaintiff. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."). "A prima facie case [of personal jurisdiction] is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). If "the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (citation and internal quotation marks omitted). Where the plaintiff's complaint and defendant's evidence regarding jurisdiction conflict, "the district court must construe all reasonable inferences in favor of the plaintiff." Madara, 916 F.2d at 1514.

Federal courts sitting in diversity "undertake[] a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Mazer, 556 F.3d at 1274 (citation omitted). Only where both prongs of the analysis are satisfied "may a federal or state court

exercise personal jurisdiction over a nonresident defendant." Madara, 916 F.2d at 1514.

**A. Georgia's Long-Arm Statute**

Because long-arm statutes are governed by state law, "federal court[s are] required to construe [them] as would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998). Therefore, the Court "must interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." Diamond Crystal Brands, 593 F.3d at 1258.

Randstad argues that Beacon Hill is subject to the Court's jurisdiction under either O.C.G.A. § 9-10-91(1) or O.C.G.A. § 9-10-91(3) [Doc. 1-2 at 5 ¶ 8]. These sections of Georgia's long-arm statute provide:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent he or she: (1) Transacts any business within this state; . . . [or] (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business . . . in this state.

O.C.G.A. § 9-10-91. To satisfy the "transacts any business" subsection of the long-arm statute, the defendant must have "purposefully done some act or consummated some transaction in [Georgia]." Diamond Crystal Brands, 593 F.3d at 1264 (citation and emphasis omitted). Accordingly, this section of long-arm jurisdiction in Georgia "expressly depends on the actual transaction of business--the doing of some act or consummation of some transaction--by the

defendant in the state." Id. at 1260. To exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act occurring outside of Georgia, the plaintiff similarly must show that the tortfeasor defendant "regularly" conducted or solicited business in Georgia, or derived "substantial revenue from goods used or consumed or services rendered" in Georgia. O.C.G.A. § 9-10-91(3); see also Henriquez v. El Pais Q'Hubocali.com, 500 F. App'x 824, 828-29 (11th Cir. 2012).

According to the allegations in Randstad's complaint, Beacon Hill has two or three offices in Georgia and regularly transacts business in Georgia [Doc. 1-2 at 5 ¶ 8; Doc. 26 at 20 n.8]. Randstad also alleges that Beacon Hill's tortious conduct has harmed Randstad at its principle place of business in Georgia [Doc. 1-2 at 5 ¶ 8]. Specifically, Randstad contends that Beacon Hill's actions allowed it to gain "knowledge of and . . . access to Randstad's trade secrets and other confidential proprietary information" [Doc. 1-2 at 7 ¶ 20]. This conduct--according to Randstad--has severely harmed Randstad's competitive position in the staffing industry [Doc. 1-2 at 10 ¶ 29]. Beacon Hill does not challenge these assertions.[2] Therefore, construing the facts in the light most favorable to Randstad, the Court finds that personal jurisdiction is

---

[2] In its Motion to Dismiss, Beacon Hill states: "In this case, pretermitting whether the requirements of Georgia's Long-Arm Statute are met, Beacon Hill is not subject to jurisdiction in Georgia under the Due Process Clause" [Doc. 8 at 27].

appropriate under O.C.G.A. § 9-10-91(1) and O.C.G.A. § 9-10-91(3).

**B. Due Process Clause**

Having found that Georgia's long-arm statute authorizes jurisdiction, the Court addresses jurisdiction under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause operates "to limit the power of a State to assert [personal] jurisdiction over a nonresident defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984). The Supreme Court has recognized two categories of personal jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 126 (2014). The first category--general jurisdiction--authorizes jurisdiction over a defendant where the defendant's in-state activities are "continuous and systematic." See Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 317 (1945). The second category--specific jurisdiction--authorizes jurisdiction in suits "arising out of or related to the [defendant's] activities within the State." Helicopteros, 466 U.S. at 409. Here, Randstad only relies on specific jurisdiction.[3]

Whether a forum State may assert specific jurisdiction over a nonresident depends on "the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984). To

[3] In its Response to Beacon Hill's Motion to Dismiss, Randstad stated it "relies solely on specific jurisdiction" [Doc. 26 at 6].

determine whether a forum State has specific jurisdiction over a nonresident, the Eleventh Circuit Court of Appeals applies a three-part test, which examines:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks omitted) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985), Helicopteros, 466 U.S. at 413-14, and Int'l Shoe, 326 U.S. at 316)). "The plaintiff bears the burden of establishing the first two prongs," and if he succeeds, "a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id.

