**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC,<br>Plaintiff,<br>v.<br>SHAWNA BESTREICH and ERIK ADAMS,<br>Defendants. | Civil Action No.:<br>1:19-CV-01655-MHC |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, AND III OF ITS COMPLAINT AND ON DEFENDANTS' WAIVER/SELECTIVE ENFORCEMENT AFFIRMATIVE DEFENSES**

## PRELIMINARY STATEMENT

Randstad General Partner (US), LLC ("Randstad") is entitled to summary judgment on Counts I, II, and III of its Complaint, alleging breach of contract and tortious interference against Defendant Shawna Bestreich and breach of contract against Defendant Erik Adams.[1] It is undisputed that Bestreich executed an agreement with Randstad containing non-compete and non-solicitation covenants; that she resigned from Randstad and immediately began working for Beacon Hill in the same territory in a competing role in violation of the non-compete provision; and that she successfully solicited other Randstad employees, including Adams, to join Beacon Hill, in violation of their respective Randstad agreements.

Bestreich and Adams will likely argue that their Randstad agreements are unenforceable, but any such argument lacks merit. The agreements are enforceable under Georgia law. Bestreich and Adams will also no doubt raise all manner of irrelevant and immaterial arguments in an attempt to create a so-called "factual dispute"; but the material facts are few, they are undisputed, and they support Randstad's claims. Accordingly, Randstad is entitled to summary judgment on each of its claims.

[1] The Court dismissed Beacon Hill Staffing Group, LLC ("Beacon Hill") from this case for lack of personal jurisdiction (Dkt. 128) and Randstad therefore withdraws Count IV, which alleged a conspiracy between Beacon Hill and Bestreich/Adams.

Defendants' only notable substantive affirmative defense is that that Randstad has waived its right to enforce its non-competition covenants against them based on a theory of "selective enforcement" that has never been recognized in Georgia. Indeed, Defendants' argument—that Randstad must vigilantly scrutinize its former employees and file a lawsuit every time there is a or a suspected breach, regardless of how minor or inconsequential, even if the specific facts don't warrant filing suit or a pre-litigation resolution can be reached—transforms Randstad from a staffing company into a non-compete enforcement company. Such an approach is contrary to the Georgia Constitution's policy favoring the enforcement of reasonable restrictive covenants and ignores the extreme costs and other effects (such as burdening the courts and disincentivizing settlements) inherent in Defendants' approach. *See* O.C.G.A. § 13-8-50.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Randstad's Business in the Staffing Industry

Randstad is a leader in the staffing solutions industry. Randstad and its affiliates and subsidiaries provide individual employees to a diverse portfolio of businesses and organizations nationwide on a temporary or permanent basis to meet its customers' needs. Randstad's General Staffing Division, which Bestreich and Adams worked for, specializes in placing temporary employees in office, clerical,

and light industrial positions in a variety of industries. Beacon Hill is a staffing company and a competitor to Randstad. (Adams Dep. 8:2-8:7.)

### B. Bestreich's Employment With Randstad And Execution Of An Agreement Containing Post-Employment Restrictive Covenants

Bestreich began working for Randstad and signed Randstad's Employee Non-Competition and Confidentiality Agreement (the "Bestreich Agreement") on or about January 16, 2016. (Answer ¶ 32, ECF No. 9; Bestreich Dep. 56:16-57:4, SOMF Ex. D; SOMF Ex. C.) That agreement prohibited Bestreich, for 12 months post-employment, from, *inter alia*, competing with Randstad within 25 miles of its Dallas office where she worked if the position involved:

> (i) providing products or services competitive with the Business of the Company;
>
> (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;
>
> (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or
>
> (iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

(Agreement ¶ 4(d), SOMF Ex. C). The term "Business of the Company" is defined, in relevant part, as "services provided by [Randstad], including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services . . . or other services that are the same as or substantially similar to the

services Employee provided on behalf of [Randstad] within two (2) years prior to the date of Employee's separation from [Randstad]." (*Id.* ¶ 2(a).) The term "Restricted Territory" is defined as "the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction":

> (i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and
>
> (iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

(*Id.* ¶ 2(f).) In her last 12 months with Randstad, Bestreich was assigned to, managed, performed services in, and supervised and managed employees in Randstad's office in Dallas, Texas. (ECF No. 9, Bestreich Answer ¶ 31.)

