# Exhibit 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RANDSTAD PROFESSIONALS US, LLC, Plaintiff, v. JOSEPH TAMBERRINO, ERIC HOWSER, and BRYAN WATTS, Defendants. | CASE NO. 1:18-cv-00940-ELR |

## CONSENT ORDER FOR PRELIMINARY INJUNCTION

On March 8, 2018, Plaintiff Randstad Professionals US, LLC filed its Complaint against Defendants Joseph Tamberrino, Eric Howser, and Bryan Watts. Randstad alleges that Defendants, in the course of leaving Randstad and establishing a competitive business, Veritas Partners, LLC, violated the Defend Trade Secrets Act of 2016 ("DTSA") and their common-law obligations to Randstad. Randstad also alleges that Defendants Howser and Watts breached various restrictive covenants in their employment agreements and that Defendant Tamberrino tortiously interfered with those agreements by facilitating violations of various restrictive covenants. This matter is now before the Court on the parties' Consent Order for Preliminary Injunction as to Defendants Howser and Watts.

Defendants Howser and Watts consent to the entry of this order and state that their consent is given knowingly and voluntarily and that they have had the opportunity to, and have in fact, consulted with their counsel prior to consenting to the relief described in this order.

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, and personal jurisdiction and venue over the parties in this action are also present.

2. Randstad and Defendants have stipulated and agreed to the entry of this preliminary injunction order without a finding by the Court of law or fact other than stated below. Randstad stipulates that it will not seek to recover its attorneys' fees and costs solely as a result of the entry of this preliminary injunction.

3. Howser is a former Randstad Executive Recruiter.

4. Watts is a former Randstad Executive Recruiter.

5. Tamberrino is a former Randstad National Director to whom Howser and Watts reported.

6. Randstad is an industry leader in the staffing industry, a highly competitive, specialized business built on customer relationships and decades of institutional knowledge and competitive intelligence.

7. Randstad has legitimate, protectable business interests in its relationships with its customers, Talent, and employees.

8. To enable its employees to perform their duties, Randstad provides employees, including Defendants, with access to relevant Confidential Information and trade secrets, such as pricing, customer preferences and hiring needs, branch management, comprehensive financial data, and similar information or compilations of information that derives economic value because it is not generally known.

9. Randstad takes reasonable measures and precautions to protect its Confidential Information and trade secrets, because Randstad has expended substantial amounts of money, time, and effort in developing and maintaining such information.

10. Randstad has legitimate, protectable business interests in its Confidential Information and trade secrets.

11. Howser signed an employment agreement with Randstad on or about July 11, 2016.

12. Watts signed an employment agreement with Randstad on or about February 1, 2016.

13. Section 3 of Howser's and Watts' employment agreements describe their obligations to protect Randstad's Confidential Information and trade secrets. Specifically, Section 3 includes the following restrictions:

> (a) [Howser/Watts] acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of [Howser's/Watts's] employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to [Howser/Watts] certain of its Confidential Information and Trade Secrets, [Howser/Watts] shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of [Howser/Watts] or any person or entity other than the Company for any purpose whatsoever (i) at any time during [Howser's/Watts's] employment with the Company, and (ii) after [Howser's/Watts's] separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. [Howser/Watts] acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

14. Defendants agree that Section 3 is a valid and enforceable contractual expression of Randstad's legitimate business interests in protecting its Confidential Information and trade secrets.

15. Section 4 of Howser's and Watts' employment agreements contain restrictive covenants that limit their ability to compete with Randstad and to solicit Randstad's customers, Talent, and employees. Specifically, Section 4 includes the following restrictions:

> (a) During [Howser's/Watts's] employment with the Company and the eighteen (18) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, [Howser/Watts] shall not, directly or indirectly, on [Howser's/Watts's] own behalf or on behalf of any person or entity other than the Company:
>
> > (i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom [Howser/Watts] had Material Contact at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;
> >
> > (ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom [Howser/Watts] had Material Contact at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;
> >
> > (iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom [Howser/Watts] worked at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment

with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of the Company with whom [Howser/Watts] worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for any person or entity that competes with the Business of the Company.

(b) During his or her period of employment with the Company, [Howser/Watts] shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During [Howser's/Watts's] employment with the Company and the twelve (12) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, [Howser/Watts] shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During [Howser's/Watts's] employment with the Company and the twelve (12) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on [Howser's/Watts's] own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

> (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;
>
> (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or
>
> (iv) engaging in responsibilities in which [Howser/Watts] would utilize or disclose Confidential Information.

16. Defendants agree that Section 4 is a valid and enforceable contractual expression of Randstad's legitimate business interests in protecting its Confidential Information and trade secrets, its relationships with customers, Talent, and employees, and its customer goodwill in the Baltimore, Maryland market.

