**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC,<br><br>Plaintiff,<br>v.<br><br>SHAWNA BESTREICH and ERIK ADAMS,<br><br>Defendants. | Civil Action No.:<br><br>1:19-CV-01655-MHC |

**DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, AND III OF ITS COMPLAINT AND ON DEFENDANTS' WAIVER/SELECTIVE ENFORCEMENT AFFIRMATIVE DEFENSES**

Defendants Shawna Bestreich and Erik Adams file this, their Response in Opposition to Plaintiff's Motion for Summary Judgment on Counts I, II, and III of its Complaint and on Defendants' Waiver/Selective Enforcement Affirmative Defenses (the "Motion") and respectfully show this Honorable Court as follows:

## I. INTRODUCTION

The Motion should be denied because there are numerous factual disputes, including (i) whether the services Ms. Bestreich and Mr. Adams' provided at Beacon Hill were the same or substantially similar to those provided on behalf of Randstad; (ii) whether Plaintiff has a legitimate business interest justifying the noncompete;

(iii) whether the geographic limitation in the noncompete is reasonable or justified; (iv) whether Plaintiff's selective enforcement of restrictive covenants demonstrates a lack of legitimate business interest or constitutes a waiver of Plaintiff's rights under its agreements; (v) whether Ms. Bestreich solicited Mr. Adams or Ms. Mooney in violation of the Bestreich Agreement; and (vi) whether Ms. Bestreich had the requisite knowledge or intent to tortiously interfere with the Adams Agreement.[1]

## II. ARGUMENT AND CITATIONS OF AUTHORITY

Summary judgment cannot be granted if there exists any "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party." *N. Ave. Grp. Holdings, LLC v. Lasalle Capital Grp. II-A, L.P.*, No. 1L18-cv-03659-AT, 2020 WL 9813474, at *6 (N.D. Ga. May 29, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986) (the non-movant "need only present evidence from which a jury *might* return a verdict in his favor.")). The court must "view all evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[1] Defendants incorporate all defined terms from their motions for partial summary judgment (the "Partial Motions"). [Dkts. 161, 163]. Exhibits introduced but not defined in the Partial Motions are referenced herein by letter and "Adams Memo." or "Bestreich Memo."

### A. Material Issues of Fact Exist as to Plaintiff's Breach of Contract Claims (Counts II and III).

Plaintiff claims that Ms. Bestreich breached the employee non-solicitation/no-hire provision (Sections 4(a)(iii), (iv)) and that she and Mr. Adams breached the noncompete (Section 4(d)). There are numerous factual disputes relating to these claims that must be decided by a jury.

#### *i. There is a genuine factual dispute over whether the services Ms. Bestreich and Mr. Adams' provided at Beacon Hill were substantially similar to or competitive with the services they provided on behalf of Randstad.*

Whether Ms. Bestreich and Mr. Adams' roles at Beacon Hill are or were similar enough to their roles at Plaintiff as to be prohibited by the Agreements must be decided by a jury. [Exs. A to Bestreich and Adams Memo., ¶ 4(d)]. Contrary to Plaintiff's assertions in the Motion, the noncompete is not tied to the duties an employee performs for Plaintiff. Rather, under the definition of "Business of the Company," the noncompete purports to prohibit employees from providing services that are "the same as or substantially similar to the services Employee provided *on behalf of* the Company…" (emphasis added). Therefore, the duties Ms. Bestreich and Mr. Adams performed for Plaintiff are not relevant to the analysis. What is relevant is whether Ms. Bestreich or Mr. Adams provided services *to customers* of Beacon Hill that are substantially similar to the services they provided to customers

*on behalf of* Plaintiff *and* that those services are competitive. Plaintiff fails to make that showing in the Motion. At a minimum, there is a factual dispute over whether Defendants' roles at Beacon Hill are the same or substantially similar as those at Plaintiff based on their job titles, responsibilities, production requirements, and industry verticals in which they worked—i.e., the services being provided to the end customer. [*Id*.; Defendants' Statement of Material Facts Presenting a Genuine Issue for Trial ("SOMF"), Nos. 1-16].[2]

Even if the noncompete is construed as Plaintiff suggests, there are numerous fact issues regarding whether Defendants' roles at Beacon Hill were the same or substantially similar to their roles at Plaintiff. When they joined Beacon Hill, they took new roles in narrower industry verticals within the staffing industry that covered different geographic footprints and targeted different clients. *Id.*

Plaintiff has also failed to identify a single instance of actual competition, i.e., an instance when both Plaintiff and Beacon Hill submitted candidates for the same open Administrative position. [Corp. Rep. Dep., 40:20-41:16].[3] Plaintiff may not carry its burden to prove a breach *as a matter of law* by simply showing that both

---

[2] Plaintiff also admits that it does not prohibit employees from taking similar positions if they move to a new vertical within the staffing industry. [Second Corp. Rep. Dep., 43:23-46:1 (relevant excerpts are filed under seal as Ex. "A")].

