**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC,<br>Plaintiff,<br>v.<br>SHAWNA BESTREICH and ERIK ADAMS,<br>Defendants. | Civil Action No.:<br>1:19-CV-01655-MHC |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS SHAWNA BESTREICH'S AND ERIK ADAMS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Randstad General Partner (US), LLC ("Randstad") submits this Reply in further support of its Motion for Summary Judgment on Counts I, II, and III of its Complaint ("Motion") against Defendants Shawna Bestreich and Erik Adams.

As Randstad accurately predicted in its Motion, Defendants' meandering Opposition "raise[s] all manner of irrelevant and immaterial arguments in an attempt to create a so-called 'factual dispute.'" (Pls.' Mot. Summ. J. ("Pls.' Mot.") 1, ECF No. 157.) And in the few instances where Defendants actually do address relevant topics, they similarly attempt to manufacture "factual disputes" out of purely legal questions because the law is so unhelpful to them. But once you cut through the chaff, Defendants' Opposition confirms what Randstad articulated in its Motion:

"[T]he material facts are few, they are undisputed, and they support Randstad's claims." (*Id.*).

### A. Whether The Agreements Are Enforceable Is A Legal Question

Bestreich and Adams admit that they executed their respective Agreements (which are identical) and that they understood and intended to comply with them; but they now argue that the Agreements are unenforceable. Whether the Agreements are enforceable, however, is purely a legal question, and neither Bestreich nor Adams disputes (because they cannot) that numerous courts, *including this Court*, have enforced the same agreement repeatedly against similarly situated employees —including several who recently left to join Beacon Hill under strikingly similar circumstances and are now subject to broad injunctions. Randstad submits that the Agreements are enforceable, and, having anticipated this argument, briefed the issue. (Pls.' Mot. 12-17).[1] The Court can, and should, rule on this issue as a matter of law.

[1] All that Randstad will add here is that Defendants misrepresented the holding of *Yash Solutions, LLC v. New York Global Consultants Corp.*, 352 Ga. App. 127, 133-135 (2019), in their Opposition, claiming that the Georgia Court of Appeals held in that decision that "enforceability of a restrictive covenant was a jury question." (Opposition ("Opp.") 5, ECF No. 180). That is not true. Rather, the Appeals Court merely observed, in dicta, that "the trial court concluded that there were genuine issues of material fact regarding whether the non-compete provision was enforceable." *Id.* at 132. In fact, the Superior Court held in the decision that was up on appeal that there was a question of fact about the enforceability of the subject agreement that Yash claimed New York Global Consultants ("NYGCI") had breached *only* because NYGCI claimed it had access to the information purportedly protected by that agreement through a separate agreement with non-party EMC that was not in the summary judgment record: "The contract between NYGCI and EMC is not in the record in this case. The Court cannot make a determination as to whether NYGCI already had the access covered by Articles IX and X [of the subject agreement] such that those articles would be unenforceable." *N.Y. Global Consultants Corp. v. Yash Sols., LLC*, 2018 WL 10093593, at *5 (Ga. Super. Mar. 7, 2018). In reality, "[w]hether a restrictive covenant is

### B. Whether Defendants' Admitted Conduct Constitutes A Breach Of Their Agreements Is Also A Purely Legal Question

Bestreich admits that she was employed in Randstad's Dallas office working in and overseeing its O&A business, among other things, and that she left Randstad to join Beacon Hill and open up, work in, and oversee its O&A business in Dallas. (Defs.' Resp. SOMF Nos. 4, 15-17, ECF No. 181.) Similarly, Adams admits that he, too, worked in Randstad's Dallas office and was responsible for making O&A placements, and that he also left to join Beacon Hill, where he continued making O&A placements. (*Id.* No. 23.) Whether this admitted (*i.e.*, undisputed) conduct constitutes "providing . . . services competitive with" Randstad, and/or "supervising employees or other personnel who provide . . . services competitive with" Randstad, and/or performing "temporary . . . placement and staffing services . . . that are the same or substantially similar to the services" Bestreich and Adams provided to Randstad within the last two years of their employment—and thus a breach of the non-compete provision of their Agreements—is a legal question; the material facts are undisputed no matter how hard Defendants try to muddy them. Randstad submits that this admitted conduct does constitute a breach, and it fully briefed this issue as well. (Pls.' Mot. 17-20).