The parties' dispute centers around the second prong--purposeful availment. In intentional tort cases, "there are two applicable tests for determining whether purposeful availment occurred." Id. at 1356. First, the Court may "apply a traditional purposeful availment analysis." Id. The Court may also apply the "effects test," articulated by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). Id. Although Randstad relies only on the "effects test" to assert jurisdiction over Beacon Hill, the Court addresses both.

i. Traditional Purposeful Availment Analysis

Under the traditional purposeful availment analysis, the Court assesses the nonresident defendant's contacts with the forum state and asks whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357. Beacon Hill's only contacts with Georgia are its locations in Georgia. However, none of the activities surrounding the recruitment or hiring of Bestreich and Adams were related to Beacon Hill's Georgia locations. Both Bestreich and Adams lived and worked exclusively in Texas, first for Randstad's Texas location then for Beacon Hill's Texas location [Doc. 10-1 at 13]. Nothing in the record indicates that Beacon Hill's Georgia locations were involved in the underlying allegations. Because Randstad cannot satisfy the second prong of the traditional purposeful availment analysis, the Court finds it does not have personal jurisdiction over Beacon Hill based on Beacon Hill's Georgia offices.

ii. Calder's "Effects Test"

Under Calder's "effects test," "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." Id. at 1355; see also N. Am. Med. Corp. v. Axium Worldwide, Inc., Civil Case

No. 1:06-CV-1678-JTC, 2009 WL 1035248, at *5 (N.D. Ga. Apr. 9, 2009) ("The effects of one's activities may establish the minimal contacts with a forum state when the nonresident defendant commits an intentional tort outside the forum."). The "effects test" was first articulated by the Supreme Court in Calder v. Jones. There, plaintiff Shirley Jones brought suit in a California state court, alleging she had been libeled in an article written and edited by the defendants in Florida. Calder, 465 U.S. at 784. The issue before the Supreme Court was whether a California state court had personal jurisdiction over the defendants--a Florida corporation and its Florida employees. Id. at 785. The Supreme Court found that the California court had personal jurisdiction over the defendants, reasoning their "intentional, and allegedly tortious, actions were expressly aimed at California." Id. at 789. The defendants wrote the article knowing it would have a potentially devastating impact upon Jones because she lived in the state where the newspaper had its largest circulation. Id. at 789-90. The Supreme Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id. at 790.

Adopted from Calder, the "effects test" therefore requires showing the nonresident defendant: "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the

defendant should have reasonably anticipated." Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd, 722 F. App'x 870, 880 (11th Cir. 2018) (citation omitted). Randstad argues that Beacon Hill's intentional interference with a contract containing a Georgia forum-selection clause satisfies all three elements. Beacon Hill does not challenge the first prong--that intentional interference with a contractual relationship is an intentional tort. Rather, Beacon Hill challenges the second and third prongs, arguing that any alleged contractual interference was not aimed at Georgia and that Randstad's alleged injury was not foreseeable.

The second prong asks "whether the defendant's allegedly tortious action was expressly aimed at the forum." Picot v. Weston, 780 F.3d 1206, 1214 (9th Cir. 2015) (citation and internal quotation marks omitted). The exact form of the Court's analysis varies from case to case and "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 807 (9th Cir. 2004). Because Randstad alleges Beacon Hill intentionally interfered with a contract, the Court must ask whether Beacon Hill expressly aimed such interference at Georgia. See Picot, 780 F.3d at 1214.

Randstad asserts that Beacon Hill expressly aimed its conduct at Georgia by knowingly interfering with Bestreich and Adams' employment agreements. Specifically, Randstad argues that Beacon Hill knew from previous litigation that

the Agreements contained a Georgia forum-selection clause, but nonetheless hired Bestreich and Adams, knowing any disputes arising from the agreements must be litigated in Georgia [Doc. 26 at 8]. Beacon Hill first denies that it was aware of the existence of the forum-selection clause [Doc. 29 at 2-3]. It further argues that all of its action was aimed at Texas, not Georgia, and that the presence of a forum-selection clause "does not redirect the 'aim' of Beacon Hill's alleged conduct from Texas to Georgia" [Doc. 29 at 5]. Thus, the question before the Court is whether Beacon Hill's alleged interference with a contract containing a Georgia forum-selection clause constitutes conduct aimed at Georgia.

After Calder, lower courts were split on the question of whether jurisdiction could lie in a forum based solely on the Plaintiff's alleged contacts with the forum. See generally IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). At least one circuit court interpreted Calder as permitting jurisdiction based solely on a plaintiff having felt injury in the forum. Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997), abrogation recognized by Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc., 132 F.3d 1200 (7th Cir. 1997) ("[T]here can be no serious doubt after Calder . . . that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor."). Others, however, adopted a narrower interpretation of Calder, finding that a plaintiff's injury in the forum is

insufficient by itself to establish jurisdiction over the alleged tortfeasor. See, e.g., IMO Indus., 155 F.3d at 256 (concluding New Jersey did not have personal jurisdiction over defendant despite effects being felt in New Jersey where focus of the dispute and contacts between the parties "all appear[ed] to be focused outside the forum"); Bartko v. Delta Air Lines, Inc., 1:08-cv-2688-WSD-RGV, 2009 WL 10656032, at *3 (N.D. Ga. June 18, 2009) (finding defendant's actions were not aimed at Georgia because whether the plaintiff "continued to suffer the effects of [the defendant's] conduct when she returned to Georgia does not satisfy the requirement that the conduct be 'expressly aimed'"). Rather, the plaintiff must "point to other actions that adequately demonstrate[] that the defendants targeted (or expressly aimed their conduct at) the forum, and thereby showed that the forum was the focal point of the tortious activity." IMO Indus., 155 F.3d at 263 (internal quotation marks omitted).