The Bestreich Agreement further prohibited Bestreich, for a period of 18 months post-employment, from soliciting and/or hiring other Randstad employees

on behalf of a competitor with whom she had worked at Randstad during the final 12 months of her employment.[2] (Agreement ¶ 4(a).) In exchange for signing the Bestreich Agreement, Bestreich received valuable consideration, including employment at Randstad, training, and access to Randstad's confidential information and trade secrets. (Bestreich Agreement, SOMF Ex. C; Bestreich Dep. 50:1-52:13, 58:15-60:18, 62:23-64:23, SOMF Ex. D.) Despite what her lawyers may attempt to argue now, Bestreich testified under oath that she is not claiming that the Bestreich Agreement is unenforceable. (Bestreich Dep. 109:7-109:14, SOMF Ex. D.)

From January 19, 2016 to June 14, 2018, Bestreich worked as Randstad's Vice President – Market Sales. (Randstad Answer Rogg. No. 1, SOMF Ex. F.) In this role, Bestreich had significant duties in three verticals (business lines): Office and Administration ("O&A"), Finance and Accounting ("F&A"), and Non-Clinical

[2] Specifically, during that period, Bestreich could not:

> (iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or
>
> (iv) hire any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for any person or entity that competes with the Business of the Company.

(Agreement ¶ 4(a).)

Healthcare ("NCHC"). (Randstad Answer Rogg. No. 1, SOMF Ex. F; Bestreich Dep. 43:6-55:21, SOMF Ex. D; Adams Dep. 40:15-46:4, SOMF Ex. A). From January 2016 to January 2018, Bestreich had supervisory responsibility over employees in Dallas and Houston, including Adams. (*Id.*)

### C. Bestreich Resigned And Went To Work For Beacon Hill In A Competitive Role In The Same Territory

On or about June 4, 2018, Bestreich received an offer letter from Beacon Hill. (Bestreich Dep. 114:21-115:6, SOMF Ex. D; Beacon Hill Offer Letter, SOMF Ex. H). The offer letter contained an indemnity provision in which Beacon Hill agreed to provide Bestreich with legal representation "in the event litigation arises as a result of your employment with Beacon Hill and *your previous relationship with Randstad*." (Beacon Hill Offer Letter, SOMF Ex. H (emphasis added).) She accepted the offer on June 11, 2018 (Beacon Hill Offer Letter, SOMF Ex. H); resigned from Randstad on June 14, 2018 (ECF No. 9, Answer ¶ 39); and began working for Beacon Hill on June 18, 2018. (Bestreich Dep. 102:8-108:10, SOMF Ex. D.)

Since joining Beacon Hill, Bestreich has worked exclusively in its Dallas, Texas office, which is within the Restricted Territory. (Bestreich Dep. 124:2-124:20, 146:2-146:4, SOMF Ex. D). In fact, Bestreich was hired specifically to open and manage Beacon Hill Associates' Dallas office. (Bestreich Dep., at 124:2-124:20, SOMF Ex. D). Beacon Hill Associates is Beacon Hill's clerical and administrate

division, akin to Randstad's O&A vertical. (Bestreich Dep. 116:4-116:13, SOMF Ex. D; Adams Dep. 72:16-73:12, SOMF Ex. A). Bestreich's responsibilities during her employment with Beacon Hill included making O&A placements and managing others doing the same, just as she did for Randstad. (Bestreich Dep. 116:4-116:13, SOMF Ex. D; Adams Dep. 45:3-46:5; 72:16-73:12, SOMF Ex. A; Cain Dep. 78:20-84:16, SOMF Ex. I.) Bestreich admitted that her employment with Beacon Hill violates the non-compete provision in the Bestreich Agreement. (Bestreich Dep. 66:15-67:24, SOMF Ex. D.)

### D. Bestreich Admittedly Solicited Adams To Leave Randstad And Join Her At Beacon Hill In Violation Of His Post-Employment Restrictive Covenants

Adams began working for Randstad and signed Randstad's Employee Non-Competition and Confidentiality Agreement (the "Adams Agreement") on or about July 17, 2017. (Adams Dep. 46:12-46:23, SOMF Ex. A; Adams Agreement, SOMF Ex. J.) The Adams Agreement contains the same restrictive covenants as the Bestreich Agreement, and Adams likewise received valuable consideration for signing it. (Adams Dep. 48:3-48:20, SOMF Ex. A; Adams Agreement, SOMF Ex. J.) Like Bestreich, Adams testified under oath that he is not claiming in this case that it is unenforceable. (Adams Dep. 47:2-47:18, 79:14-80:1, SOMF Ex. A.)