17. Howser's and Watts' employment agreements define the "Restricted Territory" as follows:

> (i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

> (iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

18. The restrictive covenants detailed in Section 4 of Howser's and Watts' employment agreements are reasonable in time, geographic area, and the scope of the prohibited activities. Defendants acknowledge that, in connection with their employment with Randstad, they customarily and regularly solicited, on Randstad's behalf, customers and prospective customers and made sales and performed services on Randstad's behalf.

19. While employed by Randstad, Defendants worked out of Randstad's office located at 120 E. Baltimore Street, Suite 2220, Baltimore, Maryland 21202.

20. Since leaving Randstad, Howser and Watts have joined Veritas Partners, LLC, a Randstad competitor that provides products or services competitive with the Business of the Company, and which has its principal place of business within the Restricted Area, at 16511 York Road, Monkton, Maryland.

21. The parties agree that Randstad has entered into valid and enforceable agreements with Howser and Watts.

22. The parties agree that all restrictive covenant provisions contained in Howser's and Watts' employment agreements are valid and enforceable expressions of Randstad's legitimate, protectable business interests.

23. Randstad asserts that is likely to prevail in its action to enforce the restrictive covenants in Howser's and Watts' employment agreements.

24. Randstad asserts that, but for the entry of a preliminary injunction, Randstad would suffer irreparable harm to its legitimate business interests, including accrued customer goodwill, the potential dissemination of Confidential Information and trade secrets, and the loss of customer relationships, all of which cannot be remedied through monetary damages.

25. Randstad asserts that the public and private interests favor entry of a preliminary injunction and recognize that Georgia's public policy finds that "reasonable restrictive covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests and creating an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state." O.C.G.A. § 13-8-50.

26. The parties agree that Randstad need not post security in any amount in connection with the entry of this order.

27. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the parties waive the entry of any further findings of fact and conclusions of law for purposes of this order.

## I. DEFINITIONS

For purposes of this order, the following definitions apply:

28. "Business of the Company" is defined as the services provided by Randstad, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, or other services that are the same as or substantially similar to the services Defendants Watts and Howser provided on behalf of Randstad between January 3, 2016 and January 3, 2018.

29. "Confidential Information" is defined as data and information belonging to Randstad (i) relating to the Business of the Company, (ii) which has been disclosed to Defendants or of which Defendants became aware as a consequence of or through Defendants' relationship with Randstad, (iii) which has value to Randstad, and (iv) which is not generally known to the public or the Randstad's competitors. "Confidential Information" includes, but is not limited to, the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary

requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders). "Confidential Information" does not include any data or information that has been voluntarily disclosed to the public by Randstad (except where such public disclosure has been made by Defendants without authorization from Randstad), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

30. "Defendants" means and refers to Eric Howser, and Bryan Watts.

31. "Material Contact" means any contact between Howser or Watts and a customer, Placement Candidate, or Talent (i) with whom or which Employee dealt on behalf of the Company; (ii) whose dealings with the Company were coordinated or supervised by the Employee; (iii) about whom Employee obtained Confidential Information in the ordinary course of business as a result of Employee's association with the Company; or (iv) who receives products or services authorized by the Company, the sale or provision of which results or resulted in compensation, commissions, or earnings for the Company within two (2) years prior to the Employee's separation from employment with the Company.

32. "Placement Candidate" means (i) any person who was identified by Randstad for placement on an assignment with a customer as of the date of

Defendants' separation of employment with Randstad or (ii) any person who completed an assignment with Randstad between January 3, 2016 and January 3, 2018.

33. "Randstad" means and refers to Randstad Professionals US, LLC and its parents, subsidiaries, affiliates, shareholders, officers, directors, attorneys, insurers, successors, representatives, agents, employees, predecessors, and assigns.

34. "Restricted Territory" is defined in Paragraph 16 of this order.

35. "Restricted Activity" is defined as any conduct described in Paragraph No. 14 of this order that occurs or facilitates the provision of staffing services within the Restricted Territory.

36. "Talent" means any employee who was placed by Randstad on an assignment with a customer as of January 3, 2018.