[3] Relevant excerpts are filed under seal as Ex. "B."

companies perform staffing services. The noncompete requires that Plaintiff show the positions involved providing products or services that were "*competitive with*" Plaintiff's services. [Exs. A to Bestreich and Adams Memo., ¶ 4(d)(i))]. Plaintiff cannot and has not pointed to a single instance where Ms. Bestreich or Mr. Adams competed with Plaintiff for a placement during the noncompete. [*Id.*]. Given these genuine factual disputes, Plaintiff is not entitled to summary judgment.

*ii. There is a genuine factual dispute over whether Plaintiff has a legitimate business interest justifying the noncompete.*

O.C.G.A section 13-8-55 provides that "[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." The burden is on Plaintiff to prove both the existence of at least one legitimate business interest and demonstrate that the restrictive covenant justifies that alleged interest. This issue is inherently fact specific and cannot be resolved in Plaintiff's favor on summary judgment. *See Yash Sols., LLC v. N.Y. Glob. Consultants Corp.*, 834 S.E.2d 126, 133-35 (Ga. Ct. App. 2019) (finding enforceability of restrictive covenant was a jury question).

Plaintiff relies on formulaic recitations but has failed to identify any unique or tangible business interest justifying the noncompete. Plaintiff contends that Ms. Bestreich and Mr. Adams had access to Plaintiff's confidential information during their employment. Plaintiff generally claims that Ms. Bestreich's was able to access

and review customer information, pricing, gross margins, internal costs, and other business information. [Randstad's Answers to Shawna Bestreich's First Continuing Interrogatories, No. 1 (filed under seal as Ex. "C")]. Similarly, Plaintiff claims that Mr. Adams was given access to review and add information to Plaintiff's database and systems, which contained the same data. [Ex. N to Adams Memo.]. However, Plaintiff acknowledges that neither Ms. Bestreich nor Mr. Adams misappropriated or otherwise used Plaintiff's alleged confidential information. [Corp. Rep. Dep., 75:7-76:4]. Plaintiff's vague assertion of protectable interests based on prior *access* to generalized categories of allegedly sensitive information is insufficient to prove the existence of a legitimate business interest justifying the noncompete.

Plaintiff must also demonstrate the supposed confidential information has value. O.C.G.A. § 13-8-51(3)(C). Plaintiff has not carried its burden on this issue. Value is an inherently fact specific issue and cannot be resolved at the summary judgment stage, particularly in the staffing industry where much of the information Plaintiff claims is confidential is posted by its customers on public job boards. [Brady Dep., 71:23-72:10, 95:16-96:9; Bestreich Dep., 159:1-10 (customer opening was discovered based on post for job opening on a public website, Indeed)]; *See also N. Ave. Grp. Holdings, LLC*, 2020 WL 9813474, at *12 (declining to resolve issues related to a letter of intent at summary judgment because "[i]t is for the jury to

determine the value of confidential information that Plaintiffs provided"); *Kforce Inc. v. Beacon Hill Staffing Grp. LLC*, No. 4:14 CV 1880 CDP, 2015 WL 128060, at *2, 4, 9 (E.D. Mo. Jan. 8, 2015) (denying motion for preliminary injunction where evidence reflected job openings were public, could easily be found on the internet, and were often emailed to multiple staffing agencies at once).

There is also a genuine factual dispute as to what information is the supposed basis of this legitimate interest. In its Interrogatory Answers and Motion, Plaintiff claims that Ms. Bestreich and Mr. Adams had access to the information detailed above. [Ex. C, No. 1; Ex. N to Adams Memo.]. However, Plaintiff's corporate representative testified that the confidential business information that Plaintiff seeks to protect is really its proprietary training process. [Second Corp. Rep. Dep., 49:9-52:20]. Conversely, Seth Brady testified that the only unique confidential information is Plaintiff's data analytics system, which prioritizes customers for the associates to call on. [Brady Dep., 15:6-16:5; 95:25-96:13].[4] The fact that Plaintiff cannot keep straight the supposed legitimate business interest it seeks to protect creates a genuine dispute as to whether an interest exists. A jury must make this

[4] Relevant portions of the Brady Dep. are filed under seal as Ex. "D." Mr. Brady is Plaintiff's Executive Vice President of the West Central Region which includes Colorado, Texas, Arizona, California, Washington, Oregon, Georgia, Kansas, Oklahoma, Missouri, Nebraska, and Iowa, the supervisor of the individual that testified as the corporate representative, and an employee that has been with Plaintiff for 13 years. [Brady Dep., 7:13-11:11].