---

enforceable is a question of law" and the enforceability of restrictive covenants is regularly resolved on summary judgment. *Fine v. Commc'n Trends, Inc.*, 305 Ga. App. 298, 306 (Ga. App. 2010) (affirming grant of summary judgment). Defendants know this and, in fact, conceded this unremarkable point when Bestreich asked the Court to grant summary judgment in her favor on the grounds that the Agreement is unenforceable as a matter of law. (ECF No. 163-1, at 18-20).

As predicted, however, in their meager attempt to distract from their admitted breaches, Defendants rely on several strawman arguments that have no relevance to or bearing on the claims actually asserted in the case. Defendants initially attempt to self-servingly redefine what the non-compete provision of their Agreements actually prohibits, first by drawing a false dichotomy between performing work "for" or "on behalf of" Randstad, and second by asserting that "actual competition"—whatever that means—is narrowly defined solely to include "an instance when both Plaintiff and Beacon Hill submitted candidates for the same open Administrative position." (Opp. 4). Unsurprisingly, Defendants cite no legal authority for either of these propositions, nor does the language of the Agreements support them.

Defendants also assert that because they work (or worked) in "narrower industry verticals" for Beacon Hill than they had for Randstad, they are somehow not in violation of the non-compete provisions; although, tellingly, they do not argue that they are working in *different* verticals, just *narrower* ones. (*Id.*). The term "narrower" necessarily implies an overlap, and nothing in Defendants' Agreements permits them to compete in the same verticals, even if only some (or one) of them.

Finally, Defendants assert that Randstad "may not carry its burden to prove a breach as a matter of law by simply showing that both companies perform staffing services." (Opp. 4-5). But Randstad seeks to do no such thing. As noted above and in Randstad's Motion, Defendants admittedly left to work for Beacon Hill in the

*same geographic area* (Dallas, Texas), performing the *same work* (making and/or supervising others making O&A placements). Those facts are undisputed. The fact that Randstad and Beacon Hill are competitors is, of course, relevant, but nowhere does Randstad argue it is dispositive. This is another obvious strawman argument.

Bestreich also does not dispute that, within 18 months of leaving Randstad, she had contact with and encouraged Adams and Mooney—both of whom she indisputably worked with in the 12 months preceding her resignation—to leave Randstad and join her at Beacon Hill; she lobbied her supervisor, Charlie Cain, to hire both over his objections; she hired both and issued both of their offer letters; and she managed both Adams and Mooney when they joined Beacon Hill.[2] Whether this constitutes "contact[ing], recruit[ing], or solicit[ing]" Randstad employees "for the purpose of encouraging, enticing or causing such employee[s] to terminate employment with [Randstad], or to accept employment with" a competitor, and/or hiring Randstad employees for a competitor—and thus a breach of the employee non-solicitation covenant of her Agreement—is also purely a question of law.

[2] Defendants assert that Bestreich's admitted solicitation and hiring of Mooney is irrelevant here because Randstad withdrew its motion to amend its Complaint to add Mooney as a defendant and a claim against Bestreich for tortious interference with Mooney's Randstad agreement. (Pls.' Mot. 12 n. 9). But that is not the case. Randstad has alleged here that Bestreich improperly solicited its employees in violation of her non-solicitation obligations in her Agreement, and her solicitation of Mooney is an example of when she did so successfully, and thus supports Randstad's breach of contract claim. Randstad has not asserted, and is not pursuing here, a tortious interference claim based on Bestreich's solicitation of Mooney, as it has asserted that claim in a separate action in Texas. But the Court can, and should, consider her solicitation of Mooney in connection with Randstad's breach of contract claim against Bestreich here. (Pls.' Mot. 9 n.3).