The Supreme Court addressed this confusion in Walden v. Fiore, 571 U.S. 277 (2014). There, the plaintiffs were flying from Puerto Rico to their home in Nevada with a connecting flight in Atlanta. Id. at 280. While on their layover in Atlanta, the plaintiffs were approached by an agent of the Drug Enforcement Administration ("DEA") who seized roughly $97,000 in cash. Id. The plaintiffs filed suit against the DEA agent in the United States District Court for the District of Nevada alleging a violation of their Fourth Amendment rights. Id. at 281.

The Court found that Nevada did not have personal jurisdiction over the DEA agent. Id. at 288. First the Court stressed that "the plaintiff cannot be the only link between the defendant and the forum." Id. at 285. "Rather, it is the defendant's conduct that must form the necessary connection." Id. When determining whether a defendant's conduct is sufficient, the Court noted that jurisdiction "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Id. at 286. "[A] defendant's random, fortuitous, or attenuated contacts" are "insufficient." Id. The Court then cited Calder as illustrative of these principles. Id. To find jurisdiction in Calder, the Court relied on defendants' phone calls to California, their article about the plaintiff's activity in California, and the brunt of the injury felt in California. Id. at 287. However the crux of Calder--according to the Court in Walden--was "largely a function of the nature of the libel tort." Id. Because libel is generally held to occur where the offending material is circulated, the injury to the plaintiff's reputation connected the defendants' conduct to California, not just to a plaintiff who lived there. Id. at 288. The Court ultimately found that because "no part of [the defendant's] course of conduct occurred in Nevada," jurisdiction was improper in Nevada. Id. at 288.

Therefore, for jurisdiction to be proper, "the defendant [must have] had some direct contact with the forum." Guaranteed Rate, Inc. v. Conn, 264 F. Supp. 3d

909, 917 (N.D. Ill. 2017); see, e.g., Montel Aetnastak, Inc. v. Miessen, 998 F. Supp. 2d 694, 710 (N.D. Ill. 2014) (upholding jurisdiction in Illinois where former employee shared confidential information with prospective new employer, which was based in Illinois); Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 722 (D.S.C. 2007) (finding jurisdiction in South Carolina proper where the employees defendant solicited and recruited both worked and lived in South Carolina); Gen. Motors Corp. v. Ignacio Lopez de Arriortua, 948 F. Supp. 656, 665 (E.D. Mich. 1996) (finding jurisdiction in Michigan proper where allegations all stemmed from alleged theft of trade secrets that occurred in Michigan).

Randstad contends that Beacon Hill's interference with the employment contracts is a virtual contact sufficient to confer jurisdiction. It argues that even though Beacon Hill did not physically enter the forum to interfere with the contract, it is nonetheless subject to jurisdiction here because of the virtual interference. To support its argument, Randstad cites Microsoft Corp. v. Mountain West Computers, Inc., No. C14-1772RSM, 2015 WL 4479490 (W.D. Wash. July 22, 2015) and Rosen v. Masterpiece Marketing Group, LLC, No. CV15-06629SJO(ASx), 2015 WL 12860487 (C.D. Cal. Dec. 23, 2015). The Court finds neither case supportive of Randstad's argument.

In Microsoft, Microsoft filed suit against a Utah company in Washington, alleging it had wrongfully activated

a number of invalid Microsoft product keys.[4] Microsoft, 2015 WL 4479490, at *1. The company's sales and services had been to customers in Utah. Id. at *2. No employee had "ever entered the State of Washington for purposes of selling a product, providing any service, attending any meeting associated with the business of [the company], or attending any sort of conference related to the business of [the company]." Id. The court found that nonetheless, Washington had jurisdiction to hear the case under the Calder "effects test." Id. at *7. When addressing whether the company had aimed its conduct at Washington, the court first observed that the company had ordered the products directly from a vendor located in Washington. Id. The court additionally noted that the company had "affirmatively contacted Microsoft through internet contact with its servers and by telephone to validate the software it was installing." Id. Therefore, the court found that

---

[4] Microsoft "use[s a] product activation process to detect piracy and protect consumers from the risk of non-genuine software." Id. at *1.

> A Microsoft product key is a 25-character alphanumeric string generated by Microsoft and provided either directly to Microsoft's customers or to Microsoft's original equipment manufacturer ("OEM") partners. Generally, when customers or OEMs install Microsoft software on a device, they must enter the product key. Then as part of the activation process, customers and/or OEMs voluntarily contact Microsoft's activation servers over the Internet and transmit the product keys and other technical information about their device to the servers.

Id. (citations omitted).

the defendant had aimed sufficient conduct at Washington for jurisdiction to be proper there. Id.

In Rosen, the plaintiff was a professional photographer residing in California. Rosen, 2015 WL 12860487, at *1. The defendant sold celebrity photographs and memorabilia on eBay and also displayed photographs on a number of websites. Id. The plaintiff alleged that the defendant "unlawfully copied/reproduced, uploaded/downloaded, caused to be uploaded/downloaded, publicly displayed, distributed, and attempted to sell" the plaintiff's photographs online. Id. The court found that jurisdiction in California was proper under the "effects test" because the defendant "ha[d] sufficient virtual economic contacts within the State related to its allegedly infringing conduct to constitute express aiming." Id. at *9. First, the defendant provided services to individuals or companies in California. Id. The defendant had also sold and licensed works to individuals and companies in California. Id. Moreover, the defendant extensively marketed its California-based images on its website. Id. The court therefore found that the defendant's conduct was sufficiently aimed at California. Id.