During his tenure at Randstad, Adams worked exclusively in Randstad's

office in Dallas, Texas, as a Staffing Manager. (Randstad Int. 1, SOMF Ex. F; Adams Dep. 35:16-40:13, SOMF Ex. A). In this role, Adams worked in Randstad's NCHC division, where his duties included making placements in O&A roles. (Adams Dep. 32:5-32:20, 36:3-36:21, 85:6-86:4, SOMF Ex. A). Adams reported to Bestreich until she left to join Beacon Hill. (*Id.*).

Bestreich admittedly solicited Adams to leave Randstad and come work for her at Beacon Hill. Although Adams initially reached out to Bestreich, she encouraged him to apply to Beacon Hill, put him in touch with her supervisor, Charlie Cain, interviewed him, and offered him employment. (Adams Dep. 60:16-68:24, SOMF Ex. A; Bestreich Dep. 231:5-236:8, SOMF Ex. D.) Indeed, Cain did not even want to hire Adams, but Bestreich insisted that she be permitted to do so, and Cain ultimately relented. (Bestreich Dep. 231:5-232:6, 235:3-236:16, SOMF Ex. D.) Bestreich correctly assumed that Adams had signed Randstad's restrictive covenant agreement, just as she had, but she did not ask for a copy. (Bestreich Dep. 237:17-238:3, SOMF Ex. D; Adams Dep. 57:2-57:11, SOMF Ex. A.)

On or about September 12, 2018, Adams received an offer letter from Beacon Hill that was issued by Bestreich. (Adams Offer Letter, SOMF Ex. M,.) Adams accepted Beacon Hill's offer on September 18, 2018; resigned from Randstad on September 21, 2018; and began working for Beacon Hill—reporting directly to

Bestreich—on or about October 2, 2018. (Adams Dep. 68:15-75:11, SOMF Ex. A; Bestreich Dep. 233:13-233:23, SOMF Ex. D; ECF No. 9, Bestreich Answer ¶¶ 55-56; Adams Offer Letter, SOMF Ex. M.) Bestreich admits that her recruitment of Adams constitutes a breach of the Bestreich Agreement. (Bestreich Dep. 146:12-147:7; 169:5-170:15, SOMF Ex. D.) Adams worked exclusively in Beacon Hill's office in Dallas, Texas, which is less than 25 miles from the Randstad office at which he worked, and his responsibilities at Beacon Hill were focused exclusively on O&A placements. (*See* Resignation Letter, SOMF Ex. N; Bestreich Dep. 124:2-124:20, 146:2-146:4, SOMF Ex. D.)

### E. Bestreich Solicited Mooney To Join Beacon Hill

Bestreich also solicited another Randstad employee, Shauna Mooney, to leave Randstad and instead work for her at Beacon Hill. Bestreich admittedly encouraged Mooney to leave Randstad and join Beacon Hill. (Bestreich Dep. 175:24-176:19, SOMF Ex. D.) [3] Bestreich submitted Mooney's resume to Charlie Cain, her supervisor at Beacon Hill, talked up Mooney's experience, provided information about what Mooney had been doing for Randstad, and suggested how Mooney might fit in at Beacon Hill. (Bestreich Dep. 180:5-186:10, SOMF Ex. D.)

---

[3] Randstad does not assert a claim for interference by Bestreich with Mooney's Randstad agreement because Randstad did not learn of it until after the deadline to amend its complaint had passed. That issue is being litigated in Texas, along with Randstad's claims against Beacon Hill.

Indeed, just one day after learning that Randstad had filed this action alleging violations of her own restrictive covenant agreement, Bestreich forwarded Mooney's resume to Cain and stated: "Probably not the best timing with yesterday's news, but . . . !" (Bestreich Dep. 179:2-184:10 & Ex. 26, SOMF Ex. D.) Bestreich admitted that this was a reference to having received a copy of Randstad's Complaint the previous day. (*Id.*). She nevertheless lobbied Cain over the ensuing months to approve her hiring of Mooney—even though, just like Adams, Cain initially did not want to hire her—and ultimately signed Mooney's offer letter on behalf of Beacon Hill. (Bestreich Dep. 175:24-176:19, 180:5-186:10, SOMF Ex. D; Cain Dep. 327:5-328:17, SOMF Ex. I.) Bestreich admits that her recruitment of Randstad employees, including Mooney, constitutes a breach of the Bestreich Agreement. (Bestreich Dep. 146:12-147:7; 169:5-170:15, SOMF Ex. D.)