37. All other terms shall be interpreted according to their customary meaning and usage.

## II. SCOPE OF INJUNCTION

Based on the foregoing, it is therefore ordered that:

38. Howser and Watts, and all persons acting in the capacity of their agents, servants, employees, successors and assigns, and all persons acting in active concert or participation with Defendants who receive actual notice of such

order are restrained, enjoined, and prohibited, until further order of the Court, from directly or indirectly:

a. reproducing, using, distributing, disclosing, publishing, or misappropriating any of Randstad's Confidential Information or Trade Secrets.

b. contacting, soliciting, servicing, selling to, or attempting to contact, solicit, service, or sell to any customer of the Company with whom Howser or Watts had Material Contact, or about which Howser or Watts learned Confidential Information, at any time between January 3, 2017 and January 3, 2018 for the purpose of providing services competitive with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

c. contacting, soliciting, servicing, placing, or attempting to contact, solicit, service, or place any Placement Candidate or Talent with whom Howser or Watts had Material Contact, or about which Howser or Watts learned Confidential Information, at any time between January 3, 2017 and January 3, 2018 for the purpose of providing services competitive with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

d. contacting, recruiting, or soliciting, or attempting to contact, recruit, or solicit any associate (internal) employee of the Company with whom Howser or Watts worked, or about which Howser or Watts learned Confidential Information, at any time between January 3, 2017 and January 3, 2018 for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

e. hiring any associate (internal) employee of the Company with whom Howser or Watts worked at any time between January 3, 2017 and January 3, 2018 for any person or entity that competes with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

f. operating, controlling, or owning any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity). This restriction is in effect from the date of the entry of this order until January 3, 2019.

g. holding any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves (i) providing products or services competitive with the Business of the Company; (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company; (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or (iv) engaging in responsibilities in which Howser or Watts would utilize or disclose Confidential Information. This restriction is in effect from the date of the entry of this order until January 3, 2019.

For purposes of clarity only, and without limiting this Paragraph 38(g), Howser shall not be allowed to perform any services, solicit or attempt to solicit, do any business with, or make any placements of or for, any actual or prospective customers, Placement Candidates, or Talent within the Restricted Territory in the area of Legal Recruiting, and Watts shall not be allowed to perform any services, solicit or attempt to solicit, do any business with, or make any placements of or for, any actual or prospective customers, Placement Candidates, or Talent within the Restricted Territory in the areas of Legal Recruiting, Banking, and/or Financial Services. In addition, neither Howser nor Watts shall be allowed to perform any services, solicit or attempt to solicit, do any business with, or make any placements of or for, any actual or prospective customers, Placement Candidates or Talent within the Restricted Territory who have had material contacts with either Howser or Watts, nor shall they assist or provide any information to Tamberrino or Veritas relating to any actual or prospective customers, Placement Candidates or Talent within the Restricted Territory who have had material contacts with either Howser or Watts. Nothing herein shall preclude Howser or Watts from working in an office or from their home for Veritas or any other competitor of Randstad within the Restricted Territory, as long as they fully abide by the provisions of this Consent Order by not working in their previous verticals, i.e. legal recruiting for Howser and legal

recruiting, banking, and financial services for Watts, and not soliciting or providing services to any of each other's previous customers, Placement Candidates or Talent.

## III. ADDITIONAL OBLIGATIONS AND STIPULATIONS

39. Howser and Watts each agree to execute, no later than 14 days from the date of this order, an affidavit certifying that affiant has not had any of Randstad's Confidential Information and/or trade secrets in his possession, custody, or control since January 3, 2018 or, alternatively, identifying such property and stating that he will not access any such information for purposes unrelated to the resolution of this dispute.

## IV. FORCE AND EFFECT

40. The injunctive provisions of this order shall be binding on Howser and Watts, upon any person insofar as he or she is acting in the capacity of an agent, servant, or employee of Howser and Watts, and upon any person with actual notice of this order to the extent that he or she is acting in active concert or participation with Howser or Watts.

41. This order shall remain in effect until further order of the Court, and the injunctive restrictions described in each subsection of Section II shall remain in effect according to the temporal limitation detailed in each subsection.

42. In the event this case is dismissed, the Court shall retain jurisdiction over this action to ensure compliance with this order and for all other purposes related to this action.

ON BEHALF OF RANDSTAD PROFESSIONALS US, LLC

By /s/ Erik W. Weibust

By /s/ Alex Meier
Eric Barton
Georgia Bar No. 040704
Alex Meier
Georgia Bar No. 282350
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-6772
ebarton@seyfarth.com
ameier@seyfarth.com

Erik W. Weibust (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: 617-946-4800
Facsimile: 617-946-4801
eweibust@seyfarth.com

*Attorneys for Plaintiff*

ON BEHALF OF ERIC HOWSER AND BRYAN WATTS

By /s/ Andrew Dansicker
*With express permission*
Andrew Dansicker
Law Office of Andrew M. Dansicker, LLC
Executive Plaza II, Suite 705
11350 McCormick Road
Hunt Valley, Maryland 21031
(410) 771-5668
adansicker@dansickerlaw.com

*Attorney for Defendants*

SO ORDERED this 28th day of March, 2018

Eleanor L. Ross
Hon. Eleanor L. Ross
United States District Court
Northern District of Georgia