determination. [*Id.*; Second Corp. Rep. Dep., 49:9-52:20].[5]

Additionally, the types of information that Plaintiff claims Defendants were exposed to during employment is not unique to Dallas or even the Region. [Corp. Rep. Dep., 31:9-33:6; Second Corp. Rep. Dep., 51:10-52:20]. Plaintiff admits that the training provided to employees does not vary across the 11 state Region, including all of Texas, and information relating to its customers, pricing, and costs, among other things, is the type of information that virtually any employee within the company have access to. [Second Corp. Rep. Dep., 49:9-20, 51:10-52:20]. Information known by virtually every former employee of Plaintiff across 11 states, including California which does not allow non-competes, cannot constitute a legitimate business interest justifying restricting Ms. Bestreich and Mr. Adams from working in Dallas. [*Id.* at 53:4-12; Brady Dep., 34:5-35:14].[6]

There is no plausible reason that it would be detrimental to Plaintiff for a former employee to work within the 25-mile radius if it does not harm Plaintiff for them to work outside that radius (competing against other offices of Plaintiff) when

---

[5] Neither Ms. Bestreich nor Mr. Adams had access to Plaintiff's data analytics system and only saw limited reports generated by that system. [Brady Dep., 16:6-18:17]. Ms. Bestreich and Mr. Adams, like other employees of Plaintiff, do not have knowledge of the proprietary algorithm used within that system to generate reports. [*Id.* at 72:4-16]. Therefore, the existence of that database is not a sufficient justification for the noncompete and is at best a jury question.

[6] Every employee in Plaintiff's RGS division since 2015 has signed agreements containing the same restrictive covenants as the Bestreich and Adams Agreements. [*Id.*].

those employees are trained the same, are soliciting customers based on the same analytics, and are selling the same services. Reasonableness of a territory depends "not so much on the geographical size of the territory, as on the reasonableness of the territorial restriction in view of the facts and circumstances surrounding the case." *Barry v. Stanco Commc'ns Prods., Inc.*, 252 S.E.2d 491, 493 (Ga. 1979) (citing *Thomas v. Coastal Indus. Servs.*, 108 S.E.2d 328 (1959)).

In fact, Plaintiff has acknowledged that the 25-mile radius is completely arbitrary and not based on a former employee being able to compete differently within or without the territory. Training and sales tactics across Plaintiff's regions do not change and the only difference identified by Plaintiff is the amount of communication based on local customer profile. [Brady Dep., 33:21-34:19; Second Corp. Rep. Dep., 50:4-52:20]. Plaintiff also could not explain why the noncompete radius was set at 25 miles or why it does not vary based on location. [Brady Dep., 58:21-59:6, 59:11-60:18]. Plaintiff acknowledged that the employees would have the exact same advantage in other regions of Texas outside the "Restricted Territory" based on training received. [Corp. Rep. Dep., 31:9-32:22]. Moreover, the confidentiality and customer non-solicitation covenants are more than sufficient to protect any legitimate business interest tied to those interests. Thus, Plaintiff has not

demonstrated *as a matter of law* that the information to which Defendants had access justifies the noncompete. At a minimum, this is a factual question for the jury.

Finally, Plaintiff claims investment of time and money in training and developing Ms. Bestreich and Mr. Adams. [Dkt. 157-1, pp. 14-15]. Plaintiff's does not cite any evidence supporting this assertion. Also, Plaintiff has failed to identify any training provided, other than normal onboarding activities to learn the company's computer software systems. [Second Corp. Rep. Dep., 55:7-62:15]. Mr. Brady testified that it is Plaintiff's preference to hire manager level employees from other competitor staffing firms, instead of training them itself. [Brady Dep., 134:14-23].[7] Mr. Fegan confirmed that he could not identify any special training Ms. Bestreich or Mr. Adams received. [Second Corp. Rep. Dep., 53:23-55:6].

O.C.G.A. section 13-8-51(9)(C) also provides that a legitimate business interest may include "*[s]ubstantial* relationships with specific prospective or existing customers, patients, vendors, or clients." (emphasis added). Plaintiff has failed to demonstrate that it has a *substantial* relationship with any of its customers and therefore a factual dispute exists which precludes summary judgment. Plaintiff acknowledged that it does not have exclusive agreements with any of its customers

[7] Plaintiff hired Ms. Bestreich because she was already trained due to her prior experience in the staffing industry. [Bestreich Dep., 29:3-31:21 (relevant nonconfidential portions are attached as Ex. "E", confidential portions filed under seal as Ex. "E-1")].

and that customers often work with multiple staffing agencies to make placements. [Plaintiff Randstad General Partner (US) LLC's Response to Defendants' First Request for Production of Documents (attached as Ex. "F", No. 68, p. 38]. Moreover, while Plaintiff's relationships with its customers may, in theory, justify the use of a nonsolicit or no-servicing covenant in its Agreements, Plaintiff has not even attempted to prove how its customer relationships could justify the noncompete in its Agreements, much less do so *as a matter of law*. Plaintiff's failure to introduce evidence of a substantial relationship precludes summary judgment on this issue.