Again, Randstad submits that Bestreich's admitted (*i.e.*, undisputed) conduct does constitute a breach of the non-solicitation covenant in her Agreement, and it briefed this issue too (Pls.' Mot. 19). In response, Bestreich argues that the *only* conduct that could possibly constitute a breach is if she had initiated contact with Adams first, irrespective of her conduct after Adams contacted her. But that is not the law; regardless of whether Adams first contacted Bestreich, her subsequent solicitation and encouragement of him to apply for and accept a job with Beacon Hill, and her active participation in the recruitment process, constitutes a breach. *See, e.g.*, *Anderson v. USI Advantage Corp.*, 2020 WL 1933803, at *5 (N.D. Ga. Apr. 21, 2020) (citing *Corporate Tech., Inc. v. Harnett*, 731 F.3d 6, 11-12 (1st Cir. 2013) ("[T]he identity of the party making initial contact is just one factor among many that the trial court should consider in drawing the line between solicitation and acceptance in a given case. This flexible formulation not only reflects sound policy but also comports with well-reasoned case law from other jurisdictions.")).[3]

---

[3] Although there are no doubt outlier decisions, this formulation has been widely adopted across the country. *See, e.g.*, *United HealthCare Servs, Inc. v. Corzine*, 2021 WL 961217, at *17 (S.D. Oh., Mar. 15, 2021) ("The ordinary meaning of 'solicit' does not necessitate making the initial contact."); *Legal Tech. Group, Inc. v. Mukerji*, 2019 WL 9143477, at *10 (D.D.C., June 10, 2019) ("The Court concludes that the plain meaning of 'solicit' does not necessarily require the soliciting party to initiate contact."); *Centennial Bank v. ServisFirst Bank Inc.*, 2016 WL 7325545, at *10 (M.D. Fla. May 17, 2016) (holding that "even if the former customer initiates the meeting, it is still possible for an individual to inappropriately solicit that customer."); *Wachovia Ins. Servs., Inc. v. Hinds*, 2007 WL 6624661, at *6 (D. Md. Aug. 30, 2007) ("Even if [the employee] did not initiate contact with [her former employer's client], she may have actively solicited them."); *FCE Benefit Adm'rs, Inc. v. George Wash. Univ.*, 209 F. Supp. 2d 232, 234 (D.D.C. 2002) (concluding that an employee violated a prohibition against soliciting her client's customers because, "[e]ven

Leaving aside the legal flaws in this argument, it is also immaterial that Adams contacted Bestreich first, as Bestreich's Agreement prohibits her not only from "contacting" Randstad employees, but also recruiting, soliciting, and hiring them (Agreement ¶ 4(a)), all of which Bestreich admittedly did.[4] This argument is a red herring that is not supported by the facts or the law.

### C. The Viability Of The "Selective Enforcement" Defense In This District Is Purely A Legal Question

Whether "selective enforcement" is a viable defense in this District is purely a legal question too, and unless the court overlooks compelling precedents from the majority of other jurisdictions and rules that it is viable here, the facts surrounding Randstad's enforcement of its agreements against other employees is irrelevant. And if the Court rules in that manner, a jury can decide whether it bars Randstad's claims here based on the relevant facts. Randstad submits that it is not a viable defense as a matter of law, and has fully briefed the issue. (Pls.' Mot. 21-23).[5]

---

though she was initially contacted by [the customer] . . . , she assumed an active role in [the customer's] decision-making process").

[4] Indeed, even if the non-solicitation provision in Bestreich's Agreement were limited to "contacting" former employees (it is not), "[s]urely being in contact with former [employees]—even if one is returning, rather than placing, a call—falls within the definition of 'contact.'" *Saturn Wireless Consulting, LLC v. Aversa*, 2017 WL 1538157, at *11 (D.N.J. Apr. 26, 2017).

[5] *See also, e.g.*, *Union Home Mortg. Corp. v. Jenkins*, 2021 WL 1979517, at *7 (N.D. Ohio, May 18, 2021) ("[T]he fact that Union Home . . . selectively enforces its non-compete agreements does not relieve Della Torre of his obligation to abide by the restrictions imposed by his Employee Agreement."); *GlobalTranz Enters., Inc. v. Murphy*, 2020 WL 2025489, at *3 (D. Ariz., Apr. 27, 2020) ("[Defendant] has not cited any cases holding, or even suggesting, that an employee may demonstrate the unreasonableness of the restrictive covenants in his contract by introducing

Defendants argue in their Opposition that Courts in other jurisdictions have held that selective enforcement is a viable defense, and they cite a few decisions that purportedly support that argument. While Randstad does not dispute that there may be outlier decisions in other jurisdictions on this issue, those cited by Defendants are not them, and each is either inapposite or easily distinguishable:

- In *Gateway 2000, Inc. v. Kelley*, 9 F. Supp. 2d 790 (E.D. Mich. 1998), the court did not even address selective enforcement, but rather held that the employer's *imposition* of different restrictive covenants on similarly situated employees (*i.e.*, imposing a geographical restriction on some employees, and a customer-based restriction on others) was inappropriate and only enforced the narrower customer-based restriction. Here, Randstad imposes the same restrictions all of its non-California employees, as evidenced by Bestreich's and Adams's identical agreements.[6]
- In *Gagliardi Brothers, Inc. v. Caputo*, 538 F. Supp. 525 (E.D. Pa. 1982), although the court noted in dicta that "it is significant that imposition of a restrictive covenant has not been required of employees of Gagliardi since 1977, yet its business has grown considerably since that time," it ultimately held that the defendant's agreement was unenforceable for lack of consideration and over-breadth, not based on selective enforcement. *Id.*, at 528-529. Again, the case dealt with the *imposition* of agreements (or the lack thereof) on employees, not their *enforcement* (selective or otherwise); there is an obvious and material difference between not imposing restrictive covenants on *any* new employees, and thus effectively conceding that they are not necessary to protect a legitimate business interest, and determining on a case-by-case basis whether to enforce a

different contracts that other employees executed at other times. (Indeed, even if such contracts theoretically had some utility in assessing the reasonableness of a particular employee's restrictive covenants, their introduction would potentially pose Rule 403 concerns.).") (citations omitted).

[6] Randstad is unaware of any decisions, in any jurisdiction, holding that an employer who treats California employees differently because of that state's laws (as many necessarily do, including Beacon Hill) means that its restrictive covenant agreements are unenforceable elsewhere due to lack of a protectable interest, as Defendants assert. (Opp. 8). If that were the law (it is not), no company with employees in California could ever enforce restrictive covenants in other states, and the multitude of decisions nationwide dealing with choice-of-law would be superfluous.

restrictive covenant under the unique circumstances present at the time of an individual employee's departure.

- In *Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 698-99 (D. Minn. 1986), unlike here, the plaintiff admitted that "with the exception of the instant litigation it has *never* attempted to prevent a Surgidev employee from leaving the company and taking employment with a competitor," and so the Court held that "*[u]nder the circumstances*, it would be inequitable to permit plaintiff to now rely on a non-compete agreement *which it has so blithely ignored in the past*." *Id.*, at 698 (emphasis added). Here, it is undisputed that Randstad regularly enforces its restrictive covenant agreements when the facts and circumstances warrant doing so—as Defendants are well aware since their counsel here represent the defendants in several of those cases. The fact that Surgidev *never* enforced its agreements is certainly a material distinction.[7]

- In *Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006), the plaintiff, also unlike here, offered to reduce the defendant's restricted period *at the time of his departure*, indicating that it could protect its interests *in that particular instance* with a narrower restriction: "It is concluded that, even though Estee Lauder and Batra were unable to reach an agreement on a reduction of the length of his non-compete, Estee Lauder's offer of four months reflects a recognition on its part that four months would be sufficient to protect its interests." *Id.*, at 181 n.5. No such offer was made here, and *Estee Lauder* is thus also distinguishable.

Nevertheless, Randstad acknowledges that this issue has not been resolved in Georgia and that whatever decision this Court makes may be appealed. But that does not mean the Court should not address the issue on summary judgment; to the

[7] Indeed, notwithstanding this easily distinguishable decision, the selective enforcement defense is expressly not recognized in the District of Minnesota under normal circumstances like those here. *See, e.g.*, *Minn. Mining & Mfg. Co. v. Kirkevold,* 87 F.R.D. 324, 336 (D. Minn. 1980) ("All things considered, the failure of 3M to attempt to enforce similar [restrictive] covenants against other former employees . . . [does not] estop 3M from enforcing the covenant in question. For the Court to hold otherwise would effectively place employers in the precarious position of being compelled to enforce all such restrictive covenants with respect to all its former employees, which might encourage attempts to restrain trade, and which might undermine labor relations.").

contrary, the Court can, and should, make a decision one way or another as a matter of law.[8]