The Court finds these cases distinguishable from the instant matter. The defendants in Microsoft and Rosen both aimed conduct at the forum states. Although such conduct was virtual in the sense that no defendant stepped foot in the forum states, each defendant aimed some degree of conduct there that was related to the allegedly unlawful

conduct. Beacon Hill has two connections to Georgia: (1) its Georgia locations, and (2) the forum-selection clause. As previously discussed, the Georgia locations are unrelated to the present matter. Moreover, a forum-selection clause in a contract to which the nonresident defendant is not even a party cannot be sufficient. If knowledge that the plaintiff must litigate in a specified forum could confer jurisdiction, jurisdiction would be based solely on the plaintiff--a proposition expressly rejected by the Supreme Court in Walden. Without more, such as evidence that Beacon Hill interviewed the individual defendants in Georgia or contacted them from Beacon Hill's Georgia office, there is nothing in the record to indicate that Beacon Hill expressly aimed any conduct related to the instant lawsuit at Georgia. The Court therefore finds that personal jurisdiction is not proper on this ground. Because the Court finds that Randstad cannot prove the second prong of the "effects test," the Court does not address the third prong of whether the harm was foreseeable.

**C. Related-Party Doctrine**

Randstad next asserts that jurisdiction is proper based on the Agreements' forum-selection clause. A forum-selection clause mandates that a dispute arising out of a contract must be heard in the specified forum and, for jurisdictional purposes, generates the necessary connection between the forum State and the parties to the contract. See Burger King, 471 U.S. at 472 n.14 (noting enforcement

of a forum-selection clause does not offend due process so long as the "forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust"); Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court."); Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., CIVIL ACTION No. 18-1718, 2019 WL 398938, at *3 (E.D. Pa. Jan. 31, 2019) ("As a general matter, a party may consent to personal jurisdiction through a forum selection provision."). The forum-selection clause at issue in this case provides:

> [T]he Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision.

[Doc. 1-2 at 12-13 ¶ 37; Doc. 1-2 at 17 ¶ 53]. Although Beacon Hill is not a party to the Agreements, Randstad argues it is nonetheless bound by the forum-selection clause under the related-party doctrine.

A forum-selection clause "cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears." Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1169 (11th Cir. 2009). However, notwithstanding this general rule, a non-signatory can be bound by a forum-selection clause where the party is so "closely related to the dispute such that it becomes

foreseeable that [the party] will be bound." Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998) (citation and internal quotation marks omitted). Therefore, the Court must determine: (1) whether Beacon Hill and the individual defendants were closely related; and (2) whether it was foreseeable to Beacon Hill that it would be brought into this forum.

i. Closely Related

Courts have found a non-signatory "closely related" to a forum-selection clause in a variety of circumstances. Id. For instance, a corporate officer has been bound by a forum-selection clause to which the corporation was a signatory. See Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 757 (8th Cir. 2001) (finding individual who was shareholder, officer, and director of a signatory was "without question, closely related to the disputes arising out of the agreements and properly bound by their forum-selection provisions") (citation and internal quotation marks omitted). Successors-in-interest to a signatory have also been bound by a forum-selection clause. See Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 723 (2d Cir. 2013) (allowing owner of artwork, artifacts, and manuscripts to enforce forum-selection clause from contract between a licensee and sublicensee because the sublicensee's interests "were wholly derivative" of rights acquired by the licensee from the owner through their licensing agreement); Metro-Goldwyn-Mayer Studios Inc. v. Canal & Distrib. S.A.S., No.

07Civ.2918(DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) (enforcing forum-selection clause against non-party where plaintiff alleged non-party was a successor-in-interest to a signatory).

Courts have additionally enforced forum-selection clauses against non-signatory corporations wholly owned and controlled by a signatory. See Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988) (finding subsidiary could be bound by forum-selection clause in contract between parent company and plaintiff under closely related doctrine); Hugel v. Corp. of Lloyd's, 999 F.2d 206, 210 (7th Cir. 1993) (finding corporations owned and controlled by the plaintiff were "so closely related to the dispute that they [were] equally bound by the forum selection clause"). Third-party beneficiaries of a contract have also been bound by a forum-selection clause. See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983), overruling on other grounds recognized by In re McGraw-Hill Glob. Educ. Holdings LLC, 909 F.3d 48 (3d Cir. 2018) (enforcing forum-selection clause from contract between builder and supplier against owner because "it was perfectly foreseeable that [the owner was] a third-party beneficiary of" the contract).

Relying on this line of cases, Beacon Hill argues that in order for parties to be closely related, they must be in some sort of "ownership or subsidiary relationship." In re McGraw, 909 F.3d at 63. Beacon Hill additionally contends

that it needed to have had some involvement with the contract negotiations and receive a direct benefit from the Agreements to be considered closely related to the contract. Id. The Court disagrees.