Bestreich, in fact, encouraged several other Randstad employees to join her at Beacon Hill as well, and refused to change her behavior even after being sued by Randstad. (Bestreich Dep. 145:3-147:7, 169:5-170:15, SOMF Ex. D.) And this is not the only evidence of Bestreich's callous disregard for her known contractual obligations. Just a few months before her resignation, Randstad warned Bestreich about her failure to comply with her restrictive covenants after it was discovered that she had referred a fellow Randstad employee to a competitor while still employed

by Randstad. (Bestreich Dep. 147:18-151:15, SOMF Ex. D; Written Warning, SOMF Ex. Q.)

## ARGUMENT

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### B. Randstad Is Entitled To Summary Judgment On Its Breach Of Contract Claims Against Bestreich And Adams (Counts II and III).

"In Georgia, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (quotation marks and citations omitted). "Under the Georgia Restrictive Covenants Act ('[RCA]'), a non-compete covenant is valid when: (1) justified by a legitimate

business interest; (2) applied to an employee in sales or management; and (3) reasonably restricted in time, geographic area, and scope of prohibited activities." *Heartland Payment Sys., LLC v. Stockwell*, 446 F. Supp. 3d 1275, 1283 (N.D. Ga. 2020); *see also* O.C.G.A. § 13-8-53(a).

1. <u>The Bestreich and Adams Agreements are valid and enforceable</u>

Bestreich and Adams will no doubt backtrack and argue that their respective agreements are unenforceable, despite the fact that both testified under oath at their depositions that they are not challenging the enforceability thereof. (Bestreich Dep. 109:7-109:14, SOMF Ex. D; Adams Dep. 79:14-80:1, SOMF Ex. A) Regardless of their arguments, Bestreich and Adams' Agreements are enforceable. During their tenures with Randstad, Bestreich and Adams customarily and regularly solicited customers or prospective customers, and engaged in making sales or obtained orders for services to be performed by her subordinates, activities explicitly covered by the RCA. And Bestreich qualifies as an executive under the RCA. Moreover, Georgia courts, including this Court, have repeatedly enforced *the very same agreement* against other Randstad employees.

*a. Bestreich and Adams qualify as employees who may be subject to a non-compete.*

The RCA authorizes post-employment non-competition provisions against any employee who, in the course of their employment, solicited customers or

prospective customers, made sales or obtained orders, or had managerial or executive authority over a business unit or business subdivision. O.C.G.A. § 13-8-53(a). Bestreich thrice qualifies under this rubric. Bestreich regularly solicited actual and prospective customers for Randstad, and she routinely engaged in obtaining orders for services to be performed by others; she also managed a subdivision of O&A staffing group, had approximately nine direct reports, and had the ability to make recommendations regarding changes in employment status. (Randstad Rogg. No. 1; Bestreich Answer ¶ 31.) Thus, Bestreich falls within the classifications of employees against whom restrictive covenants may be enforced.

Adams also regularly solicited customers for Randstad, and he routinely engaged in obtaining orders for services to be performed by others. (Adams Dep. 32:5-32:20, 36:3-36:21, 85:6-86:4, SOMF Ex. A.) As such, he too, falls within the classifications of employees against whom restrictive covenants may be enforced.

*b. The Bestreich and Adams Agreements are enforceable contracts under O.C.G.A. § 13-3-1*

Defendants have not challenged that they signed their respective Agreements or that any element of contract formation has not been met. *See* O.C.G.A. § 13-3-1. The Bestreich and Adams Agreements are enforceable contracts under O.C.G.A. § 13-3-1 because they are supported by valuable consideration, including, but not limited to, Randstad's employment of Bestreich and Adams, Randstad's payment of

compensation and benefits to Bestreich and Adams, and Bestreich's and Adams's access to Randstad confidential and trade secret information. *Stockwell*, 446 F. Supp. 3d at 1283. Both Bestreich and Adams signed and therefore assented to the terms of their respective agreements. And employment is certainly a subject matter upon which a contract can operate. *Parker v. Truman Arnold Cos., Inc.*, 2013 WL 5329285, at *2 (N.D. Ga. Sept. 20, 2013).