Plaintiff's selective enforcement of its restrictive covenant agreements, discussed below, also creates a jury question as to whether Plaintiff's alleged business interests justify its use of noncompetes.[8] There is a genuine factual dispute over whether Plaintiff relies upon its noncompetes merely to improperly stifle competition and deter competitors from hiring its employees. These tactics call into question Plaintiff's alleged interests and preclude summary judgment on this claim.

*iii. There is a factual dispute as to whether Ms. Bestreich breached the Bestreich Agreement through her involvement in Mr. Adams' employment with Beacon Hill.*

Plaintiff claims that Ms. Bestreich breached the nonrecruitment covenant of

[8] Noncompetes cannot be used for the sole purpose of stifling competition. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 745 (1988) (Stevens, J., dissenting) (noting that "naked restraints of trade with no purpose except stifling of competition" are improper).

the Bestreich Agreement as a matter of law by recruiting Mr. Adams (and Ms. Mooney)[9] to work for Beacon Hill. [Dkt. 157-1, pp. 9, 10, 19]. Ms. Bestreich's "admission" that recruitment of Mr. Adams and Ms. Mooney constituted a breach of her agreement is not a binding admission as enforceability of a contract is for the courts to decide rather than a conclusion that a lay witness may draw. In any event, Ms. Mooney is not at issue in this litigation and the unrebutted testimony is that Mr. Adams is the one who sought out job opportunities from Ms. Bestreich because he was unhappy with his employment at Randstad. [Bestreich Dep., 231:14-18, 234:5-13, 237:17-238:16; Cain Dep., 290:15-291:7 (nonconfidential portions attached as Ex. "G" and confidential portions filed under seal as Ex. "G-1"; Adams Dep., 59:15-60:21, 63:19-23, 75:12-79:22 (relevant portions attached as Ex. "H"); Ex. P to Bestreich Memo., ¶ 13]. Therefore, at a minimum, there is a factual dispute over whether Ms. Bestreich recruited Mr. Adams in violation of the Bestreich Agreement.

*iv. The "evidence" cited by Plaintiff in support of its breach of contract claim is insufficient and judgment cannot be entered as a matter of law.*

Plaintiff attempts to ignore the mountain of fact issues present in this dispute

[9] Plaintiff attempts to improperly reinject the hiring of Ms. Mooney. Plaintiff moved to amend its Complaint and then was expressly invited by the Court to make additional amendments to its motion to amend after Beacon Hill was dismissed from this case. [Dkt. 128]. Plaintiff voluntarily withdrew *all* of the claims it sought to add and chose to pursue its claims relating to Ms. Mooney in the related Texas case. [Dkt. 130]. Plaintiff cannot now complain of Ms. Mooney's hiring here.

by claiming that the witnesses agreed the Agreements are enforceable. [Dkt. 157-1, pp. 5, 7]. However, Ms. Bestreich and Mr. Adams plainly challenged the enforceability of the Agreements through their affirmative defenses. [Dkts. 8, 9, Second Affirmative Defense, Third Affirmative Defense]. "The existence and validity of a contract are legal conclusions not facts." *San Miguel Produce, Inc. v. L.G. Herndon Jr. Farms, Inc.*, No. 6:16-CV-35, 2020 WL 7265381, at *9 (S.D. Ga. Dec. 10, 2020) (cits. omitted); *see also SunTrust Bank v. Bickerstaff*, 824 S.E.2d 717, 722 (Ga. Ct. App. 2019) ("The issues of contract construction and enforceability are generally questions of law for a court to resolve . . .").

In *San Miguel Produce*, the plaintiff sought to defeat a challenge to the enforceability of a contract based on the defendant's answer to the complaint admitting the allegation that the parties "entered into a valid contract and expressly agreed therein that the contract shall be governed by . . . Georgia law . . . ." 2020 WL 7265381, at *9. The court held that, to the extent the answer concerned validity, rather than execution and choice of law, it was a legal conclusion and could not qualify as a judicial admission. *Id*.

Here, Plaintiff's counsel asked questions calling for legal conclusions, to which Ms. Bestreich and Mr. Adams' counsel objected. [Bestreich Dep., 109:3-14; Adams Dep., 79:17-80:1]. These questions were improper and cannot be used to

side-step Ms. Bestreich and Mr. Adams' properly asserted defenses. There are genuine factual disputes regarding the enforceability of the noncompete.