### D. Whether Bestreich's Admitted Conduct Constitutes Tortious Interference Is Also A Purely Legal Question

Finally, Bestreich argues that her admitted (*i.e.*, undisputed) conduct cannot constitute tortious interference because it was not malicious, a required element of that claim. The legal definition of "malice" is also purely a legal question. Whether this Court follows its own prior rulings in *Interra Int'l, LLC v. Al Khafaji*, 2017 WL 4866266, at *9 (N.D. Ga. Mar. 21, 2017) and *Smart Profitability Solutions, LLC v. Double Check Risk Solutions, LLC*, 2018 WL 6380886, at *14 (N.D. Ga. Aug. 2, 2018)—in which it held that "the term 'malice' is to be given a liberal meaning" and "malicious or maliciously means any unauthorized interference, or any interference without legal justification or excuse"—or applies the much higher standard that Bestreich advances here, can be resolved on summary judgment.[9] (Pls.' Mot. 24).

[8] Although curiously placed in its selective enforcement argument, Defendants assert that Randstad "only pursued Mr. Adams *after* he had left the staffing industry entirely" and argue that this must mean "that this litigation is really about stifling competition and deterring [non-party] Beacon Hill from hiring other individuals seeking better employment opportunities." (Opp., at 17). But Randstad was unaware that Adams had been terminated at the time it filed the lawsuit; and, as Adams acknowledged under oath, Randstad's counsel attempted to call him multiple times before he was represented to discuss a potential resolution, but he never responded. (Adams Dep. 101).

[9] Defendants attempt to distinguish *Interra* (albeit not *Smart Profitability Solutions*) on the grounds that it was decided at the motion to dismiss stage rather than on summary judgment. (Opp., at 25). But that is a distinction that makes no difference because the legal definition of "malice" is the same regardless of the posture of the case. Indeed, as even a fleeting Westlaw search reveals, the Appeals Court decisions cited in *Interra* and *Smart Profitability Solutions* for the definition of malice were both appeals of summary judgment decisions. *Howerton v. Harbin Clinic, LLC*, 333

Regardless of which definition of malice the Court employs, it can make a legal determination as to whether Bestreich's admitted (*i.e.*, undisputed) conduct—encouraging Adams to apply to Beacon Hill; putting him in touch with her supervisor, Charlie Cain; interviewing him; convincing Cain to hire him over Cain's initial objections; and offering him employment with Beacon Hill, even issuing his offer letter under her signature, all while knowing (but not caring, or worse) that he was subject to the same restrictive covenants as she was—constitutes tortious interference. (Pls.' Mot. 23-25).

Likewise, whether Bestreich's admitted (and correct) "assumption" that Adams signed the same agreement she had signed, with the same terms and conditions that Bestreich not only agreed to but was reminded about immediately before and after her resignation, satisfies the knowledge element of Randstad's tortious interference claim is also a question of law. Randstad submits that it does and the Court can, and should, make a legal ruling to that effect. (*Id.*).[10]

---

Ga. App. 191, 202 (Ga. App. 2015); *Rowell v. Phoebe Putney Mem'l Hosp., Inc.*, 338 Ga. App. 603, 605 (Ga. App. 2016). Other decisions using the same definition of "malice" were likewise decided on summary judgment. *See, e.g.*, *Trico Envtl. Servs., Inc. v. Knight Petroleum Co.*, 357 Ga. App. 826, 835 (Ga. App. 2020); *Culpepper v. Thompson*, 254 Ga. App. 569, 572 (Ga. App. 2002); *Renden Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga. App. 333, 334 (Ga. App. 1994).

[10] As set forth in Randstad's Opposition to Bestreich's Motion for Summary Judgment (ECF No. 175), however, under no circumstances does Bestreich's testimony entitle her to summary judgment on this issue. If her admitted "assumption" is not sufficient as a matter of law to satisfy the knowledge element of Randstad's claim, it is only because her testimony was vague and a jury should determine what she knew and when.

## CONCLUSION

For the reasons discussed above and in Randstad's Motion, Randstad respectfully requests that the Court grant its Motion and enter judgment in favor of Randstad on Counts I-III of its Complaint and grant summary judgment on Defendants' selective enforcement affirmative defense.

Respectfully submitted,

*/s/ Alex Meier*

Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Erik W. Weibust (admitted *pro hac vice*)
eweibust@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

*Counsel for Plaintiff Randstad General Partner (US), LLC*

Dated: June 28, 2021