Although the factors cited by Beacon Hill are relevant, they are not dispositive. Another factor courts consider is whether the non-signatory's interest in the dispute is derivative of or related to a signatory's interest in the dispute. See Lipcon, 148 F.3d at 1299 (enforcing forum-selection clause against plaintiffs' spouses where spouses' interests were "directly related to, if not predicated upon the interests of the . . . plaintiffs."). The United States District Court for the District of Minnesota used this factor to find parties much like Beacon Hill and the individual defendants closely related. In Medtronic, Inc. v. Endologix, Inc., 530 F. Supp. 2d 1054 (D. Minn. 2008), an employer filed suit against two former employees alleging that the employees breached their employment contracts by soliciting the former employer's clients on behalf of their new employer. Id. at 1055. The former employer also brought suit against the new employer, alleging it tortiously interfered with the employment contracts by causing the employees to breach the agreements. Id. The court found the new employer closely related to the dispute because the employees and their new employer shared a common interest--the employees' right to solicit their former employer's customers. Id. at 1057. This common interest was evidenced by their ability

to be represented by the same counsel. Id. The court therefore enforced a forum-selection clause from the employees' previous employment contract against the new employer.

Like in Medtronic, Beacon Hill and the individual defendants have a shared interest in the contract dispute: Bestreich and Adams' ability to continue working for Beacon Hill. Thus, Beacon Hill's interest in this dispute is "directly related to" to the interests of the individual defendants. Lipcon, 148 F.3d at 1299. The Court therefore finds the Defendants closely related for the purposes of enforcing the forum-selection clause.

ii. Foreseeability

Even where parties are closely related, it must still be foreseeable to the non-signatory that it could be brought into the forum. See Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC, No. 5:09-CV-2613, 2011 WL 711568, at *9 (N.D. Ohio Feb. 22, 2011) (noting the related-party doctrine "places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute") (citation omitted). With respect to claims of intentional interference with contractual relations, foreseeability hinges on knowledge of the forum-selection clause. Where a non-party has knowledge of the forum-selection clause, it is foreseeable that the non-party could be bound by it. See Medtronic, 530 F. Supp. 2d at

1056 (finding it was foreseeable that new employer could be bound by forum-selection clause where employer "was fully aware of the employment agreements and, hence, the forum-selection clauses"); see also RTM LLC v. Hordorff, CASE NO. 10-21288-CIV-HOEVELER, 2011 WL 13220456, at *1 (S.D. Fla. Feb. 2, 2011) (allowing non-signatory to enforce forum-selection clause where plaintiff's theory of the case was that the non-signatory "specifically knew about [the] prior contractual [relationship] and affirmatively induced" the breach). Where a plaintiff has failed to produce any evidence that a defendant was aware of the contract's existence, let alone the specific forum-selection clause, the foreseeability prong is not met. See Live Face on Web, 2019 WL 398938, at *4.

Randstad argues that Beacon Hill hired Bestreich and Adams with knowledge of the forum-selection clause, thus making it foreseeable to Beacon Hill that it would be bound by the clause [Doc. 26 at 18]. However, it is not evident to the Court at this time that Beacon Hill had knowledge of the forum-selection clause. Randstad averred in its complaint that "[u]pon information and belief," Beacon Hill had knowledge of the agreements [Doc. 1-2 at 13 ¶ 41; Doc. 1-2 at 17 ¶ 57; Doc. 1-2 at 24 ¶ 84; Doc. 1-2 at 26 ¶¶ 91, 92]. To support its belief that Beacon Hill had knowledge of the forum-selection clause, Randstad cited three lawsuits between it and Beacon Hill that had been filed in the last several years. However--as pointed out by Beacon Hill--Randstad brought these cases in Illinois,

Maryland, and Massachusetts [Doc. 1-2 at 21-22 ¶¶ 68, 74, 75]. According to Beacon Hill, these were the states in which Randstad's former employees worked [Doc. 29 at 3]. Therefore, Beacon Hill argues it would have no knowledge of a forum-selection clause which was either not present or not enforced. Without more in the record to suggest Beacon Hill had knowledge of the forum-selection clause, the Court is unable to ascertain whether the forum-selection clause can be used to assert personal jurisdiction over Beacon Hill.

**D. Jurisdictional Discovery**

In its response to Beacon Hill's Motion to Dismiss, Randstad requested jurisdictional discovery in the event the Court was not certain personal jurisdiction exists [Doc. 26 at 19]. Where there are disputed jurisdictional facts, plaintiffs are entitled to jurisdictional discovery. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731 (11th Cir. 1982) ("Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction."); see also Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984) ("Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discovery facts that would support his allegations of jurisdiction."); Blanco v. Carigulf Lines,

632 F.2d 656, 658 (5th Cir. 1980)[5] (noting "the rules entitle a plaintiff to elicit material facts regarding jurisdiction through discovery before a claim may be dismissed for lack of jurisdiction"). Although federal courts technically have the discretion to order jurisdictional discovery, a "district court's dismissal without affording the plaintiff any opportunity to proceed with reasonable discovery [is] premature and an abuse of the court's discretion." Majd-Pour, 724 F.2d at 903.