*c. The non-compete provisions in the Bestreich and Adams Agreements are enforceable under the RCA*

The non-compete provisions in the Bestreich and Adams Agreements are also enforceable under the RCA because they are intended to protect a legitimate business interest and are reasonably restricted in time, geographic area, and scope of prohibited activities. *Stockwell*, 446 F. Supp. 3d at 1283.

Randstad "has a legitimate business interest in protecting its 'investment of time and money in developing [Bestreich's and Adams's] skills,' as well as in protecting its client relationships, goodwill, and confidential and trade secret information from unfair competition." *Stockwell*, 446 F. Supp. 3d at 1283 (citing O.C.G.A. § 13-8-51(9) ("legitimate business interest[s]" include, but are not limited to, "trade secrets," "valuable confidential information," "substantial relationships with specific prospective or existing customers," "good will," and "specialized training") (Randstad Answer Rogg. No. 1, SOMF Ex. F; ECF No. 9, Bestreich

Answer ¶ 31; Adams Dep. 45:3-46:5, SOMF Ex. A; Bestreich Dep. 114:21-115:6, SOMF Ex. D; Offer Letter, SOMF Ex. H; Cain Dep. 78:20-84:16, SOMF Ex. I.)

The Agreements are also reasonably restricted in time, geographic area, and scope of prohibited activities: the duration is less than two years, and is thus presumptively reasonable under O.G.C.A. § 13-8-57(b); the geographic scope is limited to a 25-mile radius around the office in which Bestreich and Adams worked, which is reasonable under O.C.G.A. § 13-8-56(2); and the scope of competition restricted is measured by Randstad's business, and is also, therefore, reasonable under O.C.G.A. § 13-8-56(3). (Brady Dep. 61:8-63:2, SOMF Ex. B.) Moreover, Bestreich and Adams had fair notice of the maximum time, territory, and scope of activity restrictions encompassed by the non-competition covenant because they are set forth in the Bestreich and Adams Agreements. O.C.G.A. § 13-8-53(c)(1); *see also Kennedy v. Shave Barber Co., LLC*, 348 Ga. App. 298, 304 (2018) (former employee had "fair notice" of restrictions when set forth in employment agreement).

*d. The employee non-solicitation provision in the Bestreich Agreement is enforceable*

Likewise, the employee non-solicitation covenant in the Bestreich Agreement is enforceable. "Restrictive covenants addressing solicitation of employees are enforceable when they are 'reasonably limited in time' and not fatally 'vague or ambiguous.'" *Stockwell*, 446 F. Supp. 3d at 1283 (quoting *CMGRP, Inc. v. Gallant*,

343 Ga. App. 91, 95, 806 S.E.2d 16 (2017)). Similar restrictions have been enforced as reasonable by Georgia courts. *Id.* at 1284-85 (collecting cases).

The non-solicitation provision in the Bestreich Agreement is "reasonably limited in time" as it prohibited Bestreich, for only 18 months post-employment soliciting or hiring any Randstad employees "with whom [she] worked at any time during the twelve (12) months prior to the date of [her] separation of employment with [Randstad]." (Agreement ¶ 4(a)(iii)-(iv)). And nothing about the non-solicitation provision is "vague or ambiguous"; in fact, it could not be more clear.

*e. Georgia courts, including this Court, have repeatedly enforced Randstad's restrictive covenant agreements*

The enforceability of the Bestreich and Adams Agreements is further supported by the fact that Georgia courts, including this Court, have repeatedly enforced Randstad's restrictive covenant agreement against employees just like Bestreich and Adams.[4] Just last month, two different judges of the Cobb County Superior Court issued broad injunctions against former employees who left Randstad to join competitors, in both instances finding that Randstad's restrictive covenant

[4] *See, e.g., Randstad Tech., LLC v. Luma, et al.*, No. 18106542 (Ga. Super. Ct., Cobb Cty.), attached as **Exhibit 1**; *Randstad Gen. Partner (US), LLC v. Volt Workforce Sol., LLC*, No. 17108166 (Ga. Super. Ct., Cobb Cty.), attached as **Exhibit 2**; *Randstad Prof. US, LLC v. Joseph Tamberrino, et al*., No. 1:18-cv-940-ELR (N.D. Ga.), attached as **Exhibit 3**.

agreement is "valid and enforceable."[5] Indeed, in the last six months alone, the Cobb County Superior Court enforced the *same agreement* and issued broad injunctions *against three Beacon Hill employees* who also left Randstad to join Beacon Hill in competing roles—which Bestreich's and Adams' counsel here know well as they represented those employees too.[6] *See Robles/Nordstrom*, Order Granting TRO Against Nordstrom, attached as **Exhibit 6**; *Robles/Nordstrom*, Order Granting TRO Against Robles, attached as **Exhibit 7**; *Gaggioli*, Order Granting TRO, attached as **Exhibit 8**.