Plaintiff also relies on Ms. Bestreich's offer letter from Beacon Hill in which Beacon Hill offered to defend her in the event of any litigation arising from her previous employment with Plaintiff. Plaintiff argues that, Ms. Bestreich must have "understood that going to work for Beacon Hill in a competing role in the same territory and soliciting other Randstad employees was risky and would likely lead to litigation." [Dkt. 157-1, p. 18].[10] Plaintiff's argument that this language in an offer letter means Ms. Bestreich admits she breached her agreement *as a matter of law* is specious. "A finding of fact which may be inferred but not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." *Bald Mountain Park v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989). [*See also* Bestreich Dep., 117:25-119:23 (testifying that she did not believe employment with Beacon Hill would be an issue)]. Thus, Plaintiff cannot obtain summary judgment on its claim for breach of contract based upon its own interpretation of the circumstances surrounding Ms. Bestreich's hiring at Beacon Hill when the actual evidence of her offer reflects otherwise.

[10] The evidence does not support Plaintiff's interpretation of the inclusion of this language in Ms. Bestreich's offer letter. [Bestreich Dep., 117:24-121:4; Cain Dep., 141:20-143:15].

**B. There is a Genuine Factual Dispute Regarding Whether Plaintiff's Waiver or Selective Enforcement is a Valid Affirmative Defense.**

Plaintiff argues it is entitled to summary judgment on Defendants' affirmative defense of waiver or selective enforcement because "most courts" have rejected this theory. [Dkt. 157-1, pp. 21-22]. However, as this Court already noted, the theory has not been rejected in Georgia and has been adopted in other jurisdictions.[11] Moreover, no matter what the theory is labeled, the selective enforcement issue goes straight to the heart of whether Plaintiff has a legitimate business interest in the noncompetes.

Plaintiff cites cases from four different jurisdictions to cast doubt upon the defense of selective enforcement in the context of restrictive covenants. [*Id.*]. However, there are decisions from just as many jurisdictions in which this defense has been accepted. *See Estee Lauder Cos. Inc.*, 430 F. Supp. 2d at 181 (finding former employer's behavior suggested the 12 month post-termination restriction of a high level executive was unnecessary as other executives' agreements had been narrowed from six months to three to five months); *Gateway 2000, Inc.*, 9 F. Supp. 2d at 795 (finding former agreement containing general restriction on working for

[11] Transcript of Discovery Dispute Telephone Conference on January 27, 2021, p. 10 ("I do not find one case that's been cited which shows that this defense has been rejected by a Georgia court.") (relevant portions of the transcript are attached as Ex. "I"); *see also See Estee Lauder Cos. Inc. v. Batra,* 430 F. Supp. 2d 158, 181 (S.D.N.Y. 2006) (permitting selective enforcement defense); *Gateway 2000, Inc. v. Kelley,* 9 F. Supp. 2d 795 (E.D. Mich. 1998) (same); *Surgidev Corp. v. Eye Tech., Inc.,* 648 F. Supp. 661, 686 (D. Minn. 1986) (same); *Gagliardi Bros., Inc. v. Caputo,* 538 F. Supp. 525 (E.D. Pa. 1982) (same).

competitors was overly broad where newer agreement only listed restrictions for specific competitors); *Surgidev Corp.*, 648 F. Supp. at 686 (refusing to enforce covenants not to compete against four former officers where 28 other employees had been permitted to move to competitors over the years and the former employer had similarly engaged in hiring employees from competitors); *Gagliardi Bros., Inc.*, 538 F. Supp. at 525 (finding one year non-compete was likely not necessary where former employer had not required employees to sign employment agreements in the last five years despite business growing significantly during that time).

Under the *Erie* doctrine, this Court must apply applicable state law, or, absent directly applicable law, predict how the state Supreme Court would resolve a claim, taking into account relevant trends in intermediate appellate decisions. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Nat'l Union Fire Ins. Co. v. Cavins*, 226 Fed. App'x 895, 899 (11th Cir. 2007). While there is no directly applicable caselaw in Georgia, the Georgia legislature provided important guidance, as O.C.G.A. section 13-8-55 requires the person seeking enforcement of a restrictive covenant to plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. An employer's selective enforcement of its noncompetes is directly relevant to whether the business interests that support the covenant are legitimate. For these reasons, the Georgia Supreme Court is likely to accept the

defense of selective enforcement. *Blair v. Pantera Enters., Inc.,* 824 S.E.2d 711, 713 (Ga. Ct. App. 2019) (analyzing language of the Act) ("The cardinal rule to guide the construction of law is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that constructions which will effectuate the legislative intent and purpose.") (internal cits. omitted).