The Court agrees with Randstad that jurisdictional discovery is necessary in this case. However, the Court disagrees with Randstad as to the appropriate scope of the discovery. Randstad requested discovery regarding Bestreich and Adams' contact with Beacon Hill's Georgia locations. It contends that future discovery may reveal that either or both individual defendants interacted with Beacon Hill's Georgia offices. At no point prior to this request, however, did Randstad attempt to base jurisdiction on Beacon Hill's Georgia locations. Rather, it based its jurisdictional argument entirely on Calder's "effects test" and the related-party doctrine. Randstad cannot use jurisdictional discovery to acquire a basis for jurisdiction that Randstad at no point asserted or produced evidence to support. Rather, jurisdictional discovery is

---

[5] Decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981 are binding on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

> only appropriate where there are disputed jurisdictional facts. The Court therefore DENIES Randstad's request for jurisdictional discovery on Bestreich and Adams' contact with Beacon Hill's Georgia locations but ORDERS that the parties conduct limited jurisdictional discovery as to Beacon Hill's knowledge of the forum-selection clause. The parties will have sixty (60) days after the date of entry of this Order in which to conduct jurisdictional discovery. The Court DENIES WITHOUT PREJUDICE Defendant Beacon Hill's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 10]. Defendant Beacon Hill may renew its motion after adequate discovery has been completed.

[Doc. 58].

Therefore, the parties had until January 17, 2020 to conduct jurisdictional discovery regarding Beacon Hill's knowledge of the forum-selection clause. However, the parties filed a Joint Motion for Extension of Time to complete discovery [Doc. 82] on January 20, 2020. The Court granted the parties joint motion on January 22, 2020 [Doc. 83], and extended the deadline to complete discovery to March 27, 2020.

On April 7, 2020, Beacon Hill filed a Renewed Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) [Doc. 112].[6] Randstad filed a response in opposition on May 1, 2020 [Doc. 119], to which Beacon Hill replied on May 15, 2020 [Doc. 124].

---

[6] Defendants Bestreich and Adams have not asserted any defenses based on personal jurisdiction [Doc. 8; Doc. 9].

As stated by Beacon Hill in its reply brief, "the Court was clear that the touchstone for determining jurisdiction under the related party doctrine is whether Beacon Hill had actual knowledge of the Georgia forum selection clauses in Ms. Bestreich and Mr. Adams' Employee Non-Competition and Confidentiality Agreements with Plaintiffs" [Doc. 124 at 1-2]. Randstad points to the following as evidence that Beacon Hill had knowledge of the forum-selection clause:

(1) A cease-and-desist letter Randstad sent to Bestreich on July 24, 2018 that was forwarded to Beacon Hill [Doc. 119 at 9, 11-12];

(2) Bestreich's knowledge of her own forum-selection clause at the time she offered Adams a position [Doc. 119 at 13];

(3) Bestreich's offer letter [Doc. 119 at 17-28].

The Court finds none of these grounds sufficient to establish personal jurisdiction.

Randstad first argues that Beacon Hill's knowledge of the forum-selection clause can be evidenced by a cease-and-desist letter sent to Bestreich on July 24, 2018. Randstad sent the letter, with a copy of her employment Agreement attached, to remind Bestreich of her non-compete obligations. Bestreich then forwarded the letter and the Agreement to Charlie Cain, Bestreich's supervisor and a member of Beacon Hill's senior management. However, according to Randstad's complaint, Bestreich resigned from Randstad on June 14, 2018 [Doc. 1-2 at 13 ¶ 39] and began working as a Division Director for Beacon Hill in June of 2018 [Doc. 1-2 at 13 ¶ 40]. Thus, Bestreich--

and therefore Beacon Hill--received the letter with the Bestreich Agreement after Beacon Hill hired Bestreich.

Randstad spends a great deal of time arguing that the Court need not find that Beacon Hill knew about the Georgia forum-selection clause when it hired Bestreich. It argues that under the "continuing tort" theory, every day Beacon Hill employed Bestreich and Adams in violation of their non-competes *after* having knowledge of the non-compete, the violation constituted a separate breach. According to Randstad, if Beacon Hill learned of the forum-selection clauses at any time during its employment of Bestreich and Adams, and continued to employ them in violation of the Agreements, Beacon Hill became bound by the Agreements' forum-selection clause.

The "continuing tort" theory applies "where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time." Master Mind Music, Inc. v. Block Enters., LLC, Civil Action No. 1:12-CV-162-RWS, 2012 WL 6625754, at *5 (N.D. Ga. Dec. 18, 2012) (citation omitted). Randstad relies on the United States Court of Appeals for the Eleventh Circuit's decision in Aerotek, Inc. v. Zahn, 625 F. App'x 394, 396 (11th Cir. 2015), which states, in relevant part:

> [T]here are reasonable inferences that each day that the Employees worked in violation of the covenants constituted a separate breach, and that each day that C-T employed Employees knowing that they were acting in violation of the Non-Compete covenant and/or the Non-Solicitation covenant constituted a separate breach. Thus, it was not only the *hiring* of the Employees that breached the covenants. Taking the reasonable inferences in favor of Aerotek, we believe there are allegations that C-T had knowledge of such

> breaches following receipt of the cease-and desist letter, and therefore, Aerotek plead a plausible prima facie case of tortious interference.

Aerotek, 625 F. App'x at 396 (footnote omitted).