2. Bestreich breached the Bestreich Agreement

Bestreich admitted at her deposition that she breached the Bestreich Agreement. (Bestreich Dep. 66:15-67:24, 146:12-147:7, 169:5-170:15, SOMF Ex. D.) Her lawyers will no doubt do their best to walk that admission back now, but it is binding. *JSM Marine LLC v. Gaughf*, 407 F. Supp. 3d 1358, 1371 (S.D. Ga. 2019) (disregarding declaration inconsistent with admission in deposition testimony). Indeed, that was plainly her (and Beacon Hill's) intent, as Beacon Hill promised in

---

[5] *See Randstad Prof. US, LLC v. Piotrowski*, No. 21102250 (Ga. Super. Ct., Cobb Cty.), attached as **Exhibit 4**; *Randstad Prof. US, LLC v. Law*, No. 21102251 (Ga. Super. Ct., Cobb Cty.), attached as **Exhibit 5**.

[6] *See Robles/Nordstrom*, Order Granting TRO Against Nordstrom, attached as **Exhibit 6**; *Robles/Nordstrom*, Order Granting TRO Against Robles, attached as **Exhibit 7**; *Gaggioli*, Order Granting TRO, attached as **Exhibit 8**.

Bestreich's offer letter to defend her "in the event litigation arises as a result of [her] employment with Beacon Hill *and [her] previous relationship with Randstad*." (Bestreich Offer Letter (emphasis added).) Bestreich thus understood that going to work for Beacon Hill in a competing role in the same territory and soliciting other Randstad employees was risky and would likely lead to litigation. In any event, the undisputed facts independently confirm Bestreich's admission.

In relevant part, the Bestreich Agreement prohibited her, for 12 months post-employment, from competing with Randstad within 25 miles of Randstad's Dallas office, and, for 18 months post-employment, from soliciting or hiring on behalf of a competitor any Randstad employees with whom she worked in the final 12 months of her employment. With respect to the non-compete, Bestreich worked in Randstad's Dallas office working in and overseeing its O&A business, among other things. She left Randstad and immediately joined Beacon Hill to open up, work in, and oversee its O&A business in Dallas. That constitutes "providing . . . services competitive with" Randstad and "supervising employees or other personnel who provide . . . services competitive with" Randstad, and performing "temporary . . . placement and staffing services . . . that are the same or substantially similar to the services" Bestreich provided to Randstad within the last two years of her employment; and Randstad's and Beacon Hill's Dallas offices are within 25 miles

of each other. Thus, she violated the non-compete provision.

With respect to the non-solicitation provision, within 18 months of leaving Randstad, Bestreich contacted and encouraged Adams and Mooney—both of whom she worked with in the 12 months preceding her resignation—to leave Randstad and join her at Beacon Hill; she lobbied her supervisor, Charlie Cain, to hire them both over his objections; she hired both of them and issued both of their offer letters to them; and she managed both of them when they joined Beacon Hill. That constitutes "contact[ing], recruit[ing], or solicit[ing]" Randstad employees "for the purpose of encouraging, enticing or causing such [Randstad] employee to terminate employment with [Randstad], or to accept employment with" a Randstad competitor, as well as hiring Randstad employees for a competitor. Thus, Bestreich also breached the non-solicitation provision.

3. Adams breached the Adams Agreement

Adams similarly breached the his Agreement by working for Beacon Hill within 25 miles of Randstad's Dallas office in the 12 months following his resignation from Randstad. Adams worked in Randstad's Dallas office and was responsible for making O&A placements. (Adams Dep. 32:5-32:20, 36:3-36:21, 85:6-86:4). He left and immediately joined Beacon Hill and continued making O&A placements on its behalf. That constitutes "providing . . . services competitive with"

Randstad, and performing "temporary . . . placement and staffing services . . . that are the same or substantially similar to the services" Adams provided to Randstad within his last two years with Randstad; and Randstad's and Beacon Hill's Dallas offices are within 25 miles of one another. (Adams Dep. 83:10-83:18; 84:4-84:8, SOMF Ex. A; *see also* Bestreich Dep. 124:2-124:20, 146:2-146:4, SOMF Ex. D.)