Additionally, Georgia applies the waiver doctrine, which is similar to the selective enforcement theory, when considering restrictive covenants. *Yash Sols., LLC*, 834 S.E.2d at 133-35 (issue of waiver must be decided by a jury when evidence is in conflict). The evidence here suggests that Ms. Bestreich and Mr. Adams did not have access to unique knowledge that would justify the enforcement of the noncompetes against them when the noncompetes were not enforced, or even addressed, with other departed employees. [Second Corp. Rep. Dep., 38:7-42:3]. And, Plaintiff knew of Ms. Bestreich's employment and did not demand she resign and did not take any action against her for eight months after sending her a reminder letter about her Agreement. [Bestreich Dep., 143:1-21]. Further, Plaintiff only pursued Mr. Adams *after* he had left the staffing industry entirely. These facts could lead a jury to determine that Plaintiff is not pursuing Ms. Bestreich and Mr. Adams to protect a legitimate business interest, but that this litigation is really about stifling competition and deterring Beacon Hill from hiring other individuals seeking better

employment opportunities. The fact that Plaintiff has all but admitted in its brief that it has suffered no actual damages but spent hundreds of thousands of dollars pursuing these claims bolsters this conclusion. [Dkt. 157-1, pp. 20-21].

In fact, there are numerous instances demonstrating that Plaintiff is unconcerned with enforcing its noncompete except in select circumstances. Plaintiff's corporate representative admitted that, other than the individuals hired by Beacon Hill, it had no idea where any of its former employees had accepted employment after resigning from Plaintiff. [Second Corp. Rep. Dep., 38:7-42:3, 57:21-62:15]. Plaintiff did not know where even one of six employees that have resigned in Texas since 2016 moved to, post-employment. [*Id.*]. And, when questioned about the identity of the new employers on the former employees' LinkedIn pages, Plaintiff was forced to admit that those individuals had joined competing staffing firms in the same geographic area, yet Plaintiff had done nothing in response. [*Id.*]. This is consistent with Plaintiff's history of declining to even investigate, let alone enforce, noncompetes against departing employees, and inconsistent with Plaintiff's position that it reminds departing employees of their obligations if they take another job in the staffing industry. [*Id*. at 38:25-46:1; Corp. Rep. Dep., 111:5-25]. This testimony demonstrates a genuine dispute over the Plaintiff's purported need for a noncompete in its Agreements.

Additionally, Plaintiff's corporate representative testified that even when he does become aware of a former employee joining a competitor within the geography, all Plaintiff does is remind the former employee of their obligations and does not take further action unless there is some other conduct that justifies enforcement. [Corp. Rep. Dep., 111:5-25; Second Corp. Rep. Dep., 39:18-44:24]. For example, Plaintiff permitted Tina Meyer, a staffing manager in its Fort Worth, Texas office, to join a competitor, Express Staffing, in its local office. [Second Corp. Rep. Dep., 43:4-46:4]. Further, Plaintiff admits that it does not even check where many of its employees go after resignation. [*Id*. at 38:25-40:19]. The evidence shows that Plaintiff only enforces noncompetes if it believes that the *other* covenants in that employee's agreement are violated or if Plaintiff has a separate dispute with the new employer. [*Id*. at 44:25-46:1; Brady Dep., 51:24-53:6]. A jury could easily conclude that Plaintiff is using non-competition agreements for ulterior purposes such as stifling competition, to coerce and intimidate employees to keep them from leaving and to deter certain staffing companies, like Beacon Hill, from hiring.

Plaintiff's history of selective enforcement of its restrictive covenants creates a jury question regarding whether Plaintiff's alleged legitimate business interests justify the noncompetes in the Bestreich and Adams Agreements. Further, for the reasons discussed above, there are genuine issues of material fact regarding

Plaintiff's alleged business interests in this case, which preclude summary judgment on Defendants' waiver/selective enforcement defense.

Plaintiff argues that selective enforcement cannot be an affirmative defense because every employee departure is inherently fact-specific and depends on the agreement each employee had with Plaintiff. [Dkt. 157-1, pp. 2, 22]. However, Plaintiff has admitted that all employees within its RGS division since 2015 have signed the same agreement containing the same covenants as the Bestreich and Adams Agreements. [Second Corp. Rep. Dep., 53:4-12]. Then, in a complete flip flop, Plaintiff tries to use evidence of the temporary restraining orders and injunctive relief issued against other former employees of Plaintiff in an attempt to bolster their claims against Ms. Bestreich and Mr. Adams. [*See* Dkts. 157-2—157-9]. In fact, Plaintiff's reliance upon the other instances in which its Agreements have been enforced, in part, against other employees who left to join Beacon Hill undermines its contention that it has a legitimate business interest justifying the Agreements. On the one hand, it is aggressively pursuing any employee it finds out has joined Beacon Hill but, on the other, it admits it has absolutely no idea where any other employee have gone post-resignation and never even thought to check. [Second Corp. Rep. Dep., 38:7-41:21]. Plaintiff is using the threat of litigation against individuals as a

means to stifle Beacon Hill as a competitor and as a means to deter its workforce from seeking out better opportunities—these are not legitimate business interests.