However, Aerotek was based on Florida law, and the Court made it clear that it is **Florida law** that recognizes a continuing violation principle when restrictive covenants are violated by ongoing, separate acts. Id. at 396. Georgia courts, however, have not extended the "continuing tort" doctrine to tortious interference with contract claims. See, e.g., Watkins v. Capital City Bank, 711 F. App'x 591, 592 (11th Cir. 2018) (noting under Georgia law, the "continuous tort theory . . . is only applicable to cases involving personal, bodily injury"); Master Mind, 2012 WL 6625754, at *5 ("However, the Georgia Supreme Court . . . expressly limited the theory of continuing torts and the 'discovery rule' to personal injury cases. Because tortious interference with contractual relations is not a personal injury claim, the 'discovery rule' does not apply here.").

The elements of a tortious interference action are illustrative as to why the doctrine should not extend to tortious interference cases. Under Georgia law, a claim for intentional interference with contractual relations requires showing the defendant:

> (1) took improper action or engaged in wrongful conduct without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a breach of contractual obligations or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (3) that their tortious conduct proximately caused damage to [Randstad].

Moore v. BellSouth Mobility, Inc., 243 Ga. App. 674, 676 (2000); see also Harrick v. Nat'l Collegiate Athletic Ass'n, 454 F. Supp. 2d 1255, 1259-60 (N.D. Ga. 2006); Tap Room, Inc. v. Peachtree-TSG Assocs., LLC, 270 Ga. App. 90, 92 (2004).[7]

The third element therefore requires showing that a defendant-employer "**induced a breach of contractual obligations.**" Black's Law Dictionary defines "inducement" as "the act or process of enticing or persuading another person to take a certain course of action." Black's Law Dictionary 379 (4th ed. 1996). Such action can only occur once--when the defendant-employer entices or persuades a prospective employee to breach his restrictive covenant and work for the defendant-employer instead. Here, that act was the inducement of Bestreich and Adams to breach their Agreements, which occurred when Beacon Hill hired them. The Court therefore looks to the time at which Beacon Hill hired Bestreich and Adams to determine foreseeability. Put another way, to be foreseeable that it would be bound by the Agreements' forum-selection clause, Beacon Hill must have had knowledge of the clause at the time it committed the tort--that is, at the time it hired Bestreich and

---

[7] In contrast, to support a claim of tortious interference under Florida law, a claimant must show:

> (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff.

Aerotek, 625 F. App'x at 395. Of importance, Florida law does not require showing the defendant-employer **induced** a breach.

Adams. Because Randstad sent Bestreich the cease-and-desist letter and copy of the Bestreich Agreement after Beacon Hill hired Bestreich, the letter cannot be used as evidence that Beacon Hill had knowledge of the Agreement--and the contents therein--at the time it hired Bestreich.

Randstad next argues that Beacon Hill acquired knowledge of the forum-selection clause when Bestreich--acting as an agent of Beacon Hill--recruited and hired Adams. Because Bestreich had knowledge of her own Agreement and forum-selection clause, Randstad argues she must have had knowledge of Adams' Agreement and forum-selection clause. Beacon Hill first argues in response that Bestreich did not have actual knowledge of the terms of the Bestreich Agreement, citing the following deposition testimony concerning the July 24, 2018 letter:

> Q. Did you read this letter when you got it?
>
> A. No.
>
> Q. No?
>
> A. I didn't.
>
> Q. What did you do with it?
>
> A. I scanned it and sent it to Charlie.
>
> Q. Okay. Did you read the agreement that was attached to it?
>
> A. I did not.

[Doc. 119-4 at 8].

The Court finds the suggestion that Bestreich did not have actual knowledge of the terms of her own Agreement nonsensical. Notwithstanding her deposition testimony to the contrary, Bestreich was a signatory to her Agreement and therefore should

have knowledge of its terms. Her failure to thoroughly read and understand the terms of her own employment contract cannot be a means to argue she does not have knowledge of them--namely here, the forum-selection clause.

Beacon Hill next argues that regardless of Bestreich's knowledge of her own Agreement, Randstad did not produce evidence that she had knowledge of Adams' Agreement. Beacon Hill points to the following deposition testimony:

> Q. And when you -- when you were talking to him, leaving aside who else he spoke to, about joining Beacon Hill from Randstad, did the topic of his employment agreement with Randstad ever come up?
>
> A. No.
>
> Q. You never asked him about it?
>
> A. I did not.
>
> Q. But you were aware he signed one similar to yours, correct?
>
> A. I -- I wasn't aware that he did sign one, but I assumed that he did as part of his onboarding.

[Doc. 119-4 at 18-19].

The Court agrees with Beacon Hill that the evidence produced by Randstad is insufficient. Although Bestreich and Beacon Hill had knowledge of the Bestreich Agreement as of July 24, 2018--the date Bestreich received, and forwarded, Randstad's cease-and-desist letter--there is nothing in the parties' briefings to suggest that Bestreich or Beacon Hill had actual knowledge of the Adams Agreement. The Court cannot simply infer that knowledge of a clause in one agreement constitutes knowledge of a clause in another; they are separate agreements. This finding is bolstered by the fact that Beacon

Hill and Randstad have been engaged in at least three other lawsuits in the last several years, which were brought in Illinois, Maryland, and Massachusetts [Doc. 1-2 at 21-22 ¶¶ 68, 74, 75]. Therefore, there are at least three other agreements that either did not contain the forum-selection clause currently in dispute or contained forum-selection clauses that were not enforced. Either way, the Court cannot infer Beacon Hill had knowledge of the forum-selection clause in the Adams Agreement from its knowledge of the Bestreich's forum-selection clause given the differences that can exist between various employment agreements.