4. Randstad has suffered damages as a result of Bestreich's and Adams' breaches of their respective agreements

For purposes of summary judgment, Randstad has established a right to recover nominal damages, which is inherent in any proven breach of contract. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800, (2021) (recognizing that "the prevailing rule, 'well established' at common law, was 'that a party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage'" and that nominal damages "receives 'relief on the merits of his claim'") (citations omitted). Georgia authorizes nominal damages when a contractual breach is established. O.C.G.A § 13-6-6; *see also King v. Brock*, 282 Ga. 56, 57 (2007) (citing *MTW Inv. Co. v. Alcovy Props.*, 273 Ga. App. 830, 832 (2005) ("[C]ase law makes clear nominal damages are awarded: (1) where no actual damage flows from the injury; or (2) where the violation of a right is shown, substantial damages claimed, and some actual loss proved, and yet the damages are not susceptible of reasonable certainty of proof as to their extent."). Randstad has, at

summary judgment, conclusively established its entitlement to nominal damages by demonstrating the absence of any genuine issue of material fact on liability. *Cf. Bearoff v. Craton*, 350 Ga. App. 826, 838, 830 S.E.2d 362, 375 (2019) (affirming award of nominal damages for non-compete violation).[7]

### C. Randstad Is Entitled To Summary Judgment On Bestreich's and Adams's Affirmative Defense Of Waiver Or Selective Enforcement

The Court should also grant summary judgment on Defendants' affirmative defense of waiver or selective enforcement. The gist of the defense is that Randstad cannot enforce the Bestreich and Adams Agreements because it has allowed other individuals, in entirely different situations and fact patterns, to accept roles in positions with competitors. That is not the law in Georgia, and for good reason.

Most courts have "persuasively rejected the concept that selective enforcement of non-competition agreements constitutes waiver." *Larweth v. Magellan Health, Inc.*, 2019 WL 11866499, at *9 (M.D. Fla. Dec. 17, 2019).[8] Courts

---

[7] By obtaining an award of nominal damages in a to-be-determined amount, Randstad is a "prevailing party" within the meaning of the Bestreich and Adams Agreements and is entitled to recover its reasonable attorneys' fees and costs. *King v. Brock*, 282 Ga. At 57-58 ("Indeed, it defies logic to require a litigant to recover actual damages in order to be viewed as a 'prevailing party.'") (citing *Savannah College of Art & Design v. Nulph*, 265 Ga. 662, 663 (1995) ("[A] recovery of only nominal damages [is] sufficient to support [an award of] attorney fees under [O.C.G.A § 13-6-11]."); *see also AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1375 (11th Cir. 2021) ("An award of nominal damages is sufficient to make the plaintiff a prevailing party.").

[8] *See also Med. Educ. Assistance Corp. v. Mehta*, 19 S.W.3d 803, 818 (Tenn. Ct. App. 1999) ("Employers should be encouraged to make an independent determination concerning each employee as to whether or not it is necessary to enforce a covenant not to compete. If we accept

recognize the perverse incentives created by requiring employers to aggressively enforce restrictive covenants against every employee or risk a waiver of all covenants across its workforce. *See Intermetro Indus. Corp. v. Kent*, 2007 WL 1140637, at *8 (M.D. Pa. Apr. 17, 2007) ("Moreover, selective enforcement of the non-compete clause suggests that it is not used by Metro to oppress its employees, but is utilized only when necessary to protect its vital interests.").

Defendants' position also creates a particularly potent form of waiver that looks at every single instance of an agreement, rather than the specific restrictive covenant agreement at issue and the facts of every employees departure. Indeed, most employees comply with their contractual obligations and do not have to be watched like a hawk when the depart. Not surprisingly, Defendants have pointed to no Georgia authority favoring a horizontal waiver by virtue of Randstad's conduct with respect to other employees in other offices (because none exists). Finally, such a rule would effectively make restrictive covenants unenforceable, as the

---

[the employee's] position, we will tell employers that if they wish to retain the right to enforce a covenant not to compete against any employee, they must enforce all covenants not to compete even if such enforcement is not necessary to protect the employer's interest. We decline to do this."); *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 751 (D.N.J. 1998) ("Defendants' suggestion would require an employer to enforce every restrictive covenant, without regard to cost-effectiveness or individual circumstances. This is impractical and unfair, not only to Plaintiffs, but to other former employees, particularly here where the other former employees have not launched a collective effort that represents as great a competitive threat to [the employer] as [the defendants].").).

administrative time and costs, as well as the resulting legal fees to police covenants on a nationwide basis, would overwhelm any company.

### D. <u>Randstad Is Entitled To Summary Judgment On Its Tortious Interference Claim Against Bestreich (Count I).</u>

Bestreich's solicitation and hiring of Adams also constitutes tortious interference. "The elements of tortious interference with a contract consist of: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Interra Int'l, LLC v. Al Khafaji*, 2017 WL 4866266, at *7 (N.D. Ga. Mar. 21, 2017) (citations omitted). Randstad satisfies each of these elements.

First, "[I]n order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract. . . . . If the defendant has a legitimate economic interest in either the contract or a party to the contract, then the defendant is not a stranger to the contract and acts with privilege." *Interra*, 2017 WL 4866266, at *7 (citations omitted). There is no dispute that Bestreich was a stranger to the Adams Agreement and therefore acted "without privilege"; she had no economic interest in that

agreement and, in fact, when she interfered with it she was acting on behalf of a competitor. *Cf. id.*

Second, "[w]ith respect to tortious interference claims, the term 'malice' is to be given a liberal meaning; malicious or maliciously means *any unauthorized interference*, or *any interference without legal justification or excuse*." *Interra*, 2017 WL 4866266, at *9 (emphasis added) (internal citation and punctuation omitted)). Bestreich offers no valid justification or excuse for her interference with the Adams Agreement—nor does she have one—and there is no doubt that she acted purposely.

Bestreich knew what Adams's role was at Randstad and the office in which he worked, *having hired and supervised him there*, and she correctly "assumed" that he had signed Randstad's restrictive covenant agreement just as she had. (Bestreich Dep. 237:17-238:3, SOMF Ex. D.) Nevertheless, Bestreich encouraged Adams to leave Randstad and join Beacon Hill to compete in the same territory in violation of the non-compete provision in the Adams Agreement. (Adams Dep. 60:16-68:24, SOMF Ex. A; Bestreich Dep. 231:5-236:8, SOMF Ex. D.) Indeed, Charlie Cain, her supervisor at Beacon Hill, did not even want to hire Adams, but Bestreich insisted that she be permitted to do so over Cain's objection. (Bestreich Dep. 231:5-236:8, SOMF Ex. D.) There can be no dispute that Bestreich solicited Adams purposely, and because she was neither authorized nor legally justified or excused in doing so,

she acted with malice as a matter of law. *Interra*, 2017 WL 4866266, at *8-9.

Third, Adams breached his agreement as a direct result of Bestreich's solicitation by going to work for Beacon Hill in the same territory in a competitive role, just as she recruited and hired him to do. In fact, Bestreich signed Adams' offer letter and he reported directly to her at Beacon Hill. (Adams Agreement, SOMF Ex. J; Adams Dep. 68:15-75:11, SOMF Ex. A; Bestreich Dep. 233:13-233:23, SOMF Ex. D.) As noted above, Adams worked in Randstad's Dallas office and was responsible for making O&A placements, and Bestreich recruited and hired him to continue making O&A placements on behalf of Beacon Hill in its Dallas office.[9]

## CONCLUSION

For the reasons discussed above, Randstad respectfully requests that the Court grant its Motion and enter judgment in favor of Randstad on Counts I-III of its Complaint and grant summary judgment on Defendants' selective enforcement/ waiver affirmative defense.

---

[9] As discussed above, Randstad is entitled to nominal damages as a result of Bestreich's tortious conduct, and therefore has satisfied the damages element of its breach of tortious interference claim. *Int'l. Auto Logistics, LLC v. Vehicle Processing Center of Fayetteville, Inc.*, 2017 WL 149815, at *9 (S.D. Ga. Jan. 13, 2017) (citing O.C.G.A. § 51-12-4 (authorizing award of nominal damages for any injury); *SE Waste Treatment, Inc. v. Chem-Nuclear Sys., Inc.*, 506 F. Supp. 944, 950 (N.D. Ga. 1980) (noting availability of nominal damages for willful torts)).

Respectfully submitted,

*/s/ Alex Meier*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Erik W. Weibust (admitted *pro hac vice*)
eweibust@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

*Counsel for Plaintiff Randstad General Partner (US), LLC*

Dated: May 17, 2021