At best, Plaintiff has shown that it takes a wildly inconsistent approach to the enforcement of its non-competition provision in its Agreements, with the key fact meriting enforcement being the identity of the new employer, not the employees rank, access to information, customer relationships, or geography.[12] [*See* Second Corp. Rep. Dep., 57:21-66:16]. Plaintiff's history of selectively enforcing its Agreements is a valid affirmative defense and the Motion should be denied.

**C. Material Issues of Fact Exist as to Plaintiff's Claim for Intentional Interference with Contract Against Ms. Bestreich (Count I).**

As an initial matter, there are numerous factual disputes regarding the breach of contract claim against Mr. Adams. Plaintiff's intentional interference claim is premised upon Ms. Bestreich's alleged interference with the Adams Agreement and there are genuine issues of material fact precluding summary judgment on that claim, therefore, summary judgment cannot be granted on the tort claim. There are genuine disputes regarding Ms. Bestreich's knowledge of the Adams Agreement and whether Ms. Bestreich acted with the requisite malice, as set forth in Ms. Bestreich's Partial

[12] Plaintiff points to the temporary restraining order it obtained against Michelle Nordstrom, a former employee of Plaintiff who joined Beacon Hill. [Dkt. 157-7]. However, the noncompete in her agreement was not enforced and only the customer non-solicit/no-service provision was.

Motion. [Dkt. 163].

*i. Plaintiff has failed to demonstrate that Ms. Bestreich had knowledge of the Adams Agreement.*

A plaintiff must demonstrate that the interfering defendant had knowledge of the allegedly breached contract. *Bible Farm Serv., Inc. v. House Hasson Hardware Co.,* 277 S.E.2d 341, 344 (Ga. Ct. App. 1981); *see also Tom's Amusement Co., Inc. v. Total Vending Servs.,* 533 S.E.2d 413, 417 (Ga. Ct. App.) ("parties could not have intentionally and maliciously induced [the employee] to breach their terms, for they must first have had knowledge of [plaintiff's] rights and have acted with the intent to interfere with them.").

Plaintiff argues that because Ms. Bestreich "assumed" Mr. Adams had signed an agreement with Plaintiff at the time of her deposition, that demonstrates knowledge of the Adams Agreement at the time he was hired. However, the testimony cited by Plaintiff does not prove, as a matter of law, that Ms. Bestreich knew of the Adams Agreement, or any of its terms, at the time he was hired. To the contrary, Ms. Bestreich repeatedly denied any knowledge of the Adams Agreement at the time of his hire and there is no evidence that controverts that testimony. [Bestreich Dep., 237:17-238:16; Cain Dep., 290:15-291:7; Adams Dep., 75:12-79:22; Ex. P to Bestreich Memo., ¶ 13]. Moreover, this Court, when considering the

same testimony from Ms. Bestreich, determined this was insufficient to demonstrate "knowledge" of the Adams Agreement, stating as follows:

> Although Bestreich and Beacon Hill had knowledge of the Bestreich Agreement as of July 24, 2018—the date Bestreich received, and forwarded, Randstad's cease-and-desist letter—there is nothing in the parties' briefing to suggest that Bestreich or Beacon Hill had actual knowledge of the Adams Agreement. The Court cannot simply infer that knowledge of a clause in one agreement constitutes knowledge of a clause in another; they are separate agreements.

[Dkt. 128, p. 34]. Summary judgment should be granted in Ms. Bestreich's favor on this claim, but, at a minimum, there is a question of fact for the jury on this issue.

Even assuming Ms. Bestreich believed Mr. Adams had an agreement at the time of hire, at a minimum, that would create a genuine dispute of material fact over whether she had actual knowledge of his agreement or the specific terms in it. The unrebutted testimony is that Mr. Adams reached out to Ms. Bestreich about job opportunities and that the Agreement was never discussed. [Bestreich Dep., 231:14-18, 234:5-13, 237:17-238:16; Cain Dep., 290:15-291:7; Adams Dep., 59:15-60:21, 63:19-23, 75:12-79:22; Ex. P to Bestreich Memo., ¶ 13]. Plaintiff's reliance on Ms. Bestreich's "assumption" that Mr. Adams had also signed an agreement (at the time of her deposition), cannot overcome its high burden at summary judgment to prove *as a matter of law* that she tortiously interfered with the Agreement.

*ii. Ms. Bestreich did not act with the requisite malice.*

Plaintiff argues that "malice" is given a liberal meaning in the context of tortious interference claims. [Dkt. 157-1, pp. 24-25]. In reality, the malice standard is significantly higher. *See Gordon Document Prod., Inc. v. Serv. Tech., Inc.*, 708 S.E.2d 48, 53 (Ga. Ct. App. 2011) (noting that improper or wrongful means "generally involved predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.") (citing *Kirkland v. Tamplin*, 645 S.E.2d 653 (Ga. Ct. App. 2007)).

Ms. Bestreich did not act with the requisite malice to establish a claim for tortious interference. There is no evidence that she used predatory tactics to encourage any alleged violations of the Adams Agreement, or that she "encouraged Adams to leave Randstad and join Beacon Hill to compete in the same territory in violation of the non-compete provision in the Adams Agreement." [Dkt. 157-1, p. 24]. Mr. Adams approached Ms. Bestreich because he was unhappy with his employment at Plaintiff. [Ex. M to Adams Memo., ¶ 11; Adams Dep., 59:15-60:21, 63:19-23; SOMF, No. 63]. That Mr. Adams was hired by Beacon Hill in a position which Plaintiff contends violates the Adams Agreement does not demonstrate that Ms. Bestreich maliciously encouraged Mr. Adams to join Beacon Hill.

Plaintiff relies upon *Interra International, LLC v. Al Khafaji* for its lessened standard of malice. No. 1:16-CV-1523-MHC, 2017 WL 4866266, at *8-9 (N.D. Mar. 21, 2017). However, in *Interra*, the Court was ruling on a motion to dismiss and not a motion for summary judgment. In *Interra*, the plaintiff alleged that defendant began soliciting plaintiff's customers on behalf of his new employer, and that a customer ceased doing business with plaintiff and began purchasing the same product from defendant's new employer, using the same product in the same packaging and label as plaintiff. *Id.* at *2. The Court found that the misappropriation of sales was sufficient to *allege* unauthorized interference with plaintiff's business and contract, and, therefore, malice *at the motion to dismiss stage*. *Id.* at *8-9.

Here, Plaintiff does not even cross that hurdle. In contrast to *Interra*, Plaintiff has not alleged any loss of customers or improper solicitation because of Mr. Adams' employment with Beacon Hill sufficient to sustain a motion to dismiss, much less to succeed on summary judgment *as a matter of law*. Further, merely alleging that Ms. Bestreich permitted Mr. Adams to become employed at Beacon Hill does not establish malice as a matter of law. At a minimum, there is a genuine factual dispute as to whether Ms. Bestreich acted with malice. Thus, summary judgment should be denied.

## III. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for summary judgment on Counts I, II, and III of its Complaint and Defendants' affirmative defense of waiver/selective enforcement should be DENIED.

This, the 14th day of June, 2021.

BERMAN FINK VAN HORN P.C.

*/s/ Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090
Lea C. Dearing
Georgia Bar No. 922882
Ashley M. Bowcott
Georgia Bar No. 871190
3475 Piedmont Road, N.E.
Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
bfink@bfvlaw.com
ldearing@bfvlaw.com
abowcott@bfvlaw.com

*Counsel for Defendants Shawna Bestreich and Erik Adams*

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 7.1D AND 5.1B**

Pursuant to Local Rules 7.1D and 5.1B, the undersigned counsel hereby certifies that the foregoing document complies with the Local Rules' requirements as to font in that it has been prepared in Times New Roman, 14 point.

This 14th day of June, 2021.

BERMAN FINK VAN HORN P.C.

By: *_/s/ Benjamin I. Fink_*
Benjamin I. Fink
Georgia Bar No. 261090

*Counsel for Defendants Shawna Bestreich and Erik Adams*

3475 Piedmont Road, NE
Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that, on June 14, 2021, I electronically filed the foregoing **DEFENDANTS SHAWNA BESTREICH'S AND ERIK ADAMS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, AND III OF ITS COMPLAINT AND ON DEFENDANTS' WAIVER/SELECTIVE ENFORCEMENT AFFIRMATIVE DEFENSES** with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Robert C. Stevens, Esq.
Alex Meier, Esq.
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
bstevens@seyfarth.com
ameier@seyfarth.com
***Counsel for Plaintiff***

Erik W. Weibust, Esq.
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
eweibust@seyfarth.com
***Counsel for Plaintiff***

BERMAN FINK VAN HORN P.C.

By: */s/ Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090

*Counsel for Defendants Shawna Bestreich and Erik Adams*

3475 Piedmont Road, NE
Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)
1339423