Randstad last cites Bestreich's offer letter to argue Beacon Hill had knowledge of the Agreements' forum-selection clause. According to Randstad, Bestreich's offer letter included an agreement "to provide [her] with legal representation, with counsel of [Beacon Hill's] choice . . . in the event litigation arises as a result of [her] employment with Beacon Hill and [her] previous relationship with Randstad" [Doc. 79-2]. However, this letter does not establish that Beacon Hill knew of the forum-selection clause. Rather, it does explicitly what it says it does: ensures Bestreich that she would be provided with legal representation should any issues arise. Such an offer cannot be inflated to impute to Beacon Hill (1) knowledge that it was hiring Bestreich in violation of a non-compete; and (2) that the non-compete had a forum-selection clause.

To be sure, the Court is alarmed by Beacon Hill's apparent disregard for the fact that Randstad employees are generally

bound by a covenant not to compete. However, that is not the issue before the Court today. The Court must determine whether Beacon Hill had actual knowledge of Bestreich and Adams' forum-selection clauses at the time it hired Bestreich and Adams. Based on the evidence before the Court, the Court finds that Randstad did not meet its burden of proving that Beacon Hill had actual knowledge of the forum-selection clauses, and therefore, it was not foreseeable to Beacon Hill that it would be bound by them. Accordingly, the Court finds it does not have personal jurisdiction over Beacon Hill. Defendant's Renewed Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 112] is hereby GRANTED and the action against Beacon Hill is DISMISSED without prejudice to Randstad's right to refile the claims in an appropriate forum.

## III. MOTION TO CLARIFY ORDER ON DISCOVERY DISPUTES

On April 15, 2020, Randstad filed a Motion to Clarify Order on Discovery Disputes [Doc. 113]. Specifically, Randstad seeks clarification on the Court's Order filed March 18, 2020 [Doc. 100], in which the Court denied Randstad's Motion to Compel [Doc. 60].

In its Motion to Compel filed December 16, 2019 [Doc. 60], Randstad sought information pertaining to previous litigation between Randstad and Beacon Hill and information on Beacon Hill's hiring of other former Randstad employees not named in the instant action. In its March 18, 2020 Order, the Court stated that "[i]nformation pertaining to Beacon Hill's prior litigation has no bearing on whether Beacon Hill induced Bestreich and Adams to breach their restrictive covenants in

this action" [Doc. 100 at 16]. Randstad now seeks clarification as to whether this finding extends to requests for information pertaining to other Beacon Hill hires.

The Court clarifies that it does. To put it simply, information pertaining to other former-Randstad employees has no bearing on the alleged tortious interference with Bestreich and Adams' Agreements. If Randstad believes that Beacon Hill has tortiously interfered with other individuals' employment agreements with Randstad, Randstad should pursue litigation against those individuals and Beacon Hill. Because Randstad has chosen to pursue litigation only against Bestreich and Adams--and Beacon Hill for its alleged interference with the Bestreich and Adams Agreements--discovery is limited to information pertaining solely to Bestreich and Adams. Randstad may not use this lawsuit against Beacon Hill, directed at its involvement with Bestreich and Adams, to conduct a fishing expedition aimed at finding information about other potential breaches.

**IV. REMAINING MOTIONS**

On March 20, 2020, Defendant Beacon Hill filed a Motion for Protective Order Concerning the Deposition of Beacon Hill's Chief Executive Officer [Doc. 90]. In its motion, Beacon Hill requests that the Court issue a protective order prohibiting the deposition of Beacon Hill's CEO, Andy Wang. In light of the Court's dismissal of Beacon Hill as a party to this lawsuit, the Court DENIES Beacon Hill's Motion for a Protective Order AS MOOT.

On February 12, 2020, Randstad filed a Motion to Amend [Doc. 86]. On April 6, 2020, Randstad filed a Motion to Compel

and Motion for Sanctions [Doc. 111] asking the Court to compel Beacon Hill to produce Charlie Cain to appear for a second deposition and Andy Wang for a deposition--both at Beacon Hill's expense. In light of the Court's dismissal of Beacon Hill as a party to this lawsuit, the Court DIRECTS Randstad to make any needed amendments to these motions within fourteen (14) days of entry of this Order.

**V. CONCLUSION**

For the reasons provided above, the Court GRANTS Beacon Hill's Renewed Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 112] and Plaintiff's Motion to Clarify Order on Discovery Disputes [Doc. 113]. The action against Beacon Hill is hereby DISMISSED without prejudice to Randstad's right to refile its claims against Beacon Hill in an appropriate forum. The Court therefore DENIES Beacon Hill's Motion for Protective Order Concerning the Deposition of Beacon Hill's Chief Executive Officer [Doc. 90] as MOOT. Randstad is DIRECTED to make any needed amendments to its Motion to Amend [Doc. 86] and Motion to Compel and Motion for Sanctions [Doc. 111] within fourteen (14) days of entry of this Order in light of the Court's dismissal of Beacon Hill as a party to this lawsuit.

SO ORDERED, this 18 day of June, 2020.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE